JONATHAN HAYDEN (Bar No. 104520)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
jonathan.hayden@hellerehrman.com

CHAD R. FULLER (Bar No. 190830)
BRITTANY L. S. LITTLE (Bar. No. 239681)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122
Telephone: (858) 450-8400
Facsimile: (858) 450-8499
chad.fuller@hellerehrman.com
brittany.little@hellerehrman.com

Attorneys for Defendant
WASHINGTON MUTUAL BANK

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT BOVA, on behalf of himself, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL BANK and Does 1 to 10,<br><br>Defendants. | Case No.:  07 CV 2410 WQH JMA<br><br>**EXHIBITS E-K OF DEFENDANT WASHINGTON MUTUAL'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY**<br><br>**Date:  June 9, 2008**<br>**Time:  11:00 a.m.**<br>**Judge:  William Q. Hayes** |

# EXHIBIT E

07/05/06 03:22PM  ONELE851 CR-AS HELLER, EHRMAN, WHIT 4157726268 Pg 3/3
Heller Ehrman      6/30/2006 11:07   PAGE 003/009   Fax Server

1  JONATHAN P. HAYDEN (Bar No. 104520)
2  ANDREW R. LIVINGSTON (Bar No. 148646)
   MICHELLE A. ROJAS (Bar No. 215365)
3  HELLER EHRMAN LLP
   333 Bush Street
4  San Francisco, CA 94104-2878
   Telephone: +1.415.772.6000
5  Facsimile: +1.415.772.6268
6  jonathan.hayden@hellerehrman.com

7  Attorneys for Defendant
   WASHINGTON MUTUAL BANK
8  FKA WASHINGTON MUTUAL BANK, FA

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUL - 3 2006

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
L. ZULUETA

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              FOR THE COUNTY OF LOS ANGELES

**BY FAX**

11

12  KIMBERLY JOHNSON CREESE, an         Case No.: BC323376
    individual, PHYLLIS PARKER, an
13  individual, and on behalf of other members   [Assigned to Hon. Terry A. Green, Dept.
    of the general public similarly situated,   14]
14
                                    WASHINGTON MUTUAL'S
15                      Plaintiffs,   SUPPLEMENTAL BRIEF RE
                                    PREDOMINANCE AND DUE PROCESS
16  vs.                             ISSUES

17  WASHINGTON MUTUAL BANK, a
    Washington corporation; WASHINGTON   Action Filed: October 27, 2004
18  MUTUAL MORTGAGE SECURITIES,
    INC., a Delaware corporation;
19  WASHINGTON MUTUAL BROKERAGE
    HOLDINGS, INC., a California corporation;
20  WASHINGTON MUTUAL COMMUNITY
    DEVELOPMENT, INC., a California
21  corporation, and DOES 1 through 10,
    inclusive,
22
                      Defendants.
23

24

25

26

27

28

COPY

11345712.tf - 6/30/2006 11:09:35 AM
SUPPLEMENTAL BRIEF RE PREDOMINANCE AND DUE PROCESS ISSUES, Case No. BC323376

1   At Monday's oral argument plaintiffs suggested for the first time that a class could
2   be certified to resolve the issue of "administrative v. production," despite the lack of
3   commonality for the other element of the exemption, the scope of discretion exercised by
4   underwriters.  The argument in support of this proposal was that the issue was mainly one
5   of "function," and the case of *Bell v. Farmers Insurance Exchange*, 87 Cal. App. 4th 805
6   (2001) suggests that the issue might be resolved through summary judgment and that, if
7   plaintiffs won on the issue, the exemption would be defeated.  At the oral argument,
8   Washington Mutual raised two issues that barred such an approach, neither of which had
9   been briefed in the context of plaintiffs' new argument:  Predominance and Due Process.
10  This brief briefly addresses those two points.

11      In considering this scenario, it is important to keep in mind that the actual issue in
12  question is whether the employee is an administrative employee, and that the so-called
13  "administrative/production worker dichotomy" is no more than one "useful approach" that
14  "may not be dispositive in many cases."  *Bell*, 87 Cal. App. 4th at 826.  Indeed, a close
15  examination of *Bell* suggests that the analysis in *this* case will *not* turn on common issues.
16  The most important factor in *Bell* seemed to be that the claims adjusters were managed in
17  stand-alone offices whose exclusive business function was to adjust claims.  Therefore, the
18  court was able to conclude that "the business of the branch claims offices is to handle
19  claims."  *Id.*  Because the claims adjusters "produced" the service the office was intended to
20  provide, the court reasoned, they were "production" workers.

21      This case is different.  As was explained in the opposition briefs, the Washington
22  Mutual underwriters were organized in three different functional structures during the class
23  period:  District Credit Centers, Loan Fulfillment Center Teams, and Loan Fulfillment
24  Center underwriting units.  The Montebello Emerging Markets work place (where the
25  named plaintiffs worked) was yet again a different structure, with sales personnel in the
26  same facility.  Under each of these functional structures, the offices housing the
27  underwriters conducted different mixes of business functions, and under *Bell*'s analysis,
28  these different physical organizations would each have to be analyzed separately.

1   Additionally, in *Bell*, the court was strongly influenced by the fact that the claims adjusters

2   had minimal settlement authority (less than $15,000), while here underwriting authority

3   varied significantly among underwriters, ranging from $350,000 to $3.5 million. *Bell*, 87

4   Cal. App. 4th at 827-828. Further, in *Bell*, close supervision of the adjustors by their

5   supervisor was important (*Bell*, 87 Cal. App. 4th at 827-828), and here the nature of the

6   management supervision of the underwriters varied over time (with changes in both the

7   direct and matrix management roles) as well as by business channel and geographic facility.

8   Finally, plaintiffs here have relied on the "production line" imagery, an image that was

9   shown to be not common and uniform when the declarants were deposed. In short, the

10  evidence that will be involved in the analysis of administrative versus production in this

11  case will not be as common as it was in *Bell*.

12  **A.    Predominance**

13      Predominance is a separate class certification requirement that must be satisfied. As

14  the Supreme Court said: "Plaintiffs' burden on moving for class certification, however, is

15  not merely to show that some common issues exist, but, rather, to place substantial evidence

16  in the record that common issues *predominate*." *Lockheed Martin Corp. v. Superior Court*,

17  29 Cal. 4th 1096, 1108 (2003) (emphasis in original). Ultimately, in order for predominance

18  to exist, the issues which can be litigated with common evidence must be so numerous that

19  class litigation "will provide substantial benefits both to the courts and the litigants."

20  *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 914 (2001). Thus, this

21  Court must evaluate *all* the issues in the case, separating those which can be litigated with

22  common evidence from those which cannot, and then weigh the two categories to determine

23  whether the commonly provable issues predominate over those that are not subject to

24  common proof. And, the advantages to class litigation must apply to *both* parties (and the

25  court), not just one of the parties.

26      The predominance analysis must start with a tally of all the issues already shown to

27  be uncommon, including all those relating to the "discretion" element. Thus, each

28  individual underwriter's competence, changes in the AUS system and complexity of loans,

1  differences in management and supervision, differences in business channels, variations

2  among work sites, differences in RLA, geographical variations, and others, all must be

3  tallied on the "not common" side of the ledger.  Also on that same "not common" side are

4  most of the issues that *Bell* suggests are relevant to the "administrative" element, including

5  how the underwriters were housed and managed, the degree to which they mingled with

6  non-exempt loan processors, the level of their authority, their management reporting

7  structures and the extent to which they passed on information to their supervisors.  Other

8  admittedly noncommon issues include how many hours people actually worked, whether

9  (and how often) they took lunch and meal breaks, and the like.  Plaintiffs here will argue

10  that the "functional" analysis of the "administrative" element is suited to common

11  treatment, which Washington Mutual disputes.  But even if some credence is granted to

12  their argument, when the purportedly common issues are compared to the non-common

13  issues on the discretionary analysis, and the remaining non-common issues on the

14  "administration" analysis and elsewhere in the case, common issues simply do not

15  predominate.

16      The lack of predominance is driven home by considering the lack of benefit to the

17  court and both the litigants from certifying a class based on purported commonality in just

18  one element of a multi-part defense.  Maybe, if everything broke their way, and this case

19  was just like *Bell*, plaintiffs could defeat Washington Mutual's defense in this case by

20  winning summary judgment.[1]  But what if they don't?  Washington Mutual can hardly hope

21  to obtain summary judgment on its exemption defense when, by definition, the other half of

22  the defense – the required element of "discretion" -- is not subject to class-wide proof.  A

23  trial would not be possible either.  At trial, Washington Mutual would be called on to

24  establish all the elements of its defense, but could not do so on a class-wide basis for the

25  _____

26      [1] Any litigation strategy presupposing resolution of the "administrative" element
through summary judgment must take account of *Bell*'s observation that "California courts

27  must use great caution in granting summary judgment or summary adjudication on the basis
of such a broad distinction as the administrative/production worker dichotomy." *Id*. at 87

28  Cal. App. 4th at 827.                                    3

1   discretionary element, because of the lack of commonality.  At that point the class would

2   have to be de-certified, or the case would break into hundreds of separate individual trials,

3   not only for the "discretion" element, but also for damages.

4   **B.    Due Process**

5        Washington Mutual's due process rights also would be violated by forcing it to

6   litigate with a class where, as here, it can only lose to the class, but cannot win.  If only one

7   of the elements of the exemption is subject to common proof, and the other is not,

8   Washington Mutual, who must prevail on both to obtain a defense judgment, cannot beat

9   the entire class and obtain a final adjudication that would protect it from other lawsuits.

10  While it may be true that plaintiffs could defeat the administrative exemption if they are not

11  "administrative" employees, Washington Mutual cannot win unless it establishes *both* that

12  they are "administrative" employees *and* that they exercise discretion.  If the second of

13  these elements is not susceptible to common, class-wide proof, by definition Washington

14  Mutual cannot obtain a judgment against the class.

15       A class action certification procedure which places a defendant in such a "no-win"

16  position violates his due process rights.  *Home Savings and Loan Association v. Superior*

17  *Court*, 54 Cal. App. 3d 208, 211 (1976).  This problem is more usually presented when a

18  defendant is compelled to litigate merits issues with an individual plaintiff, before class

19  certification.  In that situation if the plaintiff wins, class certification and collateral estoppel

20  binds the defendant.  If the plaintiff loses, however, other members of the uncertified class

21  are not bound and the defendant gets no collateral estoppel protection.  This is the reason

22  why class certification must precede merits determinations, so that both sides are on equal

23  footing, win or lose.  If the plaintiff class wins on the merits, it gets a judgment; if defendant

24  wins, it gets a judgment (and res judicata protection) against the class.

25       Certifying a class here on just one of the two elements of the exemption under

26  discussion would present exactly the same problem, albeit in a slightly different procedural

27  posture.  Here, the plaintiff class would have a chance to win if it prevailed on the

28  "administration" prong of the exemption on summary judgment.  If the class lost on that,

4

1   however, Washington Mutual would not get a judgment and would not get any real

2   protection from future suits, because it would be unable to establish the merits of the

3   "discretion" prong on a common basis against the class. Instead, the class would probably

4   have to be decertified and the individuals left to litigate the myriad of uncommon issues on

5   their own in separate proceedings. Under *Home Savings*, this is "a theoretical but

6   nonetheless unfair, no-win option." *Home Savings*, 54 Cal. App. 3d at 212. No plaintiff in

7   her right mind would opt out of a class in which she had no risk of loss, but only of gain,

8   skewing that process against Washington Mutual.

9       At oral argument, plaintiffs suggested that any eventual decertification of the class in

10   this case would not present due process concerns because class decertification is an option

11   in any case and does not usually raise due process concerns. That may be true in the usual

12   case, where decertification is recognized as a tool to deal with changing circumstances.

13   That is not the case here. Here, the future course is clear: Either plaintiffs win on summary

14   judgment or the class must be decertified. That is no more than a class for the single

15   purpose of giving plaintiffs a chance to win a class judgment, but no chance for defendants

16   to win a class judgment. This is exactly the due process concern identified by *Home*

17   *Savings*, and prevents this class from being certified.

18

19   DATED: June 30, 2006       HELLER EHRMAN LLP

20

21                   By _____

22                     JONATHAN HAYDEN
                       Attorneys for Defendant

23                     WASHINGTON MUTUAL BANK
                       FKA WASHINGTON MUTUAL BANK, FA

24

25

26

27

28                           5

## PROOF OF SERVICE BY FEDERAL EXPRESS

1

2     I, Carolyn Ekstedt, declare as follows:

3     I am employed with the law firm of Heller Ehrman LLP, whose address is 333 Bush

4  Street, San Francisco, CA 94104-2878. I am readily familiar with the business practices of

5  this office for collection and processing of correspondence for mailing with the United

6  States Postal Service; I am over the age of eighteen years and not a party to this action.

7     On June 30, 2006, I served the following::

8

9     **WASHINGTON MUTUAL'S SUPPLEMENTAL BRIEF RE**
    **PREDOMINANCE AND DUE PROCESS ISSUES;**

10

11  on the plaintiff in this action by placing true copies thereof in a sealed envelope, airbill

12  addressed as shown, for collection and delivery pursuant to the ordinary business practice of

13  this office, which is that correspondence for overnight delivery via Federal Express service

14  is collected and deposited with the courier service representative on the same day in the

15  ordinary course of business:

16  Mark Yablonovich, Esq.
    Initiative Law Group LLP
17  1875 Century Park East, Suite 1800
18  Los Angeles, CA  90067

19     I declare under penalty of perjury under the laws of the State of California that the
20
    foregoing is true and correct. and that this proof of service was executed on June 30, 2006 at
21
    San Francisco, California.
22

23                    *Carolyn Ekstedt*

24                    Carolyn Ekstedt

25

26

27

28

Heller
Ehrman LLP

PROOF OF SERVICE VIA FEDERAL EXPRESS; CASE NO. BC 323376

# EXHIBIT F

5·7/5

Mark Yablonovich, Esq. (SBN 186670)
Marc Primo, Esq. (SBN 216796)
Shawn Westrick, Esq. (SBN 235313)
Initiative Legal Group LLP
1875 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Plaintiffs and Class Members

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| KIMBLYN JOHNSON CREESE, an individual, PHYLLIS PARKER, an individual, and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WASHINGTON MUTUAL BANK, a Washington corporation; WASHINGTON MUTUAL MORTGAGE SECURITIES, INC., a Delaware corporation; WASHINGTON MUTUAL BROKERAGE HOLDINGS, INC., a California corporation, WASHINGTON MUTUAL COMMUNITY DEVELOPMENT, INC., a California Corporation, and DOES 1 through 10, inclusive, <br><br> Defendants. | **Case Number: BC323376** <br><br> CLASS ACTION <br><br> [Assigned to the Honorable Terry A. Green] <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT WASHINGTON MUTUAL'S SUPPLEMENTAL BRIEF RE PREDOMINANCE AND DUE PROCESS ISSUES** <br><br> Action Filed:   October 21, 2004 |

## I.    Preliminary Statement

This class action is entirely about whether or not Defendant properly availed itself of the administrative exemption, under California law. The limited evidence presented in the parties' certification papers demonstrates that there is a common issue upon which the merits of the case rest: *are underwriters non-exempt "production" workers under California law?* Accordingly, this class should be certified so that the case may proceed to the *merits* phase, wherein both parties will have an opportunity to conduct discovery and prove their case as to this common question.

During the class certification hearing, the Court expressed some concern that the "production" designation could "be the exception that swallows the rule." First and foremost, Plaintiffs have only conducted discovery and presented argument for the proposition that there is a common question of *whether or not* underwriters are "production" workers. In other words, Plaintiffs only seek to convince the Court that there is a common question, not to convince the Court of the answer to that question.[1]

Bell v. Farmers Insurance Exchange, the leading California class action case to take up the administrative exemption, held that the class was properly certified with reference to the so-called "administrative-production dichotomy." Yet Defendant resists the Bell analysis, arguing, first, that it is only applicable in instances in which the employees at issue worked in "stand-alone" offices and, then, that the Bell analysis would implicate the weightiest due process issues, to Defendant's absolute detriment. In fact, Bell implies precisely the common question of law and fact set forth in Plaintiffs' Reply brief, the same common question that Plaintiffs have posed from the start: *Regardless of the amount of discretion and independent judgment exercised by underwriters, do they primarily perform "production" as opposed to "administrative" work, and are they thereby not properly designated as exempt?*

Not only does the question of whether Defendant's underwriters do what is regarded as

---

[1] That is the *only* burden Plaintiffs bear in moving for class certification. After certification, when the case moves to the merits phase, Plaintiffs will no doubt argue to the Court that it's actually the "administrative" designation that threatens to swallow the rule that employees are presumed to be non-exempt and it is the Defendant's burden to prove the administrative exemption applies *as an affirmative defense*. See Sav-On Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319, 338 (2004) (noting that the assertion of an exemption from overtime laws is an affirmative defense which the employer bears the burden of proving and if the court were to "require as a prerequisite to certification that plaintiffs demonstrate defendant's classification policy was ... "right as to all members of the class or wrong as to all members of the class," we effectively would reverse that burden).

1   "production," as opposed to administrative, work predominate, it is common to every single

2   underwriter. Because Defendant has chosen, throughout its briefing papers, to give virtually total

3   emphasis to its argument that underwriters exercise discretion and independent, Defendant has put

4   forth no evidence to contradict that the question above is common to the class. Digressions about

5   different "channels," management "matrices," and purported geographic diversity are of no

6   moment against the plainly predominant fact that these underwriters – no matter where they are or

7   who they work for – are not administrators.

8        As in <u>Bell</u>, too, whether employees for whom the administrative exemption is claimed

9   constantly exercised discretion and independent judgment is of no consequence if they did not

10   spend at least half of their time doing administrative tasks. Here, on the gamble that the Court will

11   ignore the administrative component of the administrative exemption, Defendant has filled its

12   papers with evidence of what might very well be instances of underwriters exercising their

13   discretion and independent judgment. As set forth in <u>Bell</u>, however, that entirely omits the inquiry

14   that is logically prior to the discretion and independent judgment inquiry.[2]

15        <u>Bell</u> granted summary judgment to plaintiffs *on the merits* of a class action claim

16   concerning the administrative exemption. What is dispositive here – with respect only to *class*

17   *certification* – is more modest. Plaintiffs need only show that there is a predominant question as

18   to whether Defendant's underwriters are properly designated under the administrative exemption

19   and, specifically, whether there is a predominant, class-wide issue as to whether the putative class

20   members performed a sufficient amount of administrative work – e.g., "advising the management,

21   planning, negotiating, representing the company, purchasing, and business research and control."

22   <u>Cooke v. General Dynamics Corp.</u>, 993 F. Supp. 56, 59 (D. Conn. 1997). In fact, Plaintiffs' *and*

23   Defendant's evidence, cumulatively, indicates that Defendant's underwriters performed absolutely

24   no administrative tasks whatsoever.

25

26   [2]   "Our conclusion obviates the need to inquire into plaintiffs' duties, that is, whether the plaintiffs are "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment" within

27   the meaning of subdivision 1(A)(1) of wage order No.4 (tit. 8, § 11040) and parallel federal regulations. [Citations omitted.] Since the term "administrative capacity" imposes an independent requirement of the exemption, our conclusion that claims representatives do not work in an "administrative role" within [the defendant's] business organization is dispositive and establishes

28   the non-exempt status." <u>Bell</u>, at 828-29.

1    While that evidence might well cast emanations on the merits of this case, and suggest

2 what could eventually be Plaintiffs' own motion for summary judgment, on Plaintiffs' motion for

3 *class certification*, evidence that tends to show that underwriters neither performed, nor were they

4 expected to perform, administrative tasks is offered for no purpose other than to show that there is

5 a predominant issue, overwhelmingly so, as to whether or not the underwriters did or did not do a

6 sufficient amount of administrative work to qualify for the administrative exemption.

7    Defendant's "due process" argument is no more availing. Defendant purports that, any

8 time a court makes a ruling, each side must be able to obtain an outcome or judgment of equal

9 consequence. However, there is no such principle, as evidenced by the fact that the only case cited

10 in support of Defendant's "due process" theory concerns entirely different circumstances. The

11 circumstances here – the prospect that the class will be decertified without Defendant having

12 obtained a judgment as to every single class member – is not only common, it is uncontroversial.

13   **II.    Argument**

14        **a.  Common Questions Of Law And Fact Predominate As To Whether**

15            **Defendant's Underwriters Are Eligible For The Administrative Exemption**

16   Just as in its Opposition brief, Defendant is so set on avoiding the

17 "administrative/production" analysis set forth in <u>Bell</u> that the preference is to completely

18 misrepresent the holding in <u>Bell</u>, revert to "discretion and independent judgment" analysis, and

19 then pretend it has just shown that the class ought not be certified. (<u>See</u> Defendant's Supplemental

20 Brief at 1:1-4:3) From the flaccid observation that "[t]he most important factor in <u>Bell</u> seemed to

21 be that the claims adjusters were managed in stand-alone offices," Defendant's Supplemental

22 Brief embarks on the same premature discretion and independent judgment analysis as appeared in

23 its Opposition brief. However, the fact that underwriters may have been "organized in three

24 different functional structures," approved loans in amounts ranging from $350,000 to $3.5

25 million,[4] and differently "mingled with non-exempt loan processors" does nothing to undermine

26 the fact that it is the very dearth of even arguably administrative tasks performed by these

---

[4]    Defendant's Supplemental Brief at 2:3. Even though the discretion and independent judgment analysis need not even be reached if the administrative-production analysis is conclusive, the deception embedded in the suggestion that decisions on fully collateralized loans, of whatever amount, actually put any Washington Mutual funds seriously at risk is indicative of just how far Defendant has to reach to create an image of these underwriters doing work that is actually of great consequence.

1  underwriters that makes this case not just appropriate, but ideally suited, for certification.

2  Defendant calls for a "tally" of the issues that are common and uncommon, so as to assess

3  whether the common issues predominate. Even with the opportunity to brief the issue with an

4  extra five pages, the tally as to specific instances where Defendant has identified even potentially

5  uncommon issues bearing on whether its underwriters performed administrative work remains the

6  same: *zero*. Accordingly, every instance in which Defendant has claimed its underwriters

7  exercised discretion and independent judgment concerned a task that is unambiguously related to

8  the production of loans, thereby begging the administrative-production question.

9  Apparently conscious of this massive deficiency, and the implication that it renders

10  certification as to the administrative-production question entirely proper, Defendant abortively

11  offers up some supposedly administrative tasks in its Supplemental Brief (at 3:4-9), and appends

12  to them the conclusion that "common issues simply do not predominate." (Id. at 3:14-15.)

13  However, as against Plaintiffs already having demonstrated that these underwriters have

14  performed absolutely no administrative work, "whether (and how often) they took lunch and meal

15  breaks, and the like" is completely irrelevant, because Defendant has never attached such varying

16  factors to any administrative task.

17  Moreover, even assuming Defendant were able to find an underwriter who had committed

18  an actual administrative task is hardly enough to defeat the overwhelmingly common

19  administrative vs. production question arising from the fact that Defendant's underwriters were

20  neither conceived as administrators, nor did they function as administrators. Whatever variation a

21  lunch break taken mid-morning rather than at noon would introduce has no effect on this common

22  question.

23  Defendant has identified a common question that predominates across the class. Rather

24  than disputing that, Defendant has resumed with its attempt to suggest that Plaintiffs must, now,

25  prove that the exemption was properly applied here. That is Defendant's burden, on a pure merits

26  question, a burden that arises *after* certification. As of now, Plaintiffs have amply identified the

27  common issue that will conclusively establish liability: *whether Defendant's underwriters*

28  *performed a sufficient proportion of administrative tasks*. That they appear to have performed

- 4 -

1    none gives Plaintiffs cause for optimism on the merits; but that is simply not the question to be

2    taken up when class certification is at issue.

### b. The Prospect Of This Class Ultimately Being Decertified In No Way Implicates Due Process Concerns

5    Defendant premises it's "due process" argument on the entirely novel assertion that it

6    must, along with any future ruling that decertifies the class, also receive a ruling that, for all of

7    time and as to all potential plaintiffs, immunizes it from liability.  Yet Defendant offers absolutely

8    no authority to support this argument, only an attenuated analogy to a case that stands only for a

9    different legal proposition drawn from unrelated circumstances  See  Home Savings v. Superior

10   Court, 54 Cal. App. 3d. 208, 212 (1976) (class was certified, but notice was not given, thereby

11   allowing every class member to opt out of an adverse judgment).

12   This has nothing to do with Defendant's desire that this issue be settled forever should

13   Defendant establish that its application of the administrative exemption is proper.  Plaintiffs have

14   identified a common question.  That the question does not carry with it the guarantee that it will be

15   identically dispositive for Defendant is perhaps unfortunate, for Defendant; but it does not

16   remotely rise to the level of a due process issue.

17   Defendant's inability to find an even remotely on-point case is not surprising.  Every day,

18   courts adjudicate matters where, one side "can only lose . . . but cannot win."  In a declaratory

19   relief action, for instance, typically only the moving party can "win" – by obtaining the requested

20   judicial declaration – because a finding adverse to the moving party will usually not necessarily

21   imply a further finding in favor of the non-movant.[6]  So, too, here.

22   Finally, in the specific context of class actions, the decertification of classes is sufficiently

23   common (provided for as it is in the Rules of Court[7]) that it is difficult to know where to begin in

24

25   ---

[6]       The number of declaratory relief cases that debunk Defendant's "due process" theory are too numerous to list, but they
26   share the common dynamic best exemplified by a simplified model.  Suppose non-movant (NM) occupies a property (X), and
     movant (M) brings a declaratory relief action seeking a judicial declaration that "M holds title, in fee simple absolute, to X."
27   Should M not prevail, the decision will be *res judicata* as to him or her.  However, that in no way entitles NM to any ruling that
     bears on the ownership of X.  While it could certainly be said that NM "could only lose, but could not win," such a declaratory
     relief action in no way offends notions of due process.  There is simply not, as Defendant posits, the entitlement to "real protection
28   fro future suits" whenever a party is in jeopardy of an adverse judgment and prevails, but does not also affirmatively establish its
     entitlement to such "protection."
[7]       See Cal. R. Ct. R. 1854.

1  making the point that there is nothing pernicious about a decertification that does not also set a

2  defendant free and clear of all liability for all class members for all time.[8]  Indeed, to adopt

3  Defendant's argument regarding decertification would by definition render *any* decertification a

4  violation of "due process."  Defendant can equally bring its own action for declaratory relief

5  against a class of *defendants* (who, of course, would have no reasonable expectation of receiving a

6  judgment of liability if Defendant fell short of being entitled to a declaration of no liability).

7  **III.    Conclusion**

8          Plaintiffs have amply identified a predominant common question:  *do underwriters*

9  *perform administrative work more than half the time?*-- or, alternatively and equivalently *do*

10 *underwriters spend more than half their time doing "production" work?"*  Either way, this is a

11 class that ought to be certified.

12

13 Dated: July 5, 2006

14                                                          Respectfully submitted,
                                                            Initiative Legal Group LLP

15                                                          By: _____

16                                                          Mark Yablonovich
                                                            Marc Primo
17                                                          Shawn Westrick

18

19

20

21

22

23 [8]     See, e.g., Grogan-Beall v. Ferdinand Roten Galleries, Inc., 133 Cal. App. 3d 969 (1982) (noting that the trial court had
   decertified a class without any indication that there existed a due process claim even though Defendant did not get a decision on the
24 merits); Wilson v. San Francisco Fed. Sav. & Loan Assn., 62 Cal. App. 3d 1 (1976) (same); Altman v. Manhattan Savings Bank, 83
   Cal. App. 3d 761 (1978) (same); Green v. Obledo, 29 Cal. 3d 126 (1981) (same).  It goes without saying that federal courts have
25 also decertified cases, even cases involving the administrative exemption, without so much as a mere suggestion that a
   decertification may raise any type of due process concern.  See, e.g., Kelley v. SBC, Inc., 1998 U.S. Dist. LEXIS 18643 (N.D.Cal.
26 1998) (noting that decertification in the future was a possibility, but without discussing any due process problem in an
   administrative exemption cases); Camp v. Progressive Corp., 2004 U.S. Dist. LEXIS 19172 (E.D. La. 2004) (same); In re Farmers
27 Insurance Exchange Claims Representatives' Overtime Pay Litigation, 336 F. Supp. 2d 107 (D. Ore. 2004) (same); Moss v.
   Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000) (noting that defendant's devotion to differences in the name and opt-in
28 claim based on an improper administrative exemption that violated the FLSA and defendant intended to defend itself, as
   Washington Mutual has made clear, based on an administrative exemption defense common to the entire class).

1

# PROOF OF SERVICE

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3
         I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18)
4  and not a party to this action. My business address is: Initiative Legal Group LLP, 1875 Century Park
   East, Suite 1800, Los Angeles, California 90067.

5
         On July 5, 2006, I served the within document(s) described below as:
6

7  **PLAINTIFFS' RESPONSE TO DEFENDANT WASHINGTON MUTUAL'S**
   **SUPPLEMENTAL BRIEF RE PREDOMINANCE AND DUE PROCESS ISSUES**

8
                  Andrew R. Livingston, Esq.
9                 Jonathan Hayden, Esq.
                  Heller, Ehrman LLP
10                333 Bush Street
                  San Francisco, California 94104
11                *Facsimile: 415-772-6268*

12  (X)  **FACSIMILE:** I caused the above-referenced document(s) to be transmitted to the above-
         named person at the telephone numbers above.
13

14  (X)  **MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelopes were
         mailed with postage thereon fully prepaid.
15

16  ( )  **PERSONAL:** I caused such envelope to be delivered by hand.

17  ( )  **OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to
         an overnight courier service (Federal Express), for delivery to the above addressee(s).
18

19  (X)  **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
         above is true and correct.

20  ( )  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court
         at whose direction the service was made.
21

22       **EXECUTED** this document on July 5, 2006, at Los Angeles, California.

23

24

25                                    ALIDA MEKSAVANH

26

27

28

# EXHIBIT G

Mark Yablonovich, Esq. (SBN 186670)
Marc Primo, Esq. (SBN 216796)
Shawn Westrick, Esq. (SBN 235313)
INITIATIVE LEGAL GROUP LLP
1875 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5637
Fax: (310) 861-9051

Attorneys for Plaintiff

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| KIMBERLY JOHNSON CREESE, an individual, PHYLLIS PARKER, an individual, and on behalf of other members of the general public similarly situated, | Case Number: BC323376 [Assigned to Hon. Terry A. Green, Department 14] |
| Plaintiffs, | **NOTICE OF MINUTE ORDER DENYING CLASS CERTIFICATION** |
| vs. | **DATE:**          **July 24, 2006** **LOCATION:**  **Dept. 14** |
| WASHINGTON MUTUAL BANK, a Washington corporation; WASHINGTON MUTUAL MORTGAGE SECURITIES, INC., a Delaware corporation; WASHINGTON MUTUAL BROKERAGE HOLDINGS, INC., a California corporation, WASHINGTON MUTUAL COMMUNITY DEVELOPMENT, INC., a California Corporation, and DOES 1 through 10, inclusive, | |
| Defendants. | |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** the Court in the above-referenced matter issued a minute order denying class certification on July 24, 2006.

Attached herein as "Exhibit A" is a true and correct copy of this minute order.

DATED: August 11, 2006                    Respectfully Submitted,

INITIATIVE LEGAL GROUP LLP

By: _____
Mark Yablonovich, Esq.
Mark Primo, Esq.
Shawn Westrick, Esq.
Attorneys for Plaintiff

- 2 -

 

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 07/24/06 | | | DEPT. 14 |
|---|---|---|---|
| HONORABLE TERRY A. GREEN | JUDGE | J. LORENZ | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. | Deputy Sheriff | N/A | Reporter |

| 9:00 am | BC323376 | | |
|---|---|---|---|
| | KIMBERLY JOHNSON CREESE ET AL VS WASHINGTON MUTUAL BANK | Plaintiff Counsel | N/A |
| | | Defendant Counsel | N/A |
| | "NON-COMPLEX 2-15-05" | | |

**NATURE OF PROCEEDINGS:**

NON-APPEARANCE CASE


Standards for Class Certification:

   Class certification is appropriate when "the question is one of a common or general interest, of many persons, or when partie sare numerous and it is impracticable to bring them all before the court." Code of Civil Procedure Section 382.  To obtain certification, a party must establish the existence of both an ascertainable class and a well definied community of interest among class members. [Citation]  The community of interest requirement involves three facotrs: [1] predominant questions of law or fact; [2] class representatives with claims or defenses typical of the class; and [3] class representatives who can adequately represent the class.  The party seeking certification has the burden of establishing the prerequisites for a class action.  Lockheed Martin Corporation v. Superior Court (2003) 29 Cal.4th 1096, 1104; Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435.

Summary:

   Plaintiffs, Kimblyn Johnson Creese, Phyllis Parker filed an action against Washington Mutual Bank and its affiliates ("Defendants") on behalf of current and

Page   1 of  11   DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

DEPT. 14

HONORABLE TERRY A. GREEN          JUDGE   J. LORENZ          DEPUTY CLERK

HONORABLE                       JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR

P. CORTEZ, C.A.          Deputy Sheriff   N/A          Reporter

| 9:00 am | BC323376 | | |
|---|---|---|---|
| | KIMBERLY JOHNSON CREESE ET AL<br>VS<br>WASHINGTON MUTUAL BANK | Plaintiff<br>Counsel | N/A |
| | | Defendant<br>Counsel | N/A |
| | "NON-COMPLEX 2-15-05" | | |

**NATURE OF PROCEEDINGS:**

former underwriters, employed by Defendants, who
worked in loan fulfillment centers dedicated
exclusively to the production of loans.  Plaintiffs
allege that Defendants, who worked in loan fulfillment
centers dedicated exclusively to the production of
loans.  Plaintiffs allege that Defendants
misclassified their underwriters as administrative
employees exempt from overtime laws despite the
fact that the underwriters lacked the requisite
independent judgment and discretion to support a
valid administrative exemption.

The proposed Class is defined as:

  All current and former employees of Defendant who
were employed as underwriters and classified as exempt
from overtime by Defendant at their mortgage lending
business locations in the State of California within
four (4) years of the filing of this complaint
through the resolution of this lawsuit.

Class certification is sought for the following Six
Cause of Action alleged in Plaintiffs' Complaint:

  1. Violation of California Labor Code Sections 510
     and 1198;

  2. Willful violation of California Labor Code
     Section 226(a);

Page   2 of   11   DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

HONORABLE  TERRY A. GREEN                JUDGE    J. LORENZ

HONORABLE                         JUDGE PRO TEM

          P. CORTEZ, C.A.         Deputy Sheriff  N/A

DEPT. 14

DEPUTY CLERK

ELECTRONIC RECORDING MONITOR

Reporter

9:00 am  BC323376

KIMBERLY JOHNSON CREESE ET AL
VS
WASHINGTON MUTUAL BANK

"NON-COMPLEX 2-15-05"

Plaintiff
Counsel    N/A

Defendant
Counsel    N/A

NATURE OF PROCEEDINGS:

  3. Violation of California Labor Code Sections 201
     and 202;

  4. Conversion and Theft of Labor;

  5. Violation of Business and Professions Code
     Section 17200 et seq.; and

  6. Violation of California Labor Code Section
     226.7(a)

ANALYSIS

   Class certification is appropriate when "the
question is one of a common or general interest, of
many persons, or when parties are numerous and it is
impracticable to bring them all before the court."
Code of Civil Procedure Section 382.  "To obtain
certification, a party must establish the existence
of both an ascertainable class and a well-defined
community of interest amoung class members. [Citation]
The community of interest requirement involves three
factors:'[1] predominant questions of law or fact; [2]
class represetatives with claims or defenses typical
of the class; amd [3] class representatives who can
adequately represent the class. The party seeking
certification has the burden of establishing the
prerequisites for a class action." Sav-On Drug Stores,

Page   3 of   11    DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

DEPT. 14

HONORABLE TERRY A. GREEN          JUDGE J. LORENZ          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR

P. CORTEZ, C.A.          Deputy Sheriff   N/A          Reporter

| 9:00 am | BC323376 | | |
|---------|----------|---|---|
| | KIMBERLY JOHNSON CREESE ET AL | Plaintiff Counsel | N/A |
| | VS WASHINGTON MUTUAL BANK | Defendant Counsel | N/A |
| | "NON-COMPLEX 2-15-05" | | |

**NATURE OF PROCEEDINGS:**

questioned the declarants on particular paragraphs
of their executed declarations refutes many of the
claims of Plaintifs' Motion.  As such, Defendants'
evidence wherein defense counsel actually questioned
the declarants on particular paragraphs of their
executed declarations refutes many of the claims of
Plaintiffs' Motion.  As such, Defendants' evidence
undermined the persuasiveness of the plaintiff's
evidence.  The Appellate Court opined, "While
plaintiff correctly states she need only present
substantial evidence of the class requirements
(Lockheed Martin Corp. v. Superior Court (2003)
29 Cal.4th 1096, 1108, there is no rule that
conflicting evidence of the class action requisites;
this is a discretionary determination to be made by
the trial court.  Nothing in the law prevents the
court from considering the totality of the evidence
in making that determination.  If this were not the
rule, plaintiff could pick and choose among the
facts to present to the court, providing an incomplete
picture of the litigable issues, in order to ensure a
certification."

These variances were addressed in Plaintiffs'
Reply and Plaintiffs suggest in accordance with the
holding in Sav-On Drug Stores, Inc. v. Superior Court
Supra, that the Court should find the variances of
no effect or divide the underwriters in subclasses.
Either way, Plaintiffs argue that the variances
should not bar classification as a matter of law.
Plaintiffs further argue in their Reply that there

Page  6 of  11  DEPT. 14

 

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

HONORABLE  TERRY A. GREEN          JUDGE      J. LORENZ        DEPT. 14

HONORABLE                     JUDGE PRO TEM                 DEPUTY CLERK

P. CORTEZ, C.A.         Deputy Sheriff   N/A      ELECTRONIC RECORDING MONITOR

                                                      Reporter

9:00 am | BC323376                   Plaintiff
                                     Counsel    N/A
         KIMBERLY JOHNSON CREESE ET AL
         VS                          Defendant
         WASHINGTON MUTUAL BANK      Counsel    N/A

         "NON-COMPLEX 2-15-05"

**NATURE OF PROCEEDINGS:**

Inc. v. Superior Court (2004) 34 Cal.4th 319, 326,
citing Lockheed Martin Corporation v. Superior
Court (2003) 29 Cal. 4th 1096, 1104.

For the reasons that follow, after considering all
of the relevant factors, the court finds that the
Plaintiffs failed to meet the requisite burden for
a person seeking certification, namely the establish-
ment of the existence of both an ascertainable class
and a well-defined community of interest among the
class members. (Linder v Thrifty Oil Co.(2000)
23 Cal, 4th 429, 435; and Washington Mutual Bank v.
Superior Court (2001) 24 Cal.4th 906, 913.

1. Commonality.  The Plaintiffs have not carried their
burden to supply sufficient evidence to show
commonality.

  In order to determine the issue of commonality
the Court must ascertain whether there are issues
common to the class as a whole sufficient in
importance so that their adjudication on a class
basis will benefit both the litigants and the court.
Vasquez v. The Superior Court of San Joaquin County
(Karp) (1971) 4 Cal. 3d 800, 811.  The Court must
consider whether the theory of recovery advanced
by the proponents of certification, is an analytical
matter, likely to prove amenable to class treatment.
Save-On Drug Stores, Inc. v. Superior Court Supra.
A class may be certified when common questions of

                    Page   4 of  11    DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

 

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 07/24/06 | | DEPT. 14 |
| HONORABLE TERRY A. GREEN JUDGE | J. LORENZ | DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. Deputy Sheriff | N/A | Reporter |

| | | | |
|---|---|---|---|
| 9:00 am | BC323376 | Plaintiff Counsel | N/A |
| | KIMBERLY JOHNSON CREESE ET AL VS WASHINGTON MUTUAL BANK | Defendant Counsel | N/A |
| | "NON-COMPLEX 2-15-05" | | |

**NATURE OF PROCEEDINGS:**

law and fact predominate over individualized questions. As a general rule, if the Defendants' liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. In order to determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged. Hicks v. Kaufman & Broad Home Corp. (2001) 89 Cal.App.4th 908, 916.

Plaintiffs are arguing in their Complaint and Moving Papers that they were misclassified under the administrative exemption as underwriters in an effort, by Defendant Washington Mutual Bank, to save money on overtime, etc. Thus, Plaintiffs primary issue at trial is whether underwriters were, as a whole, misclassified. There are other ancillary Causes of Action that Plaintiffs should provide proof of common evidence of as well. However, in order to satisfy the commonality element, Plaintiffs would have to provide sufficient evidence that misclass- ification could be addressed at trial with common proof because the liability or lack thereof Defendant for misclassification directly impacts the remaining Causes of Action.

Plaintiffs provided the job manuals and boilerplate declarations iin an effort to establish uniformity, a pattern, practice and/or commonality, at minimum, Defendants' evidence wherein defense counsel actually

MINUTES ENTERED
07/24/06
COUNTY CLERK

 

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

HONORABLE TERRY A. GREEN    JUDGE

HONORABLE

P. CORTEZ, C.A.    Deputy Sheriff

**DEPT.** 14

J. LORENZ    DEPUTY CLERK

JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR

N/A    Reporter

9:00 am | BC323376

KIMBERLY JOHNSON CREESE ET AL
VS
WASHINGTON MUTUAL BANK

"NON-COMPLEX 2-15-05"

Plaintiff
Counsel    N/A

Defendant
Counsel    N/A

**NATURE OF PROCEEDINGS:**

are no two common issues of fact and law that will
determine whether or not Defendant misclassified its
underwriters, namely, (1) Do underwriters exercise
the required level of discretion and independent
judgment for the administrative exemption to be
applicable to them, given that underwriters must
follow uniform and detailed procedures and guidelines?
(2) Regardless of the amount of discretion and
independent judgment exercised by underwriters, do
they primarily perform "production" as opposed to
"administrative" work, and are they thereby not
properly designated as exempt?

   Factually, Plaintiffs' first common question has
been successfully refuted by Defendants' evidence.
Underwriters as a whole are not necessarily following
detailed, uniform procedures.

   The nature and type of "level of discretion" and
"independent judgment" depends upon many factors,
as set forth in Defendant's evidence.  Such factors
include the different products underwritten: Retail,
wholesale, loans to "emerging markets", custom
construction, and Government loans.  Variations
also can be based on geography and, naturally, on
individual competency.

   It is this court's opinion that these differences
and variations defeat commonality in this case, and,
if this class were certified as proposed by
plaintiffs, the trial would devolve into a series of

Page    7 of   11    DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

  

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06 | | DEPT. 14
---|---|---

| HONORABLE TERRY A. GREEN | JUDGE | J. LORENZ | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. | Deputy Sheriff | N/A | Reporter |

| 9:00 am | BC323376 | | Plaintiff Counsel | N/A |
|---|---|---|---|---|
| | KIMBERLY JOHNSON CREESE ET AL VS WASHINGTON MUTUAL BANK | | Defendant Counsel | N/A |
| | "NON-COMPLEX 2-15-05" | | | |

**NATURE OF PROCEEDINGS:**

complicated mini-trials needed to address the variations noted. In this respect, the nature of the variations are fundamentally different here than in Sav-On Drug Stores, Inc. v. Sup Ct, Supra. Where..."the only difference between Defendant's declarations and Plaintiffs' evidence is that the parties disagree on whether certain identical work tasks are 'managerial' or 'non-managerial.'" Id at 331. Further, unlike our case, the ultimate resolution of the "managerial" vs. "non-managerial" issue cannot be mechanically resolved, as in Save On, by assigning tasks to each side of the "ledger."

This court further agrees with the courts in Edwards v. Audubon Ins. Group, (2004) U.S. Dist. LEXIS 27562 (S.D. Miss) and Havey v. Homebound Mortgge, Inc. (2005) U.S. Dist. LEXIS 27036 (D. Vt). That the nature of the job of underwriting involves the clear exercise of discretion and judgment.

Based upon the instant facts and evidence contained in the moving papers, it is difficult to say that if Defendants were found liable to Phyllis Parker then they would be liable to Kimblyn Creese or Joann Gullo.

This court has read and considered the supplemental briefing on the issue of the administrative/production dichotomy. The plaintiff raises the issue of whether the individuals here are administrative or

MINUTES ENTERED
07/24/06
COUNTY CLERK

 

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06 | | DEPT. 14
---|---|---

HONORABLE TERRY A. GREEN    JUDGE | J. LORENZ    DEPUTY CLERK

HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR

P. CORTEZ, C.A.    Deputy Sheriff | N/A    Reporter

9:00 am | BC323376

KIMBERLY JOHNSON CREESE ET AL
VS
WASHINGTON MUTUAL BANK

"NON-COMPLEX 2-15-05"

Plaintiff Counsel    N/A

Defendant Counsel    N/A

**NATURE OF PROCEEDINGS:**

production, and, because the issue is raised and
so framed, is entitled to class certification.

The Court in Bell v. Farmers Ins, (2001) 87 Cal
App 4th 805, recognized that "the administrative/
production worker dichotomy is a somewhat gross
distinction that may not be dispositive in many
cases." Id at 826.  It is not helpful in this case,
given lack of commonality.  Moreover, there is scant
evidence in the record to support the conclusion that
the "production."  The Bell Court noted that
underwriters are administrative employees.

2. Superiority

The superiority criterion is manifest in the
determination that a class action brought under
CCP Section 382 would produce substantial benefits to
the litigants and the judicial system.  Schneider v.
Vernnard (1986) 183 Cal.App. 3d 1340, 1347.  The
court should evaluate whether the proposed class suit
is the only effective way to halt and redress the
alleged wrongdoing, or to prevent unjust advantage
to Defendants.  Linder v. Thrifty Oil Co. (2000)
23 Cal. 4th 429, 446.

This Court concludes that, for the reasons already
stated, the plaintiffs have not established by a
preponderance of the evidence, that the class
action proceeding is Superior to alternate means

Page    9 of    11    DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 07/24/06

|  | | DEPT. 14 |
|---|---|---|
| HONORABLE TERRY A. GREEN | JUDGE | J. LORENZ | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. | Deputy Sheriff | N/A | Reporter |

9:00 am   BC323376

KIMBERLY JOHNSON CREESE ET AL
VS
WASHINGTON MUTUAL BANK

Plaintiff Counsel   N/A

Defendant Counsel   N/A

"NON-COMPLEX 2-15-05"

**NATURE OF PROCEEDINGS:**

for a fair and efficient adjudication of the
litigation.

DATE: JULY 24, 2006        TERRY A. GREEN
                           JUDGE OF THE SUPERIOR COURT

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
7/24/06 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 7/24/06

John A. Clarke, Executive Officer/Clerk

Page 10 of 11    DEPT. 14

MINUTES ENTERED
07/24/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 07/24/06 | | DEPT. 14 |
| HONORABLE TERRY A. GREEN | JUDGE J. LORENZ | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| P. CORTEZ, C.A. | Deputy Sheriff N/A | Reporter |

| | | |
|---|---|---|
| 9:00 am | BC323376 | Plaintiff Counsel    N/A |
| | KIMBERLY JOHNSON CREESE ET AL VS WASHINGTON MUTUAL BANK | Defendant Counsel    N/A |
| | "NON-COMPLEX 2-15-05" | |

**NATURE OF PROCEEDINGS:**

By: _____
        JEANNINE LORENZ

Page  11 of  11    DEPT. 14

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is: Initiative Legal Group LLP, 1875 Century Park East, Suite 1800, Los Angeles, California 90067.

On August 11, 2006, I served the within document(s) described below as:

**NOTICE OF MINUTE ORDER DENYING CLASS CERTIFICATION**

> Andrew R. Livingston, Esq.
> Jonathan Hayden, Esq.
> Heller, Ehrman LLP
> 333 Bush Street
> San Francisco, California 94104
> *Facsimile: 415-772-6268*

(X) **FACSIMILE**: I caused the above-referenced document(s) to be transmitted to the above-named person at the telephone numbers above.

(X) **MAIL**: I deposited such envelope in the mail at Los Angeles, California. The envelopes were mailed with postage thereon fully prepaid.

( ) **PERSONAL**: I caused such envelope to be delivered by hand.

( ) **OVERNIGHT COURIER**: I caused the above-referenced document(s) to be delivered to an overnight courier service (Federal Express), for delivery to the above addressee(s).

(X) **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( ) **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**EXECUTED** this document August 11, 2006, at Los Angeles, California.


_____
ARMEN BOYAJIAN

- 3 -

# EXHIBIT H

2nd Civil No. **B193931**

IN THE
**COURT OF APPEAL**
STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION TWO

KIMBLYN CREESE, ET AL.,
Petitioner,

v.

SUPERIOR COURT OF THE STATE OF CALIFORNIA,
FOR THE COUNTY OF LOS ANGELES,
Respondent,

WASHINGTON MUTUAL BANK, ET AL.,
Real Party in Interest.

_____

Hon. Terry A. Green, Judge
Superior Court of Los Angeles
Order entered July 24, 2006, L.A.S.C. No. BC 323376

_____

**APPELLANT'S OPENING BRIEF**

_____

Mark Yablonovich (Bar No. 186670)
Marc Primo (Bar No. 216796)
Matthew Theriault (Bar No. 244037)
**Initiative Legal Group, LLP**
1875 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Petitioner
KIMBLYN CREESE, ET AL.

## CERTIFICATE OF INTERESTED PARTIES

The following individuals or entities have a pecuniary or other interest in the outcome of this proceeding:

Kimblyn Creese

Phyllis Parker

Washington Mutual Bank

Dated: Dated: May 22, 2007          Initiative Legal Group, LLP

By: _____

          Mark Yablonovich
          Marc Primo
          Linh Hua
          Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 6

STATEMENT OF APPEALABILITY .......................................................... 7

STANDARD OF REVIEW ............................................................................ 7

QUESTIONS PRESENTED ........................................................................... 8

LEGAL ARGUMENT ................................................................................... 8

    I.  THE RESPONDENT COURT DID NOT SUPPORT ITS DENIAL
        OF CLASS CERTIFICATION WITH SUBSTANTIAL EVIDENCE,
        APPLIED THE WRONG LEGAL STANDARD, AND PREMATURELY
        RULED ON THE MERITS RATHER THAN DETERMINING
        WHETHER APPELLANT HAD SATISFIED THE REQUISITES FOR
        CLASS CERTIFICATION ...................................................................... 11

          A.  Common Questions of Law And Fact Predominate As To
             Whether Real Party's Underwriters Are Eligible For the
             Administrative Exemption ...................................................... 13

    II. THE  RESPONDENT COURT LACKED ANY EVIDENCE TO
       SUPPORT ITS DENIAL OF CERTIFICATION REGARDING REAL
       PARTY'S UNIFORM VIOLATIONS OF LABOR CODE
       SECTION 226. ....................................................................................... 15

          A.  California Labor Code Section 226, Subd. (a)(9) Requires
             Employers To Include "All Applicable Hourly Rates In Effect
             During The Pay Period" On Employee Wage Statements ..... 16
          B.  Real Party Uniformly Failed to Include "All Applicable Hourly
             Rates In Effect During The Pay Period" On Employees Wage
             Statements .............................................................................. 16

# TABLE OF CONTENTS

Page

III. THE RESPONDENT COURT ERRED WHEN IT IMPLICITLY DENIED
CLASS CERTIFICATION AS TO APPELLANT'S MEAL AND REST
BREAK ALLEGATIONS ......................................................................... 18

CONCLUSION............................................................................................ 19

CERTIFICATE OF COUNSEL .................................................................. 21

## TABLE OF AUTHORITIES

Page

**STATE CASES**

Bell v. Farmers Insurance Exchange (2001)

    87 Cal. App. 4th 805, 821 ................................................... 1, 2, 3, 11, 12, 13

Bell v. Farmers Insurance Exchange (2004)

    115 Cal. App. 4th 715, 737-38 .............................................. 1, 2, 11, 12, 13

Clothesrigger, Inc. v. GTE Corp. (1987)

    191 Cal.App.3d 605, 611-612 ....................................................................... 8

Dunbar v. Albertson's, Inc. (2006)

    141 Cal. App. 4th 1422, 1430 ...................................................................... 9

Linder v. Thrifty Oil Co. (2000)

    23 Cal.4th 429, 435 .................................................................................... 7

National Solar Equipment Owners' Ass'n, Inc. v. Grumman Corp. (1991)

    235 Cal.App.3d 1273, 1281 .................................................................... 7, 8

Richmond v. Dart Industries, Inc. (1981)

    29 Cal.3d 462, 470 ................................................................................. 7, 8

Sav-On Drug Stores, Inc. v. Superior Court (2004)

    34 Cal.4th 319, 326 ............................................................................ 7, 9, 14

**FEDERAL CASES**

Cooke v. General Dynamics Corp., (D. Conn. 1997).

    993 F. Supp. 56, 89 ........................................................................... 12, 14

**CALIFORNIA STATUTES**

California Labor Code § 226 ................................................................................. 8

## TABLE OF AUTHORITIES

<u>Page</u>

### CALIFORNIA STATUTES (CONTINUED)

<u>California Labor Code</u> § 226(a) ..................................................... 1, 5, 6, 10, 16, 17

<u>California Rule of Court</u> 8.360 ............................................................................ 21

# INTRODUCTION

This is an appeal from an order denying class certification on the ground that the issues subject to determination on a class-wide basis do not predominate over issues that should be adjudicated on an individualized basis. The Superior Court's order is immediately appealable because it effectively disposes of the action.

The Respondent Court's ruling was based upon improper legal criteria and erroneous legal assumptions and must, therefore, be reversed. Specifically, the Respondent Court impermissibly analyzed the merits of the underlying claims, and in so doing misapplied the test articulated in Bell v. Farmers Insurance Exchange (2001). 87 Cal. App. 4th 805, 821 ("Bell I"). Under the Bell family of cases,[1] there is an *initial* inquiry as to whether the employees classified as exempt[2]

---

[1]    The various Bell courts use different designations of Bell I, Bell II, and so forth, as they take up the matter's entire appellate history. Thus the designations used herein do not necessarily comport with those courts' references: the "Bell II" referenced at 115 Cal. App. 4th at 728 is "Bell I" herein, for instance. Each is internally consistent, however, and no citations rely on the inconsistent definitions.

[2]    While the most familiar consequence of an employee being "exempt" is an exemption from any entitlement to overtime pay, *non-exempt* employees are also entitled to, inter alia, statutorily mandated meal periods and rest breaks. Thus a viable meal and/or rest break class action is necessarily predicated on the employees maintaining the claims being either non-exempt, or improperly classified as exempt. By contrast, all employees are entitled to wage statements that conform with the requirements set forth by California Labor Code section 226(a). Here, as is set forth more fully below, it is apparent that the Respondent Court denied class certification to meal/rest break claims and wage statement claims on the erroneous assumption that the denial of class certification as to Appellant's misclassification and overtime claims necessarily implied the additional denial of certification, and without any explicit analysis. This points to two distinct errors in the Respondent Court's ruling. First, the Respondent Court's tacit denial of certification as to the meal and rest break claims only underscores that the Respondent Court's analysis was focused entirely on the merits of the misclassification and overtime claims. Only a conclusive ruling on the merits of the misclassification and overtime claims would necessarily imply that there could be no meal and rest break class. Even if the misclassification and overtime claims were not properly *certified*, that is not the same as a ruling on the merits, to the effect that the exemption is proper, and thus there could be no statutory entitlement to meal and rest breaks. Second, as to Appellant's wage statement claims, even a conclusive ruling on the merits of Appellant's misclassification and overtime claims could have no bearing whatsoever on the determination as to whether a class action premised on the class-wide distribution of improper wage statements can be maintained. Exemption status is no part of the wage statement inquiry. Yet it is apparent that the Respondent Court presumed that the denial of certification as to Appellant's meal period, rest break, and wage statement claims all necessarily followed from the denial of certification as to Appellant's misclassification and overtime claims, because the Respondent Court's order denying class certification is entirely silent as to each of these causes of action. See Minute Order re Denial of Class Certification, entered July 26, 2006, Appellant's Appendix of Exhibits, Volume 10, Exhibit 20 at 2112-2122.

administrators are primarily engaged in the "'performance of office or non-manual work *directly related to management policies or general business operations*'" of the employer.  Bell I, 87 Cal. App. 4th at 821, quoting 29 C.F.R. part 541.2 (italics added by court).

This inquiry is the foundation of the so-called "administrative/production worker dichotomy."  Bell v. Farmers Insurance Exchange, 115 Cal. App. 4th 715, 737-38 (2004) ("Bell II").  If it is determined that a worker classified as "administrative" is in fact "in the sphere of rank and file production workers," then the inquiry ends.  Bell I, 87 Cal. App. 4th 828-29.  The exemption is improper.

Production employees – "those whose primary duty is producing" the employer's basic product – are categorically not eligible for the administrative exemption.  Id. at 821.

If, however, employees classified by the administrative exemption have as their primary duty "administering the business affairs of the enterprise," Id., then a second-level inquiry is still required to validate the administrative exemption.  That second-level inquiry asks whether or not the employees are engaged in work that primarily "requires exercise of discretion and independent judgment."  Id. at 828.

Here, however, the Respondent Court erroneously reversed the inquiry:  by *first* assessing whether common questions of law and fact predominate with respect to *discretion and independent judgment*.  After concluding that common questions of law and fact did not predominate as to the second prong of the administrative-production dichotomy, the Respondent Court merely imported that conclusion to the administrative-production analysis -- thereby failing to actually perform the administrative-production analysis prescribed by Bell.

---

All subsequent citations to the Appendix shall be abbreviates as follows:  [Volume] App., [Exhibit]:[Page Range].

Moreover, the Respondent Court's analysis improperly reached the merits of Appellant's misclassification/overtime claim, in the manner of a summary judgment motion, as opposed to an analysis confined to the requisites for class certification. Appellant presented uncontroverted evidence that she and other "underwriters" *never* performed administrative work, and offered the common questions of law and fact by which the action could be adjudicated on a class-wide basis. Yet the Respondent Court supported its denial of class certification solely with its analysis that the plainly non-administrative work could have entailed some amount of discretion and independent judgment. However, no amount of discretion and independent judgment is sufficient to render a job with no administrative aspect whatsoever eligible for the *administrative* exemption.[3]

While Real Party in Interest Washington Mutual Bank ("Real Party") did offer evidence to support its contention that its underwriter employees classified as exempt under the administrative exemption exercised discretion and independent judgment, Appellant's evidence that the work these employees performed was in

---

[3]    The Respondent Court's comments during the hearing on Appellant's motion for class certification are revealing, and suggest that rather than the strictures imposed by Bell and other binding authority concerning the administrative exemption, the Respondent Court was both making a determination on the ultimate merits (as opposed to the requisites for class certification) and focusing exclusively on the aspect of "discretion," but not at all on whether, as a threshold matter, the work in question is in fact *administrative* in nature:

> Now I have some background here. Not too much in bank underwriting insurance underwriting, but first-party death cases and I [have] also been turned down for insurance. So I understand everything about underwriting . . . [However], you know, I never perfectly understood that production[-administrative dichotomy]. We are all in that venue. I was thinking back when I was a deputy D.A. in Los Angeles. You have to talk about training and education skill and whatever to make these decisions [as] opposed to using discretion. But I was targeting back to the process I went through in deciding whether or not to file cases and for a long time I was handling exclusively capital cases . . . And I would make decisions based on our manuals and there were lots, and lots of new case law that was incorporated into D.A. manuals I had to refer to. A lot of these figures saying underwriters reminds me I was making decisions in death penalty cases. But I don't think anybody would have said that I was [not] using discretion . . . I am not quite sure that could literally be an exception that defeats the rule, especially in this case.

Reporter's Transcript on Appeal ("RT") at 1:28-2:4; 8:5-9:3.

3

no sense "administrative" went entirely unrefuted by Real Party, and entirely unaddressed by the Respondent Court. In altogether neglecting to address the administrative-production dichotomy, therefore, the Respondent Court evidently made the erroneous legal assumption that the exercise of discretion and independent judgment is, standing alone, both a necessary *and* a sufficient condition for a proper administrative exemption classification. In fact, even if an employee exercises extensive discretion and independent judgment -- but in a production, not an administrative, capacity – an administrative exemption is improper.

Accordingly, as to class certification of Appellants' overtime claim, Real Party failed to offer *any* evidence, much less substantial evidence, to contradict Appellant's showing that the character of the underwriters' work at issue here was entirely production, not administrative. Real Party's class certification moving papers demonstrated, without refutation, that Real Party's underwriters had absolutely no administrative responsibilities, and were entirely engaged in producing the loans that were Real Party's chief product. Moreover, the dominant source of that evidence was Real Party's own "most qualified" deposition designees. By erroneously applying its "discretion and independent judgment" analysis and conclusion to the conceptually distinct administrative-production analysis, the Respondent Court premised its certification ruling on improper legal criteria and relied on erroneous legal assumptions, which gives rise to a reversal, even under the "abuse of discretion" standard applied to trial courts' rulings on class certification motions. Accordingly, the Respondent Court lacked "substantial evidence" to support its conclusion that common issues of law and fact do not predominate as to Appellants' overtime claims, and the denial of class certification following therefrom.

4

Likewise, the Respondent Court lacked substantial evidence to support its denial of class certification as to Appellants' claims related to Real Party's issuance of wage statements (or "pay stubs") that failed to comply with the nine requirements for wage statements set out by California Labor Code section 226(a). Real Party offered no evidence whatsoever to contradict Appellants' contention that the wage statements Real Party issues to Appellants were identically formatted across all putative class members, and that the wage statements lacked at least two of the pieces of information required by Labor Code section 226(a). Nor did the Respondent Court perform any analysis of the wage statement claim other than to improperly link the certification of it to the certification of the overtime claims.

While an appellate court will occasionally supply the reasoning that is absent in a trial court's written decision, here, as to Appellants' wage statement claims, that is impossible. It is uncontroverted that Real Party's non-compliant wage statements were distributed to the putative class members. Common questions of law and fact can *only* predominate. Liability as to the class representative necessarily would *only* imply liability as to the entire class. Once again, there is no evidence to support the tacit denial of class certification as to the wage statement cause of action, much less substantial evidence.

Finally, neither Real Party nor the Respondent Court addressed Appellants' meal and rest break claims (which, unlike the wage statement claims, would be contingent on a finding, on the merits, that the employees at issue here were misclassified as exempt via the administrative exemption). Accordingly, the denial of class certification as to the meal and rest break claims was also not supported by substantial evidence. Rather, that denial was apparently predicated entirely on the improper denial of certification as to the overtime claims. Accordingly, the Respondent Court's tacit denial of certification on Appellants'

meal and rest break claims must also be reversed because it is beyond dispute that there is no evidence to support it.

## STATEMENT OF THE CASE

Real Party operates a mortgage lending business throughout California. Real Party's mortgage lending business is in the business of making loans to current and prospective home owners.

Appellants Kimblyn Johnson and Phyllis Parker are former underwriters who were employed by Real Party, and were classified as "exempt" from overtime pay pursuant to California's administrative exemption. As underwriters, Appellants and putative Class Members were at the core of Real Party's mortgage lending business: making loans to mortgage lending customers. They had no role whatsoever in the "administrative" functions of Real Party's mortgage lending business. Yet Appellants were classified as "administrative" employees and thereby did not receive either overtime pay or the meal and rest breaks to which non-exempt employees are statutorily entitled.

Appellants were also issued wage statements, by Real Party, that indisputably failed to include two of the nine pieces of information required to be on all California wage statements, pursuant to Labor Code section 226(a). Real Party has offered no defense pertaining to its non-compliant wage statements, either as to class certification or on the merits. Appellants' wage statement claim is legally and conceptually distinct from their overtime claim that is premised on Real Party's classification of Appellants as "exempt" under the administrative exemption.

Appellants initiated this action in October of 2004. The parties agreed that Plaintiffs' Motion for Class Certification would be heard on June 26, 2006. Moving papers were filed on April 14, 2006. Real Party's Opposition was filed on

May 19, 2006.  Appellants filed a Reply brief on June, 12, 2006.  As scheduled, oral argument took place on June 26, 2006.  The Respondent Court took the matter under submission, and requested supplemental briefing, which both Appellant and Real Party submitted.  On July 24, 2006, the Respondent Court issued a Minute Order denying class certification.

## STATEMENT OF APPEALABILITY

An order denying class certification is an immediately appealable final order.  Because the order effectively dismisses the action as to the entire class other than the named plaintiffs, it is the "death knell" of the class action and is thus immediately appealable as a final judgment.  See Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435; Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 470.

## STANDARD OF REVIEW

The denial of class certification is reviewed for abuse of discretion.  See Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326.  Although trial courts are afforded great discretion in granting or denying certification (Linder, supra, 23 Cal.4th at 435), reviewing courts "give deference only where the trial court has successfully negotiated the proper 'procedural hoops." National Solar Equipment Owners' Ass'n, Inc. v. Grumman Corp. (1991) 235 Cal.App.3d 1273, 1281.

A trial court ruling supported by substantial evidence generally will not be disturbed unless (1) improper criteria were used; or (2) erroneous legal assumptions were made. Linder, supra, 23 Cal.4th at 435-436.  Appeals of orders denying class certification thus present an exception to the general rule on review that an appellate court looks only to the trial court's result, not its rationale.

7

<u>National Solar</u>, <u>supra</u>, at 1281. The appellate court must determine whether the trial court engaged in a correct legal analysis. <u>Id</u>.

## QUESTIONS PRESENTED

1.     Whether the Respondent Court committed reversible error by applying an improper legal standard and failing to determine whether there is substantial evidence to support Real Party's contention that its underwriter employees classified as "administrative" actually performed administrative work.

2.     Whether the Respondent Court erred in denying class certification as to uniform, systematic, class-wide violations of <u>Labor Code</u> section 226.

3.     Whether the Respondent Court erred in denying class certification as to Appellant's allegations that Real Party's meal and rest breaks practices violate sections 226.7 and 512 of the <u>Labor Code</u> solely on the basis of its denial of certification as to Appellant's overtime cause of action.

## LEGAL ARGUMENT

While a trial court has considerable discretion with respect to class certification, the appellate court's review of a certification ruling involves not only an evaluation of the ultimate ruling but, also, scrutiny of the trial court's reasoning process. <u>See Clothesrigger, Inc. v. GTE Corp</u>. (1987) 191 Cal.App.3d 605, 611-612. As a result, a trial court's denial of class certification should be reversed if the trial court either: (1) used improper criteria; or (2) made erroneous legal assumptions. <u>Id</u>.; <u>Richmond</u>, <u>supra</u>, 29 Cal.3d 462, 470; <u>National Solar Equipment Owners' Ass'n, Inc.</u>, <u>supra</u>, 235 Cal.App.3d at 1281.

Additionally, in the absence of "substantial evidence" to support an order certifying a class, decertifying a class, or denying certification, such an order is properly reversed. <u>Accord</u> <u>Sav-On</u>, <u>supra</u>., 34 Cal.4[th] at 332 <u>with</u> <u>Dunbar v. Albertson's, Inc.</u> (2006) 141 Cal. App. 4th 1422, 1430.

Moreover, a ruling on class certification is properly confined to an inquiry around the requisites for class certification: numerosity, typicality, commonality, and adequacy. It is axiomatic that a ruling on class certification is not simply a ruling on the underlying merits, or a disguised motion for summary judgment.

Here, the Respondent Court denied class certification based upon its legally erroneous analysis that altogether failed to make a separate determination as to whether common questions of law and fact predominate concerning the following inquiry: *did Real Party's underwriters predominantly perform administrative work?* Instead, the Respondent Court offered analysis of an entirely different question -- *did Real Party's underwriters exercise discretion and independent judgment* – and concluded that there were differences in the discretion and independent judgment exercised by underwriters such that common questions of law and fact could not predominate, and applied that same conclusion to the question about administrative work. However, the two questions entail completely different inquiries.

There was a significant dispute between the parties as to whether the underwriters did or did not employ discretion and independent judgment in performing their job duties. There was indeed evidence presented that tended to suggest both the presence and the absence of discretion and independent judgment. However, the discretion and independent judgment question was incidental to Appellants' class certification motion, and not properly before the Respondent Court on a motion for class certification. Whether the putative class members did in fact exercise discretion and independent judgment is, ultimately, and only

9

potentially, a question on the merits. As to the certification of Appellants' overtime claims, premised on Real Party's improper use of the administrative exemption, the sole question properly before the court was the first question in the analysis of an administrative exemption: whether the employees subject to that exemption performed predominantly administrative work.

By entirely omitting any independent analysis of the administrative-production question, therefore, the Respondent Court relied upon improper legal criteria. Moreover, because *all* of the evidence before the Respondent Court affirmed that the putative class members did not perform administrative work, there was not substantial evidence to support a ruling that necessarily requires a finding that common questions of law and fact do not predominate as to the determination of whether or not putative class members did or did not perform administrative work.

There is a similar lack of substantial evidence to support the implicit denial of class certification as to Appellants' claims premised on Real Party's issuance of wage statements that fail to conform to the requirements of <u>Labor Code</u> section 226(a). Appellants produced indisputable evidence demonstrating at least two violations of section 226(a) *and* absolutely no variation in the wage statements across the entire putative class.

The Respondent Court thus applied the wrong legal analysis to Appellants' overtime claims, and then, tacitly, applied that same erroneous analysis to Appellants' wage statement claims. Consequently, there is no substantial evidence to support the denial of certification as to any of Appellants' causes of action.

## I.    THE RESPONDENT COURT DID NOT SUPPORT ITS DENIAL OF CLASS CERTIFICATION WITH SUBSTANTIAL EVIDENCE, APPLIED THE WRONG LEGAL STANDARD, AND

## PREMATURELY RULED ON THE MERITS RATHER THAN DETERMINING WHETHER APPELLANT HAD SATISFIED THE REQUISITES FOR CLASS CERTIFICATION

This class action is entirely about whether or not Defendant properly availed itself of the administrative exemption, under California law.  Bell v. Farmers Insurance Exchange, the leading California class action case to take up the administrative exemption.

The Bell analysis implies precisely the common question of law and fact set forth in Plaintiff's class certification moving papers, the same common question that Plaintiff has posed from the start:[4]

> (1)    Regardless of the amount of discretion and independent judgment exercised by underwriters, do they primarily perform "production" as opposed to "administrative" work, and are they thereby not properly designated as exempt?

Not only does the question of whether Real Party's underwriters do what is regarded as "production," as opposed to administrative, work predominate, it is common to every single underwriter.  Because Real Party chose, throughout its briefing papers, to give nearly total emphasis to its argument that underwriters exercise discretion and independent, Real party has managed to posit only one underwriter job task that is even arguably administrative, and there is no evidence that the underwriters actually did even that one administrative task.  That the Respondent Court has adopted Real Party's erroneous framework is the principal error on appeal.

As in Bell, whether employees for whom the administrative exemption is claimed constantly exercised discretion and independent judgment is of no consequence if they did not spend at least half of their time doing administrative

---

[4]    See Memorandum Of Points And Authorities In Support Of Plaintiffs' Motion To Certify A Class Action ("P & A: Mot. for Class Cert.") at 6:19-21. (1 App. 3:30)

tasks. Here, on the gamble that the Respondent Court would ignore the *administrative* component of the *administrative* exemption, Real Party filled its papers opposing class certification with evidence of what might very well be instances of underwriters exercising their discretion. As set forth in <u>Bell</u>, however, that entirely omits the inquiry that is logically prior to the discretion and independent judgment inquiry:

> Our conclusion obviates the need to inquire into plaintiffs' duties, that is, whether the plaintiffs are "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment" within the meaning of subdivision 1(A)(1) of wage order No.4 (tit. 8, § 11040) and parallel federal regulations. [Citations omitted.] Since the term "administrative capacity" imposes an independent requirement of the exemption, our conclusion that claims representatives do not work in an "administrative role" within [the defendant's] business organization is dispositive and establishes the non-exempt status.

<u>Bell I</u>, at 828-29

<u>Bell</u> granted summary judgment to plaintiffs on the merits of a class action claim concerning the administrative exemption, and is thus a ruling on the merits. What is dispositive here – with respect only to *class certification* – is more modest. Plaintiff need only show that there is a predominant question as to whether Defendant's underwriters were properly classified under the administrative exemption and, specifically, whether there is a predominant, class-wide issue as to whether the putative class members performed a sufficient amount of administrative work – e.g., "advising the management, planning, negotiating, representing the company, purchasing, and business research and control."[5] In fact, Appellant's *and* Real Party's evidence, cumulatively, indicates that Real Party's underwriters performed absolutely no administrative tasks whatsoever.

While that evidence might well cast emanations on the merits of this case, and suggest what could eventually be Appellant's own motion for summary

---

[5]    See <u>Cooke v. General Dynamics Corp.</u>, 993 F. Supp. 56, 59 (D. Conn. 1997).

judgment, on Plaintiff's motion for *class certification*, evidence that tends to show that underwriters neither performed, nor were they expected to perform, administrative tasks is offered for no purpose other than to show that there is a predominant issue, overwhelmingly so, as to whether or not the underwriters did or did not do a sufficient amount of administrative work to qualify for the administrative exemption.

### A. Common Questions Of Law And Fact Predominate As To Whether Real Party's Underwriters Are Eligible For The Administrative Exemption

The source of the Respondent Court's misapplication of Bell can be readily found in the various papers that Real Party submitted in opposition to class certification, in which Real Party is so set on avoiding the "administrative/production worker" dichotomy, and the analysis of it set forth in <u>Bell</u>, that the preference is to completely misrepresent the holding in <u>Bell</u>, revert to "discretion and independent judgment" analysis, and then pretend it has just shown that the class ought not be certified.[6] From the flaccid observation that "[t]he most important factor in <u>Bell</u> seemed to be that the claims adjusters were managed in stand-alone offices," Real Party exemplifies the same premature discretion and independent judgment analysis that permeated its opposition to class certification and, ultimately, the Respondent Court.

However, the fact that underwriters may have been "organized in three different functional structures,"[7] approved loans in amounts ranging from

---

[6]    See, e.g., Washington Mutual's Supplemental Brief re Predominance and Due Process Issues ("Real Party's Supp. Brief") at 1:1-4:3. (10 App. 18:2097-2103).
[7]    See Real Party's Supp. Brief at 2:3 (10 App. 18:2099). Even though the discretion and independent judgment analysis need not even be reached if the administrative-production analysis is conclusive, the deception embedded in the suggestion that decisions on fully collateralized loans, of whatever amount, actually put any Washington Mutual funds seriously at risk is indicative of just how far Defendant has to reach to create an image of these underwriters doing work that is actually of great consequence.

$350,000 to $3.5 million,[8] and differently "mingled with non-exempt loan processors"[9] does nothing to undermine the fact that it is the very dearth of even arguably administrative tasks performed by these underwriters that makes this case not just appropriate, but ideally suited, for certification.

Real Party calls for a "tally" of the issues that are both common and uncommon, so as to assess whether the common issues predominate. Real Party did at one point contend that underwriters were "mentoring and developing staff."[10] *However, this is the only instance in which Defendant has so much as suggested any job task that is clearly administrative.* Accordingly, every instance in which Real Party has claimed its underwriters exercised discretion and independent judgment concerned a task that is unambiguously related to the production of loans, thereby begging the administrative-production question.

Apparently conscious of this massive deficiency, and the implication that it renders certification as to the administrative-production question entirely proper, Real Party did abortively offer up some supposedly administrative tasks,[11] and append to them the conclusion that "common issues simply do not predominate."[12]

---

[8]    See Real Party's Supp. Brief at 3:5-6. (10 App. 18:2100)

[9]    See Real Party's Supp. Brief at 3:5-6. (10 App. 18:2100)

[10]   See Washington Mutual's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification ("Opp. to Class Cert.") at 4:5 (3 App. 9:555). However, despite a seemingly weighty footnote citing to a deposition, a declaration, and two different exhibits, there is no evidence whatsoever of underwriters *actually mentoring and developing staff.* Instead, a putative class member acknowledges that her "job description" included this function; yet that class member offers not a single instance of actually doing anything remotely like mentoring, or in any way supervising, a staff. Nor does she testify to any other underwriter "mentoring" her. Similarly, Area Manager Sandie Randall, who would be fully capable of offering personal knowledge of any observed instances of underwriters acting as mentors, directing staff, or in any way actually *administering* the business, merely refers to the same job description, as well as a performance evaluation form that happens to mention the phrase "mentoring and developing staff."
It is a staple of misclassification analysis that "[w]hether an employee is exempt is determined by the employee's **actual** work activities, not the employer's characterization of those activities through a job title or job description." Cooke, 993 F. Supp. at 61 (emphasis added); Sav-On, 34 Cal. 4th at 336. Absolutely nowhere – in either the Opposition or the evidence submitted in support of it – is there a single example of any underwriter performing anything but production work.

[11]   See Real Party's Supp. Brief at 3:4-9 (10 App. 18:2100).

[12]   See Real Party's Supp. Brief at 3:14-15 (10 App. 18:2100).

However, as against Plaintiff already having demonstrated that these underwriters have performed absolutely no administrative work, "whether (and how often) they took lunch and meal breaks, and the like" is completely irrelevant, because Defendant has never attached such varying factors to any truly administrative task.

Moreover, even assuming Real Party were able to find an underwriter who had committed an actual act of mentoring (as opposed to a job description that lists that as a job duty), or any other administrative task, for that matter, whatever variation a lunch break taken mid-morning, rather than at noon, would introduce is hardly enough to defeat the overwhelmingly common fact that Real Party's underwriters were neither conceived as administrators, nor did they function as administrators.

Appellant has identified a common question that predominates across the class. Rather than disputing that, Real Party argued that Appellant must, upon moving for class certification, prove that the administrative exemption was improperly applied here. However, that is Real Party's burden, on a pure merits question, a burden that arises *after* certification.

At the procedural stage at which this action stands, Appellant has amply identified the common issue that will conclusively establish liability: *whether Real Party's underwriters performed a sufficient proportion of administrative tasks to justify Real Party's classification of them as exempt via the administrative exemption.*

## II.    THE RESPONDENT COURT LACKED ANY EVIDENCE TO SUPPORT ITS DENIAL OF CERTIFICATION REGARDING REAL PARTY'S UNIFORM VIOLATIONS OF LABOR CODE SECTION 226

### A.    <u>California Labor Code Section 226, Subd. (a)(9) Requires</u>

**Employers To Include "All Applicable Hourly Rates In Effect During The Pay Period" On Employee Wage Statements**

California Labor Code section 226, subd. (a) requires accurate and itemized details on an employee wage statement. Section 226, subd. (a) states in pertinent part that,

> [e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft or voucher paying the employee's wages or separately when wages are paid by personal check or cash, an accurate itemized statement in writing …

The statute then lists nine required items to be listed on employees' wage statements, including:

> "9)    all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Cal. Lab. Code §226(a).

As set forth by Section 226, subd. (a)(9), employees have a legal right to receive, and thus a protected interest in, accurate, itemized wage statements that include all the applicable hourly rates for all the corresponding hours worked.

**B.    Real Party Uniformly Failed to Include "All Applicable Hourly Rates In Effect During The Pay Period" On Employees' Wage Statements**

In the present case, Real Party did not provide Appellant or the putative class members with accurate wage statements, as required by <u>Labor Code</u> section 226, subd. (a). Specifically, Appellant's moving papers plainly alleged that employees were not provided all the applicable hourly rates worked, such as regular, holiday, overtime, and vacation, as is required by <u>Labor Code</u> section

16

226(a)(9).[13]  Additionally, Appellant established that Real Party "routinely admitted in depositions that putative class members received bonuses, and thus the putative class was not paid 'solely' on salary, but rather a salary *plus* bonus. Under § 226(a)(2) then, the putative class must be informed as to the total hours actually worked."[14]

Appellant's moving papers also plainly stated that each of the foregoing violations is a separate and independent basis for certifying a wage statement class, "regardless of the Court's determination on the misclassification issue."[15] However, the Respondent court's written order denying class certification is entirely devoted to analysis of the overtime and misclassification issues.[16]  By summarily denying class certification as to all of Appellant's causes of action, the Respondent Court is implicitly ruling that the denial of certification as to the overtime cause of action necessarily requires denial as to the wage statement cause of action.  In fact, the two causes of action are in no way connected.  Even if the exemption were proper, Section 226 requires that exempt and non-exempt employees alike receive wage statements that comply with its requirements.

Moreover, Appellant's moving papers amply established that there can be no dispute over whether a wage statement cause of action is properly determined on a class-wide basis.[17]  Virtually by definition, the standardized wage statements received by the putative class members will contain any of the deficiencies, errors, or omissions that appear on the named plaintiff's wage statements.  Just as the Respondent Court did not address the wage statement cause of action in its minute order entirely denying class certification, so, too, did Real Party entirely fail to

---

[13]    See P & A: Mot. for Class Cert. at 18:5-12 (1 App. 3:42).
[14]    See P & A: Mot. for Class Cert. at 17:26-18:3 (1 App. 3:41-42).
[15]    See P & A: Mot. for Class Cert. at 18:14-15 (1 App. 3:42); see also Id. at 18:3-4 ("This is a certifiable issue regardless of the Court's determination on the misclassification issue.")
[16]    See Minute Order re Denial of Class Certification (10 App. 20:2112-2122).
[17]    See P & A: Mot. for Class Cert. at 17:20-18:15 (1 App. 3:41-42).

17

offer any evidence or reasoning to support the denial of class certification as to Appellant's wage statement cause of action, in either its brief opposing class certification[18] or the supplemental briefing invited by the Respondent Court.[19] Nor were Appellant's wage statement allegations refuted during the oral argument concerning Appellant's motion for class certification.[20]

Appellant's wage statement cause of action is entirely separate and independent from the overtime cause of action. Yet it appears that the Respondent Court imported its analysis of the overtime cause of action to the wage statement cause of action, and denied certification tacitly, on that basis. Even if the overtime analysis had been proper, however, it would have no relevance to the wage statement cause of action. The wage statement cause of action is ideally suited for class certification – indeed, it is difficult to imagine either a cause of action better suited for class treatment or a legitimate justification for *not* determining liability for this systematic practice on a class-wide basis.

### III.     RESPONDENT COURT ERRED WHEN IT IMPLICITLY DENIED CLASS CERTIFICATION AS TO APPELLANT'S MEAL AND REST BREAK ALLEGATIONS

Labor Code section 226.7, subd. (a) provides: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." California law thus mandates that an employer cannot require any non-exempt employee to work during a meal period. See Cal. Lab. Code §226.7(a).

Appellants allege that Real Party misclassifies all its underwriters as

---

[18]     See Opp. to Class Cert. (3 App. 9:547-576).
[19]     See Real Party's Supp. Brief (10 App. 18:2097-2103).
[20]     See, generally, RT.

"exempt," and therefore, these underwriters are uniformly denied meal and rest periods. As with Appellant's wage statement cause of action, both the Respondent Court's minute order denying class certification and Real Party's papers in opposition to certification were entirely silent as to the meal and rest cause of action,[21] which Appellant supported with ten declarations that posited a systematic policy and practice on the part of Real Party that cause putative class members to be systematically deprived of meal and rest breaks.[22]

It is manifestly unjust that certification be denied without either analysis or reference to evidence. In contrast to the wage statement cause of action, the meal and rest cause of action *does* require that Real Party's underwriters have been improperly classified as exempt under the administrative exemption. Accordingly, Appellant respectfully requests that upon the Court of Appeal's ruling that the denial of certification as to the overtime cause of action was improper, that the Court of Appeal also direct the Respondent Court to enter an order certifying a class as to the meal and rest break violations alleged by Appellant, and entirely unrefuted by Real Party.

---

[21]    See Opp. to Class Cert. (3 App. 9:547-576) and Minute Order re Denial of Class Certification (10 App. 20:2112-2122).
[22]    See Plaintiffs' Appendix of Declarations in Support of Plaintiffs' Motion for Class Certification (7 App. 401-427).

19

## CONCLUSION

The order of the Respondent Court denying class certification is based on improper criteria and erroneous legal assumptions, and as a consequence lacks substantial evidence. The Court should reverse the order and remand to the trial court with instructions to grant Appellant's' motion for class certification.

Dated: Dated: May 22, 2007                    Initiative Legal Group, LLP

By: _____

Mark Yablonovich
Marc Primo
Linh Hua
Attorneys for Appellants

**CERTIFICATE OF COUNSEL**

Counsel of record hereby certifies that, pursuant to Rule 8.360 of the California Rules of Court, the enclosed Appellants' Opening Brief was produced using 13-point Times New Roman type style and contains approximately 5000 words. In arriving at that estimate, counsel has relied on the word count function of Microsoft Word 2003, which was used to prepare the document.

Dated: May 22, 2007

Initiative Legal Group, LLP

By: _____

Mark Yablonovich
Marc Primo
Linh Hua
Attorneys for Appellants

21

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles.  I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is: Initiative Legal Group LLP, 1875 Century Park East, Suite 18th Floor, Los Angeles, California 90067.

On May 22, 2007, I served the within document(s) described below as:

**APPELLANT'S OPENING BRIEF**

**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 1)** PAGES 1 - 76
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 2)** PAGES 77 - 341
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 3)** PAGES 342 -576
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 4)** PAGES 577 - 832
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 5)** PAGES 833 - 1021
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 6)** PAGES 1022 - 1284
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 7)** PAGES 1285 - 1486
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 8)** PAGES 1487 - 1707
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 9)** PAGES 1708 - 1959
**APPELLANT'S APPENDIX OF EXHIBITS (VOLUME 10)** PAGES 1960 - 2139

on the interested parties in this action by placing true copies thereon enclosed in sealed envelopes addressed as follows:

> Hon. Terry A. Green
> Superior Court of Los Angeles
> Stanley Mosk Courthouse, Department 14
> 111 North Hill Street
> Los Angeles, CA 90012
> *Respondent*

(X)     **MAIL**: I deposited such envelope in the mail at Los Angeles, California.  The envelopes were mailed with postage thereon fully prepaid.

> Clerk of the California Supreme Court
> California Supreme Court
> Second Floor, North Tower
> 300 South Spring Street
> Los Angeles, CA 90013
> *Courtesy Copy*

Jonathan Hayden, Esq.
Andrew Livingston, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104
*Attorneys for Defendant, Washington Mutual Bank, et al.*

(X)    **PERSONAL**:  I caused such envelope to be delivered by hand via "PD Rabbit" personal delivery agent to the individuals at the addresses listed.

(X)    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**EXECUTED** this document on May 22, 2007, at Los Angeles, California.

_____

Karen Acio

# EXHIBIT I

Case No.: B193931

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT,

DIVISION TWO

KIMBLYN CREESE, ET AL.,

*Appellants,*

v.

WASHINGTON MUTUAL BANK, ET AL.,

*Respondents.*

COURT OF APPEAL - SECOND DIST.

# FILED

AUG 2 0 2007

JOSEPH A. LANE_____ **Clerk**

J. GUZMAN_____ Deputy Clerk

On Appeal From An Order Denying Class Certification From The Superior
Court of California For The County of Los Angeles
The Honorable Terry A. Green
Los Angeles Superior Court Case No. CB 323376

## RESPONDENTS' OPPOSITION BRIEF

HELLER EHRMAN LLP
JONATHAN P. HAYDEN, State Bar No. 104520
ANDREW R. LIVINGSTON, State Bar No. 148646
GREG J. RICHARDSON, State Bar No. 203788
333 Bush Street
San Francisco, CA 94104-2878
Telephone: +1 (415) 772-6000
Facsimile: +1 (415) 772-6268

*Attorneys for Respondent and Defendant*
WASHINGTON MUTUAL BANK

Case No.: B193931

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT,

DIVISION TWO

---

KIMBLYN CREESE, ET AL.,

*Appellants,*

v.

WASHINGTON MUTUAL BANK, ET AL.,

*Respondents.*

---

On Appeal From An Order Denying Class Certification From The Superior
Court of California For The County of Los Angeles
The Honorable Terry A. Green
Los Angeles Superior Court Case No. CB 323376

---

**RESPONDENTS' OPPOSITION BRIEF**

---

HELLER EHRMAN LLP
JONATHAN P. HAYDEN, State Bar No. 104520
ANDREW R. LIVINGSTON, State Bar No. 148646
GREG J. RICHARDSON, State Bar No. 203788
333 Bush Street
San Francisco, CA 94104-2878
Telephone: +1 (415) 772-6000
Facsimile: +1 (415) 772-6268

*Attorneys for Respondent and Defendant*
WASHINGTON MUTUAL BANK

# Court of Appeal
# State of California
# Second Appellate District

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Court of Appeal Case Number:  B1939391

Case Name:  _____ Kimblyn Creese, et al. v. Washinton Mutual Bank, et al._

Please check the applicable box:

[ ]  There are no interested entities or parties to list in this Certificate per California Rules of Court, Rule 8.208(d)(3).

[✓]  Interested entities or parties are listed below:

| Name of Interested Entity or Person | Nature of Interest |
|---|---|
| 1. Washington Mutual Inc., a publicly traded | Direct or Indirect Parent Company of Named Defendants |
| 2. company | |
| 3. | |
| 4. | |

*Please attach additional sheets with Entity or Person Information if necessary.*

Signature of Attorney/Party Submitting Form

Printed Name:  Jonathan P. Hayden
Address:  Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878

State Bar No: 104520
Party Represented: Washington Mutual Bank

*SUBMIT PROOF OF SERVICE ON ALL PARTIES WITH YOUR CERTIFICATE*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF
      ARGUMENT ...................................................................1

II.   FACTS ...........................................................................2

      A.    Class Complaint .................................................2

      B.    WaMu's Home Loans Group...............................4

      C.    Underwriters at WaMu .......................................5

            1.    The Underwriting Function .......................5

            2.    Performing the Underwriter's Job. ............6

            3.    The Underwriter's Scope of Authority ......7

            4.    The Organization of Underwriters in
                  California Varied During the Class
                  Period. ...................................................8

            5.    Variations in the Underwriting Job at
                  WaMu ...................................................10

            6.    The "Boiler Plate" Declarations
                  Submitted by Plaintiffs. ..........................12

      D.    The Court Denies Class Certification. .............13

III.  STANDARD OF REVIEW ........................................15

IV.   LEGAL ARGUMENT ................................................16

      A.    The Trial Did Not Misapply Legal Standards
            Or Make Erroneous Assumptions. ...................16

            1.    The Trial Court's Order Identified
                  Proper Class Certification Criteria............16

            2.    The Trial Court Identified the
                  Appropriate Legal Standard of
                  Liability to be Applied to Plaintiffs'
                  Claims. ..................................................18

i

3.    The Trial Court Did Not Improperly
Reverse the *Bell* Inquiry. ........................................20

4.    The Trial Court Did Not Consider the
Merits in Its Order.....................................................22

5.    The Court Did Not Commit Error By
Denying Class Certification On
Plaintiffs' Derivative Claims. ................................23

B.    Substantial Evidence Supports the Trial's
Court's Order Below...........................................................25

1.    Plaintiffs Have Waived Any Issue
Based On Substantial Evidence
Review. ...........................................................................25

2.    Substantial Evidence Exists, and
Plaintiffs Concede, That Individual
Issues Predominate the "Duties"
Prong of the Exemption Analysis. ..........................25

3.    Substantial Evidence Supports the
Court's Decision To Include the
"Duties"  Element In Its Class
Certification Analysis. ............................................26

4.    Substantial Evidence Supports the
Trial Court's Conclusion That Class
Action Treatment Was Not A
Superior Method for Resolving These
Claims. ...........................................................................30

C.    The Trial Court's Refusal to Certify the
Class Is Separately Supported by the Rule
Against One Way Intervention. .........................................30

V.    CONCLUSION .............................................................................34

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Edwards v. Audobon Ins. Group, Inc.,*
   (S.D.Miss. August 31, 2004, Civ. A. No. 3:02-CV-1618 WS)
   2004 U.S. Dist. Lexis 27562 .................................................................... 28

*Havey v. Homebound Mtg., Inc.,*
   (D.Vt. July 21, 2005, No. 2:03-cv-313)
   2005 U.S. Dist. Lexis 27036 ................................................................... 28

**STATE CASES**

*Bartold v. Glendale Fed'l Bank*
   (2000) 81 Cal.App.4th 816 ..................................................................... 23

*Bell v. Farmers Ins. Exchange*
   (2001) 87 Cal.App.4th 805 ............................................................... passim

*Caro v. Proctor & Gamble Co*
   (1993) 18 Cal.App.4th 644 ...................................................................... 23

*Fireside Bank v. Superior Court*
   (2007) 40 Cal.4th 1069 ........................................................................... 31

*Foreman & Clark Corp. v. Fallon*
   (1971) 3 Cal.3d 875 ................................................................................... 4

*Gerhard v. Stephens*
   (1968) 68 Cal.2d 864 ............................................................................... 17

*Green v. Obledo*
   (1981) 29 Cal.3d 126 ............................................................................... 33

*Hicks v. Kaufman and Broad Home Corporation*
   (2001) 89 Cal.App.4th 908 ................................................................ 16, 18

*Home Savings & Loan Ass'n v. Superior Court*
   (1974) 42 Cal.App.3d 1106 ...................................................................... 31

*Home Savings & Loan Ass'n v. Superior Court*
    (1976) 54 Cal.App.3d 208.................................................................. 31

*Kennedy v. Baxter Healthcare Corp.*
    (1996) 43 Cal.App.4th 799............................................................... 17

*Kruckow v. Lesser*
    (1952) 111 Cal.App.2d 198............................................................... 4

*Lafayette Morehouse Inc. v. Chronicle Publishing Co.*
    (1995) 37 Cal.App.4th 855............................................................... 4

*Linder v. Thrifty Oil Co.*
    (2000) 23 Cal.4th 429 ............................................................. passim

*Lockheed Martin Corp. v. Superior Court*
    (2003) 29 Cal.4th 1096 ........................................................... passim

*Lopez v. C.G.M. Develop., Inc.*
    (2002) 101 Cal.App.4th 430.............................................................. 4

*Nwosu v. Uba*
    (2004) 122 Cal.App.4th 1229........................................................ 1, 4

*Quacchia v. DaimlerChrysler Corp.*
    (2004) 122 Cal.App.4th 1442.......................................................... 17

*Sav-On Drug Stores, Inc. v. Superior Court*
    (2004) 34 Cal.4th 319 .................................................... 1, 16, 17, 22

*Walsh v. IKON Office Solutions, Inc.*
    (2007) 148 Cal.App.4th 1440................................................ 15, 17, 30

*Washington Mutual Bank v. Superior Court*
    (2001) 24 Cal.4th 906..................................................... 15, 17

**STATE STATUTES**

Lab. Code section 226, subd. (a)(9) ............................................... 24

**FEDERAL REGULATIONS**

29 C.F.R., § 541.203(b)................................................................ 28

iv

**STATE REGULATIONS**

Cal. Code Regs., tit. 8, § 11010.1(A)............................................. 18, 24, 25

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The trial court denied class certification because common evidence did not predominate and superiority was lacking, two conclusions which are amply supported by substantial evidence. Plaintiffs-Appellants Kimblyn Johnson Creese and Phyllis Parker ("Plaintiffs") nonetheless claim that the trial court's order lacks substantial *evidence* — though they cite no evidence in their opening brief[1] — and/or was in *legal* error. Time and time again, the California Supreme Court, as well as numerous Courts of Appeal, have held that the decision to certify or not certify a class falls squarely within the discretion of the trial court. *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-27. This trial court had overwhelming evidence to support its decision and did not abuse its discretion.

This "wage and hour" case challenged Washington Mutual Bank's ("WaMu")[2] classification, as exempt, of mortgage loan underwriters. The critical exemption was California's "administrative" exemption, which both

---

[1] Plaintiffs only cite to the briefs below, not the evidence. They also fail to summarize the evidence relating to the substantial evidence review required of class action orders. All arguments based on the substantial review standard are therefore waived. *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246. See, Footnote 4, *infra*.

[2] Plaintiffs sue several different Washington Mutual entities, all of which collectively respond hereto as "WaMu." On appeal, Plaintiffs name the Superior Court as "Respondent" and refer to WaMu as "Real Party In Interest." As they note in their Statement of Appealability, the denial of a motion for class certification is an appealable order. (Opening Brief ("Op. Br.") at 7, see *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.) Thus, WaMu is the respondent on appeal.

Approval rates have ranged from a low of about 40 percent to the current level of 60 percent. (5 App., Tab 10B, 842:20-846:13, 850:19-852:22; 7 App., Tab 12, 1468, ¶ 7, 1475, ¶ 6.)

*Variations in Validation by Underwriters*. Validation of the AUS-approved loans typically has been performed by loan processors, but underwriters sometimes have been called upon to validate loans. The frequency of this arguably nonexempt activity varied. The vast majority of the loans in at least one Emerging Markets facility — Montebello — never even went through the auto-engine process. As a result, there was little or no need for validation at that facility. This is where both Plaintiffs worked. (5 App., Tab 10B, 987:7-989:12; see also 7 App., Tab 12, 1454-1455,¶ 12, 1459-1460, ¶ 11, 1465, ¶ 11, 1468, ¶ 7, 1471, ¶ 9, 1478, ¶ 8, 1485, ¶ 9.)

*Variations Based on Geography*. Geography plays a role in how underwriters carry out the job, and there are at least forty different facilities that are involved in the prospective class. Underwriters typically were managed by an on-site manager, and each such manager typically had his or her own approach to the underwriting job. (See 7 App., Tab 12, 1464, ¶ 8, 1485, ¶ 6.) The location of the property also affected the underwriter's job. Underwriters in San Diego, for instance, could take more risk in extending loans, particularly in coastal communities, because the home values there are steady (if not always rising). On the other hand, an underwriter making a decision on a loan for an inland property might not have the same cushion of escalating values. (5 App., Tab 10B, 894:3-895:2, 903:6-904:4, 957:20-959:5; 7 App., Tab 12, 1459, ¶ 8, 1471, ¶ 7, 1475, ¶ 7.)

*Variation Based on Competency*. Not surprisingly, an underwriter's competency also impacted how he or she did a credit analysis and made decisions. Some underwriters are highly capable of making complex credit

decisions and do so. Others simply do not have the ability or the willingness to engage in the complex analysis required. This is illustrated by the atypical experiences of the Plaintiffs, both of whom were disciplined for not using independent discretion. (See 7 App., Tab 12, 1453-1454, ¶¶ 6-7, 1481-1482, ¶¶ 10-13, 1485, ¶ 8.)

*Variation in Flexibility in Work Hours*. The practice at WaMu regarding hours worked has hardly been uniform. For instance, many underwriting managers allow underwriters substantial flexibility and do not require their employees to come or go at any set time. On the other hand, some managers thought it important that underwriters keep to an established schedule, and they monitored the comings and goings of those underwriters carefully. In fact, Plaintiffs claim this was true for them. (5 App., Tab 10B, 979:8-981:15, 1012:6-1014:20; 7 App., Tab 12, 1460, ¶ 12; see, e.g., 3 App., Tab 6, 403, ¶ 8, 406, ¶ 8.)

### 6. The "Boiler Plate" Declarations Submitted by Plaintiffs.

Plaintiffs submitted eight declarations from putative class members in support of their motion. Although the declarations were virtually identical, the declarants' depositions revealed many important differences and conflicts. For example, declarants' claim that the "majority" of their time was spent doing menial or clerical tasks admittedly left out important discretionary and judgmental duties. (4 App., Tab 10A, 684:12-686:11, 695:16-696:13, 722:18-724:1, 746:15-750:24.) Several confirmed that the official position description — which Plaintiffs otherwise ignored because it described an exempt set of duties — was an accurate description of their jobs. (4 App., Tab 10A, 678:11-20, 717:11-719:11, 742:17-744:7, 750:25-751:21.) Most declarants admitted — contrary to their declarations — to

12

using critical thinking, sound judgment, analytical skills, and discretion. (4 App., Tab 10A, 651:5-25, 652:15-653:14, 656:19-657:15, 663:5-16, 670:4-25, 682:25-683:3, 686:12-687:6, 688:14-18, 689:23-690:20, 691:5-692:5, 697:11-698:2, 706:21-24, 709:24-710:11, 724:5-15, 736:10-742:16, 752:9-753:6, 760:21-761:25; 7 App., Tab 12, 1452-1453, ¶¶ 4-5, 1459, ¶ 9, 1467, ¶ 5, 1471, ¶ 6, 1477, ¶ 4.) Plaintiffs' boiler plate declarations all said that the underwriters were "production" workers because they "put together loans" working "side by side" or in "close proximity" with non-exempt processors, although when cross-examined the declarants frequently contradicted this point. (4 App., Tab 10A, 590:8-17, 638:13-639:20, 664:6-665:14, 666:21-667:16, 694:3-12, 703:18-704:20, 720:18-721:24, 722:1-17, 745:11-746:14; see 7 App., Tab 12, 1454,¶ 10, 1459, ¶ 10, 1485, ¶ 7.) Finally, at least two declarants testified that they were told by Plaintiffs lawyer that they *had* to sign their declarations if they wanted to stay in the lawsuit, thereby undermining the value of their declarations to start. (4 App., Tab 10A, 693:2-22, 762:14-22.)

## D.    The Court Denies Class Certification.

On April 14, 2006, Plaintiffs moved for class certification. (1 App., Tabs. 2-3, 18-46.) On May 19, 2006, WaMu filed its opposition. (3-7 App., Tabs 8-12.) Plaintiffs filed their reply brief on June 12, 2006. (10 App., Tab 15.)

The Honorable Terry A. Green heard the motion on June 26, 2006. At oral argument, Plaintiffs raised a new argument not briefed by the parties:  whether a class could be certified on just one prong of the two-pronged administrative exemption.  Because this argument created due process concerns and ignored the requirement of predominance, WaMu

13

obtained permission to file a supplemental brief regarding these two issues, which was filed on June 30, 2006. (*Id.*, Tab 18.) Plaintiffs responded to this supplemental brief on July 5, 2006. (*Id.*, Tab 19.)

On July 24, 2006, the Superior Court entered an order denying class certification. (*Id.*, Tab 20.) In its order, the court noted that Plaintiffs had brought a claim primarily for failure to pay overtime wages, but also other ancillary claims, all of which depended on evidence that underwriters are misclassified as exempt employees. (*Id.* at 2116.)

The court expressly premised its order on the "standards for class certification," noting, *inter alia*, that Plaintiffs had the burden to establish a "community of interest." (*Id.* at 2112, 2114-2115.) The court recognized that the "community of interest" analysis included the three factors of predominance, typicality and adequacy of representation. (*Id.* at 2114.) Identifying commonality as a key issue, the court recognized that analyzing commonality required it to identify the important underlying legal issues. (*Id.* at 2115)

The court considered the two-pronged "administrative" exemption defense and specifically cited the leading case on the exemption, *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805. The court discussed the highlights of the evidence on the "duties" element described by *Bell*, concluding that common issues did not predominate. (*Id.* at 2115-2117). The court also considered the "role" prong, finding that it was not likely to be dispositive in this case, and that the evidence in the record relating to it was "scanty." The court correctly refused to ignore the lack of commonality on the other elements of the exemption. (*Id.* at 2120). Thus, the court held:

> After considering all of the relevant factors [of the community of interest requirement], the court finds that the Plaintiffs failed to meet the requisite burden for a person seeking certification, namely the establishment of the existence of both an ascertainable class and a well-defined community of interest among the class members.

(*Id.* at 2115.)

The trial court also based its decision on the independent ground of superiority. After stating the standard, the court concluded that Plaintiffs had failed to meet their burden to show that the class action procedure was superior to other means of deciding the issues in the litigation. (*Id.* at 2120-21).

## III.   STANDARD OF REVIEW

There are two parts to the standard of review on a class action determination. First, the trial court's selection of the legal standard for the underlying claim and the criteria for conducting the class certification analysis are addressed *de novo*, because they involve pure legal issues. *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 914. Second, assuming no legal error, the trial court's evaluation of the evidence, and its final conclusions on the class certification issues, are reviewed on an abuse of discretion standard, with the only question being whether the decision is supported by substantial evidence. *Id.* A trial court's order need not set forth in exhaustive detail the reasons for its denial. Rather, as long as the record holds substantial evidence for the order, a lack of specificity in explaining the decision is not fatal to a trial court's order. *Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1454-1455. "Any valid pertinent reason stated [by the trial court] will be sufficient to uphold the order." *Linder, supra,* 23

Cal.4th at p. 436.

## IV.  LEGAL ARGUMENT

### A.  The Trial Did Not Misapply Legal Standards Or Make Erroneous Assumptions.

#### 1.  The Trial Court's Order Identified Proper Class Certification Criteria.

Sometimes courts misunderstand the basic analytical framework for analyzing a class certification motion. *See, e.g., Hicks v. Kaufman and Broad Home Corporation* (2001) 89 Cal.App.4th 908, 915 (court used wrong standard for "ascertainability" analysis). Here, the trial court's order demonstrates that it understood all the important class certification principles.

The trial court correctly identified all the pertinent class certification principles, which it then used to guide its analysis. On a motion to certify, a plaintiff must establish:

> [T]he existence of both an ascertainable class and a well-defined community of interest among class members. The "community of interest" requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.

*Sav-On Drug Stores*, *supra*, 34 Cal.4th at p. 326 [internal citations omitted]. The trial court's order expressly quoted *Sav-On* and identified these criteria (10 App., Tab 20, 2114). The trial court understood that common issues had to predominate, lest the trial later "devolve into a series of complicated mini-trials needed to address the variations noted." (*Id.* at 2119.)

The trial court understood that it had to consider not just the evidence submitted by Plaintiffs, but also the "totality of the evidence" in

making its determinations. (*Id.* at 2117 (quoting *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108).) The predominance analysis is applied to the entire claim, not just isolated issues that Plaintiffs cherry-pick as susceptible to common proof:

> The question is whether plaintiff has presented substantial evidence of the class action requisites; this is a discretionary determination to be made by the trial court. Nothing in the law prevents the court from considering the totality of the evidence in making that determination. If this were not the rule, plaintiff could pick and choose among facts to present to the court, providing an incomplete picture of the litigable issues, in order to ensure a certification.

*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1448 (citing *Linder, supra*, 23 Cal.4th at pp. 435-436); *Washington Mutual, supra,* 24 Cal.4th at pp. 913-14.

The court also was correct to consider issues raised by WaMu's affirmative defense: "a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by the defense predominates over common issues." *Walsh, supra*, 148 Cal.App.4th at p. 1450 (citing *Sav-On Drugs, supra*, 34 Cal.4th at pp. 326-327); *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 913; *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 811.

The trial court understood that its job on a class action motion was limited to evaluating whether the theory of recovery was amenable to class wide proof, not deciding the merits. ("the Court must consider whether the theory of recovery advanced by the proponents of certification, is an [sic] analytical manner, likely to prove amenable to class treatment.") (*Id.* at 2115, citing *Sav-On.*)

Finally, the court clearly articulated the correct standard for the superiority analysis. The court was aware that it was to "evaluate whether the proposed class suit is the only effective way to halt and redress the alleged wrongdoing…" (*Id.* at 2120, citing *Linder, supra,* 23 Cal.4th at p. 446).

## 2. The Trial Court Identified the Appropriate Legal Standard of Liability to be Applied to Plaintiffs' Claims.

Sometimes courts misunderstand the elements of the underlying liability theory, which can lead to misdirected analysis of class certification principles. *See, e.g., Hicks, supra,* 89 Cal.App.4th at pp. 919-920 (breach of warranty claim does not require proven damage, therefore lack of common evidence of damage not fatal to class certification). Here, the trial court correctly identified the important elements of Washington Mutual's exemption defense.

Plaintiffs seek a common determination that underwriters are or have been misclassified as exempt and therefore not paid overtime wages or given various ancillary rights afforded nonexempt employees. Liability on these claims turns on whether WaMu can establish, as an affirmative defense, that each underwriter is an exempt employee under the so-called "administrative" exemption. That exemption appears in Industrial Welfare Commission (IWC) Wage Order No. 4-2001, codified at California Code of Regulations, title 8, section 11010.1(A).[5] The leading case discussing the

---

[5] From October 2000 to the present, the class period, two applicable IWC wage orders successively governed: 4-2000 and 4-2001. Both offer substantially similar administrative exemptions.

administrative exemption is *Bell v. Farmers Insurance Exchange* (2001) 87 Cal.App.4th 805, and it was discussed fully in the briefing and cited and discussed by the trial court. Under *Bell*, the administrative exemption requires evaluation of two "distinct criteria addressing the *role* of the administrative employees in a business enterprise, [and] the actual *duties* of the employees. . . ." 87 Cal.App.4th at p. 819 [emphasis in original]. Under the "role" inquiry, the question is whether the employee fills an "administrative" position. *Id.* at 819. Under the "duties" inquiry, the analysis focuses on the work being done, and whether it involves the exercise of discretion and independent judgment. *Id.* at 828. In evaluating the "role" of the employee, the *Bell* court utilized a line of analysis from federal law, which has since been abandoned. Under that analysis, the court recognized a dichotomy between "production" workers, who create the company's product, and "administrative" workers, who filled other roles. Under this analysis, if an employee's role was deemed "production," then she would not be an administrative employee, no matter that she exercised judgment and discretion in her duties. *Id.* at 821.

In *Bell*, which was a review of a summary adjudication order, not a class motion, the court found the "administrative/production dichotomy" useful, ruling that the claims adjustors were production workers, and upheld the summary adjudication against the employer on the administrative exception. Contrary to Plaintiffs' arguments, the *Bell* court did not endorse the "administrative/production dichotomy" test for all cases. It is merely a "broad distinction demanding further refinement in some cases...." *Id.* at 820. Although in *Bell* the evidence supported summary adjudication, the *Bell* court went out of its way to caution that the "administrative/production" formulation was "a somewhat gross distinction

19

that may not be dispositive in many cases." *Id.* at 826.  Indeed, the *Bell* court noted, during its analysis, that underwriters were traditionally recognized as an "administrative" role.  *Id.* at 823.

A critical feature of the exemption defense, as explained by *Bell*, is that these two elements — the "role" and the "duties" — *both* have to be proved by a defendant in order to prevail.  The trial court here understood that there were two independent elements to the defense, and also understood that the "role" element, if Plaintiffs were correct, would defeat the exemption without need to consider the "duties" test.  ("Regardless of the amount of discretion and independent judgment exercised by underwriters, do they primarily perform 'production' as opposed to 'administrative' work, and are they thereby not properly designated as exempt?"  10 App., Tab 20, 2118).  Thus, the court identified the proper legal standard.[6]

### 3.    The Trial Court Did Not Improperly Reverse the *Bell* Inquiry.

One of Plaintiffs' efforts to manufacture some sort of legal error is the argument that the trial court analyzed the two elements of the

---

[6] What the court next did with that standard was to evaluate the evidence that Plaintiffs had proffered, to determine whether it would present predominating common evidence.  This part of its analysis, however, is reviewed on a substantial evidence basis, because it involves the application of the facts to the law.  *Lockheed Martin, supra,* 29 Cal.4th at p. 1109.  Here, the trial court found that Plaintiffs failed to establish that the "administrative/production dichotomy" was going to be dispositive (10 App., Tab 20, 2118), and that the evidence on the "role" of the underwriters was "scanty."  As explained below, section IV.B.3, that decision was amply supported.

exemption defense in the wrong order. Thus, Plaintiffs assert the court refused to see that *Bell* requires an "*initial* inquiry into whether the employees classified as exempt administrators are primarily engaged in the 'performance of office or non-manual work *directly related to management polices or general business operations.*" *Id.* at 1-2 [emphases in original]. They contend that the court made an error by "revers[ing] the inquiry: by *first* addressing whether common questions of fact and law predominate with respect to *discretion and independent judgment.*" *Id.* at 2.

Plaintiffs cannot seriously be faulting the organization of the trial court's order because that could hardly be a basis for either legal error or an abuse of discretion. Obviously, it is the substance of the legal arguments which matter, not the order in which they are presented.[7] The real thrust of the argument is that the court did not understand that WaMu had to prevail on *both* elements to eventually win on its defense. In other words, that if WaMu failed on the "role" element because underwriters were "production" workers, then the merits analysis would never get to the issues raised by the "duties" prong of the exemption. As explained above, section IV.A.2, Plaintiffs are wrong because the court understood how the two

---

[7] Plaintiffs' focus on the order of the court's analysis ignores how their briefing contributed to that order and also highlights how their theories evolved. Their opening brief below argued that common issues were presented on <u>both</u> elements of *Bell*'s test, (1 App., Tab 3, 31-34), as did their reply brief (10 App., Tab 15, 1984-1986). It was not until oral argument that they squarely raised the proposition that the evidence on the "duties" issues was irrelevant because of supposedly common evidence on the "role" element, and this new argument led to the supplemental brief (Transcript of Proceedings of June 26, 2006 at 20-21). In this context, it is no surprise that the Court addressed the issues in the order that it did.

parts of the exemption related to one another, and that WaMu eventually would have to win on both in order to establish the exemption.

The notion that *Bell,* a summary adjudication appeal, somehow controls the court's analysis of class certification issues is misplaced. Of course, the legal standard for the exemption is a critical piece of the class certification analysis. But the proper role for the merits standard is illustrated in cases like *Lockheed Martin, supra,* 29 Cal.4th 1096, 1109. In *Lockheed Martin,* a toxic tort case, the Supreme Court reversed class certification because plaintiffs could not show *how* they were going to prove uniform toxic exposure ("plaintiffs have not provided substantial evidence that they are in a position to resolve possible dosage issues with common proof.") In a class certification context, the focus properly is on "what type of questions — common or individual — are likely to arise in the action, rather than on the merits of the case." *Sav-On Drugs, supra,* 34 Cal.4th at p. 327. Here, the trial court found Plaintiffs had not provided substantial evidence that they were in a position to resolve the "role" element with common proof, and so the court considered the "duties" element. *Bell* certainly does not support ignoring, in a class certification analysis, a lack of commonality on the "duties" element where, as here, the evidence on the "administrative/production" dichotomy is so inconclusive.

### 4. The Trial Court Did Not Consider the Merits in Its Order.

Reversing course somewhat, Plaintiffs also contend that the trial court committed error by actually making a finding as to the first prong on the merits – in effect, finding that underwriters are all "administrative" employees. (Op. Br. at 1.) Plaintiffs are correct that a trial court should not decide the merits of the claim. *Linder, supra,* 23 Cal.4th at p. 443. The

court does, however, have to consider evidence to determine if the prerequisites of class action are met, including whether common issues predominate. *Lockheed Martin Corp., supra*, 29 Cal.4th at p. 1109. As long as the court considers the evidence for the purpose of deciding, for instance, if the merits can be determined by common proof, it does not abuse its discretion, but actually fulfills its duty on the motion for class certification. *Bartold v. Glendale Fed'l Bank* (2000) 81 Cal.App.4th 816, 829; *Caro v. Proctor & Gamble Co.* (1993) 18 Cal.App.4th 644, 656.

The court below did exactly that. Its order did not decide that all of WaMu's underwriters are "administrative" employees. Although Plaintiffs say that the trial court decided the merits, they don't explain why they say that. The court correctly stated that its analysis was limited to evaluating whether Plaintiffs' claims were "amenable to class treatment" (10 App., Tab 20, 2115), and correctly recognized that it considered conflicting evidence only as part of the commonality analysis. (*Id.*, 2118). Specifically addressing Plaintiffs' arguments about *Bell*'s "administrative/production worker dichotomy" arguments, all the court said was that it was "not helpful in this case." and that there was scant evidence in the record to support the conclusion that the "production" issue would be determinative. (*Id.*, 2120). These are appropriate comments, given the role this issue played in the trial court's analysis, and they do not show a decision on the merits.

### 5. The Court Did Not Commit Error By Denying Class Certification On Plaintiffs' Derivative Claims.

Plaintiffs direct their other two issues on appeal at the denial of class certification of their claims for missed meal and rest periods and for failure

23

to provide proper itemized wage statements.  (Op. Br. at 8, questions 2 & 3.)  For each, they assert the court made no finding or provided no analysis as to the reason for the denial.  (*Id.* at 1 n.1.)  Again, they ignore the court's order below, in which it noted that these were "ancillary Causes of Action" that also turned on whether underwriters had been misclassified as exempt – that is, the same analysis as the overtime claims.  (10 App., Tab 10, 2116.)

Regarding Plaintiffs' meal and rest period claims, they concede, in effect, that the court's analysis was controlled by the exemption issue.  (Op. Br. at 1 n.1 [admitting that to have a viable claim, they would need to have been improperly classified as exempt].)  Wage Order 4-2001(1)(A) also expressly establishes that meal and rest breaks are to be given only to nonexempt employees.

The same is true for Plaintiffs' Labor Code section 226(a)(9) claim that WaMu improperly failed to include "all applicable hourly rates in effect during the pay period" on wages statements.  Under Labor Code section 226(a)(9), wage statements must contain, among other things, "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."  Section 226(a)(9) does not apply to exempt employees.  Exempt employees, such as the underwriters, are paid a salary and do not record hours worked, and there simply are no "applicable hourly rates" or "corresponding number of hours worked at each hourly rate."  There is no violation where an exempt employee's wage statement does not contain hourly rates and number of hours worked.  Accordingly, the Superior Court properly found this claim, too, was an ancillary one dependent upon its certification determination of the overtime claims.

24

### B.    Substantial Evidence Supports the Trial's Court's Order Below.

#### 1.    Plaintiffs Have Waived Any Issue Based On Substantial Evidence Review.

As explained above in footnote 4, Plaintiffs have waived any error based on a substantial evidence argument, and this court would be justified in putting this brief down without reading the following sections. If the Court does choose to address the issue whether substantial evidence supports the trial court's decision, it will find overwhelming evidence that it does.

#### 2.    Substantial Evidence Exists, and Plaintiffs Concede, That Individual Issues Predominate the "Duties" Prong of the Exemption Analysis.

Under the "duties" element of the administrative exemption, a key issue would be whether the underwriters' duties "require[d] exercise of discretion and independent judgment." Wage Order No.-4-2001, codified at California Code of Regulations title 8, Section 11010.1(A); *Bell, supra*, 87 Cal. App.4th at 828. WaMu showed that any analysis of the underwriters' duties would vary based on a host of factors presenting needs for individualized proof, including:  Which of the five business channels they worked in (see page 8, *supra*); which of three or four organizational schemes was in force at a particular time (see, page 7, *supra*); changes over time, and between business channels, of the degree of complexity of loans underwritten by underwriters, as opposed to the automated systems (see, pages 8-9, *supra*); each underwriter's competency (see, page 10, *supra*); how each individual used company guidelines and her exemption authority while actually doing the underwriting (see, pages 4-5; 10, *supra*); how each was managed in a decentralized management structure (see, page 7, *supra*);

the kinds of loan products worked on from time to time, and among business channels (see, page 8, *supra*); and where they worked (see, page 9, *supra*).

All of this evidence would directly impact any analysis of the underwriters' duties, including whether they deal with matters of importance, and exercise discretion and independent judgment. WaMu's evidence on these issues came from its managers, but perhaps more telling for the court's analysis, to a large extent from Plaintiffs and their declarants. (3 App., Tab 7, 399-430). The trial court was more than adequately supported by substantial evidence when it concluded that the "'level and type of discretion' and 'independent judgment' depends on many factors . . ." (10 App., Tab 20, 2118) and the evidence would not be common on them. Ultimately, the trial court concluded, "it is difficult to say that if Defendants were found liable to Phyllis Parker then they would be liable to Kimblyn Creese or Joann Gullo." (*Id.*) The court got it right.

### 3. Substantial Evidence Supports the Court's Decision To Include the "Duties" Element In Its Class Certification Analysis.

Plaintiffs suggest that the evidence on the "administrative/production" element was so strong that the court was not justified in considering anything else. (Op. Br. at 3). The trial court rejected this argument after evaluating the evidence, and this part of its ruling therefore must be reviewed for abuse of discretion.

Plaintiffs claim that they submitted "uncontroverted evidence" that the underwriters were "production" workers but, as noted above, we can only guess what evidence Plaintiffs are referring to as uncontroverted because they don't provide a statement of facts or any record citations. In

the briefing below, Plaintiffs cited some conclusory statements by a few WaMu managers, taken out of context, that could prove nothing. For instance, they proffered testimony that underwriters were subject to "production quotas" attributing a legal meaning to the term "production." In doing so, they ignored that while underwriters have performance expectations, tethered in part to the number of *decisions* they make, these hardly constitute production quotas because they are not judged based on the number of loans they approve. (4 App., Tab 10A., 711:1-712:15, 830:17-831:1; 5 App., Tab 10B, 997:17-998:4.) Similarly, Plaintiffs proffered an isolated comment from a witness who said that WaMu's "administrative" functions are housed in Seattle, insisting the term "administrative" meant something legally significant and excluded the possibility that underwriters not working in Seattle were administrative employees. The witness, though, was never asked to define "administrative," and there is no indication he attributed any legal consequence to the term.

Plaintiffs also proffered "boiler plate declarations" (10 App., Tab 20, 2116) from class members, claiming that underwriters "put together" loans, worked with loan processors in an "assembly line," and had no real authority. However, as the court below recognized, when "defense counsel actually questioned the declarants on particular paragraphs of their executed declarations [the answers] refutes [sic] many of the claims of Plaintiffs' Motion." (*Id.* at 2117). When the court below held Plaintiffs' evidence pertaining to the "production" prong was "scant," it was this type of misleading and inconsequential evidence it was considering.

Plaintiffs' contention that WaMu provided no evidence pertaining to the "administrative" prong (Op. Br. at 4) is also wrong. Plaintiffs ignore

27

that the evidence was substantial that the underwriters all performed *underwriting* duties, which, as set forth above, courts — including *Bell* — and the Department of Labor expressly define to be "administrative" in nature. *Bell*, 87 Cal.App.4th at p. 828; *Havey v. Homebound Mtg., Inc.*, (D.Vt. July 21, 2005, No. 2:03-cv-313) 2005 U.S. Dist. Lexis 27036 at p. *18; *Edwards v. Audobon Ins. Group, Inc.*, (S.D.Miss. August 31, 2004, Civ. A. No. 3:02-CV-1618 WS) 2004 U.S. Dist. Lexis 27562 at p. *22; 29 C.F.R., § 541.203(b). In addition, WaMu established that underwriters advise the bank about the amount of risk it should undertake, and obtain their authority from the Board of Directors. (5 App., Tab 10B, 898:13-900:6; 7 App., Tab 12, 1441 ¶ 8). That they are not "production" workers is also supported by the fact that they are not necessary for a loan to be issued, and up to 60% of WaMu's loans are issued without any manual underwriting review. (5 App., Tab 10B, 850:19-852:22).

Plaintiffs never address the type of evidence cited by the *Bell* court, yet that kind of evidence also argues against commonality when WaMu's underwriters are evaluated. For example, in *Bell*, it was significant that the claims adjusters were managed in stand-alone offices whose exclusive business function was to adjust claims. 87 Cal.App.4th at p. 826. Here, unlike the common organizational structure of the *Bell* plaintiffs, the WaMu underwriters were organized in three different functional structures during the class period: District Credit Centers, Loan Fulfillment Center Teams, and Loan Fulfillment Center underwriting units. The Montebello Emerging Markets workplace (where the named Plaintiffs worked) was yet again a different structure, with sales personnel in the same facility. Under each of these functional structures, the offices housing the underwriters conducted different mixes of business functions, and under *Bell*'s analysis,

28

these different physical organizations would each have to be analyzed separately. Additionally, the claims adjusters in *Bell* each had minimal settlement authority of less than $15,000, and each was closely supervised by his or her supervisor. *Id.* at pp. 827-28. The evidence on those issues, in this case, would not have been common. Unlike the *Bell* common evidence of low settlement authority, underwriting authority here varied significantly among underwriters, ranging from $350,000 to $3.5 million. (5 App., Tab 10B, 891:2-892:12, 894:3-897:9, 903:6-906:16; 7 App., Tab 12, 1441 ¶ 8, 1452-1453 ¶ 4, 1457 ¶ 4, 1463 ¶ 5, 1470-1471 ¶ 5, 1477 ¶ 3, 1484-1485 ¶ 5) And unlike the common, close supervision of the *Bell* Plaintiffs in the exercise of their duties, here the nature of the management supervision of the underwriters varied over time (with changes in both the direct and matrix management roles) as well as by business channel and geographic facility. (See, page 7, *supra*).

The point of this evidence is not to argue the merits and the trial court understood that. The point is that the trial court here was faced with evidence, relevant to the "administrative/production" issue, which was not common. The court correctly did not decide the issue whether underwriters were "production" workers, but it did consider that evidence to determine whether it was likely that the "production" issue could be proven by common evidence, and thus might tip the scale of predominance. Its conclusion was that the "administrative/production" dichotomy was not helpful, and that the evidence proffered by Plaintiffs – who had the burden of proof on the class motion – was "scanty." This conclusion was well supported by substantial evidence.

29

4.    **Substantial Evidence Supports the Trial Court's Conclusion That Class Action Treatment Was Not A Superior Method for Resolving These Claims.**

The court held, independently, that a class action procedure was not the superior method for resolving the case, although the Order does not elaborate on the evidence relied upon. (10 App., Tab 20, 2120-21). This abbreviated form of order, reflecting the correct standard and a conclusion, is adequate to trigger the substantial evidence review. *Walsh, supra,* 148 Cal.App.4th at pp. 1454-1455.

Here, there was plenty of support for the conclusion. As WaMu explained below, a class action is not necessary in order to identify and redress any misclassified underwriters. At an earlier stage in the proceedings, the entire 600 member putative class had been contacted and solicited to consent to disclosure of their names to Plaintiffs' counsel. Less than 10% replied affirmatively, and slightly more than 10% of those – eight people in total – carried through with declarations claiming that they had been misclassified. (3 App., Tab 7, 407-430; 4 App. Tab 10A, 580 ¶ 24). This process suggested that there were less than ten people who thought they might have a claim. Particularly in light of the problems with commonality, individual claims by those who come forward is a superior method of addressing any individualized problem with workplace classification.

C.    **The Trial Court's Refusal to Certify the Class Is Separately Supported by the Rule Against One Way Intervention.**

The trial court's decision to look beyond the purportedly common evidence on the "role" prong of the administrative exemption was correct for another reason, which was briefed below but not addressed in the

court's order.

As explained above, the trial court's decision to deny class certification was based on proper legal criteria and substantial evidence, and therefore this appeal must be denied. There is, moreover, an independent reason why, as a matter of law, the trial court's decision is correct. Under the unique circumstances of this particular case, class certification would have violated the rule against "one way intervention," recently reaffirmed by the Supreme Court in *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069.

The classic "one way intervention" problem arises when Plaintiffs obtain a merits determination before the class certification issues are resolved. *Fireside Bank,* 40 Cal.4th at pp. 1078-79. The rule against "one way intervention" is based on fairness, assuring that both the plaintiff and defendant have a chance to either win or lose. When classes are certified before merits determinations, then both parties have a chance to obtain a judgment, either for the class or against the class. If merits determinations are allowed before class certification, the defendant can be placed in a "no win" position because if the merits are resolved in Plaintiffs' favor then a subsequent class certification can turn that into a judgment in the class' favor. On the other hand, if the plaintiff loses on the merits before a class certification motion, then the class claims won't be brought and the defendant has no chance to obtain a judgment against the class. This "no lose" situation for a plaintiff class, and its corresponding "no win" option for the defendant, raises due process concerns that must be avoided. *Home Savings & Loan Ass'n v. Superior Court* (1974) 42 Cal.App.3d 1106; *Home Savings & Loan Ass'n v. Superior Court* (1976) 54 Cal.App.3d 208.

Here, the "one way intervention" is less obvious, but no less real. It

arises from the trial court's unchallenged finding that the "duties" element of the exclusion could not be tried with common evidence. (See Section IV.B.2, *supra*). This meant that here, Plaintiffs urged the certification of a class where there was no possible way for defendants ever to obtain a defense judgment against the class. A defense judgment was impossible because for WaMu to prevail, it had to prove *both* the "role" and "duties" elements of the exemption, yet it was not possible to prove the "duties" element with class wide proof. Without proof on both elements, WaMu could not obtain a judgment binding the class. Thus, the "no win" part of the one way intervention problem would be presented.

Plaintiffs, on the other hand, would have a shot a class wide judgment if a class were certified. Even though there was no way to deal with the "duties" element with common proof, they could have prevailed by defeating just the "role" element. If they succeed in obtaining summary judgment on the "role" element of the exemption, then a judgment in their favor would follow. Yet if they failed to win summary judgment, then the class would have to be decertified because the case would not be triable if the "duties" element had to be litigated. Indeed, summary adjudication for plaintiffs would have been the only possible route to a judgment in this case, because a trial on the exemption defense would have been derailed by the impossibility of litigating both elements of the exemption on a class-wide basis with common proof.

This sort of "no lose" for plaintiffs, and "no win" for defendant, is not the typical situation presented on a class certification motion. The fact that WaMu carries the burden of proof on both elements distinguishes this situation from the more common situation where a plaintiff class' failure of class-wide proof on an element of its claim would result in a defense

32

verdict.  Then, the defendant would have a chance to win.  Here, the only two options for WaMu would be a Plaintiffs' class verdict, if they were correct on the "administrative/production" issue, or a decertified class with no judgment.

This fundamentally unfair prospect cannot be answered with the rubric that classes may be decertified if circumstances change.  *See, e.g., Green v. Obledo* (1981) 29 Cal.3d 126, 148.  While a trial court may certify a class, even though it recognizes a possibility that circumstances may change and require the class to be decertified, that is very different from certifying a class where it is known that the defendant cannot possibly obtain a verdict against the class.  Here, defendant's inability to obtain a verdict squarely raises the same concern underlying *Fireside Bank*, and compels, as a matter of law, that the class not be certified.

This is an important issue, but not one that needs to be reached by this Court if it agrees that the trial court's decision can be affirmed on the more straightforward substantial evidence reviewed described above.  But in the unlikely event that this Court finds some basis to fault the trial court's decision to reject the argument that it should only have considered the commonality of evidence on the "duties" element, this argument presents an alternative basis why, as a matter of law, the trial court's result was correct.

## V.    CONCLUSION

For the foregoing reasons, the Superior Court did not abuse its discretion when it denied class certification below. Substantial evidence in the record supports its finding that common issues do not predominate Plaintiffs' overtime claims or their ancillary claims, and that class treatment is not superior. Because it applied no improper criteria or erroneous legal assumption, its discretionary holding must be upheld.

August 17, 2007                     Respectfully submitted,

                                    HELLER EHRMAN LLP


                                    By _____
                                        JONATHAN P. HAYDEN
                                        ANDREW R. LIVINGSTON
                                        GREG J. RICHARDSON
                                    Attorneys for Defendant and
                                    Respondent
                                    WASHINGTON MUTUAL BANK

## CERTIFICATE OF COMPLIANCE

Counsel of Record hereby certifies that pursuant to Rule 8.204(c)(1) or 8.360(b)(1) of the California Rules of Court, the enclosed brief of Respondent and Defendant Washington Mutual Bank is produced using 13-point Roman type including footnotes and contains approximately 9,196 words, which is less than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this brief.

Dated: August 17, 2007

Signed:

Print Name: Jonathan P. Hayden

Attorneys for:

Defendant and Respondent

Washington Mutual Bank

## PROOF OF SERVICE BY MAIL

I, Allen E. Rose, declare as follows:

I am employed with the law firm of Heller Ehrman LLP, whose address is 333 Bush Street, San Francisco, CA 94104-2878. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen years and not a party to this action.

On August 17, 2007, I served the following:

### RESPONDENTS' OPPOSITION BRIEF

### CERTIFICATE OF INTERESTED PARTIES

on the below parties in this action by placing true copies thereof in sealed envelopes, addressed as shown, for collection and mailing pursuant to the ordinary business practice of this office which is that correspondence for mailing is collected and deposited with the United States Postal Service on the same day in the ordinary course of business:

Counsel for Plaintiffs and Appellants
Phyllis Parker and Kimblyn Creese:

Mark Yablonovich, Esq.
Marc Primo
Linh Hua
Initiative Law Group LLP
1800 Century Park East
Second Floor
Los Angeles, CA 90067

Clerk of the California Supreme Court
California Supreme Court
Second Floor, North Tower
300 South Spring Street
Los Angeles, CA 90013

The Hon. Terry A. Green
Superior Court of Los Angeles
Department 14
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the State of

i

California that the foregoing is true and correct and that this proof of service was executed on August 17, 2007 at San Francisco, California.

Allen E. Rose

# EXHIBIT J

2nd Civil No. **B193931**

IN THE
**COURT OF APPEAL**
STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION TWO

KIMBLYN CREESE, ET AL.,
Petitioner,

v.

SUPERIOR COURT OF THE STATE OF CALIFORNIA,
FOR THE COUNTY OF LOS ANGELES,
Respondent,

WASHINGTON MUTUAL BANK, ET AL.,
Real Party in Interest.

---

Hon. Terry A. Green, Judge
Superior Court of Los Angeles
Order entered July 24, 2006, L.A.S.C. No. BC 323376

---

**APPELLANTS' REPLY BRIEF**

---

Mark Yablonovich (Bar No. 186670)
Marc Primo (Bar No. 216796)
Rebecca Labat (Bar No. 221241)
Linh Hua (Bar No. 247419)
**Initiative Legal Group, LLP**
1800 Century Park East, Second Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Petitioner
KIMBLYN CREESE, ET AL.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................... 1

II. LEGAL ARGUMENT ................................................................... 1

    A.  THE TRIAL COURT MISAPPLIED THE ADMINISTRATIVE-
       PRODUCTION DICHOTOMY ANALYSIS ........................................... 1

       1.  The Order Of Analysis Is Important Under California Law .............. 2

       2.  The Respondent Court's Reliance On The Duties Analysis Without
           First Considering The Administrative-Production Dichotomy Was
           Erroneous Because No Amount Of Discretion Can Render A
           Production Job Eligible For Administrative Exemption .................... 3

    B.  REVERSAL IS FURTHER MANDATED BECAUSE APPELLANTS
       HAVE SHOWN THAT THERE IS NO SUBSTANTIAL EVIDENCE
       TO SUPPORT THE LOWER COURT'S FINDINGS ........................... 5

       1.  Appellants Have Supported Their Appeal With Ample References
           To The Record Below ........................................................................ 5

       2.  It Is Undisputed That The Trial Court Could Not Point To Any
           Evidentiary Support Or Legal Authority To Support Its Finding That
           A Class Action Is Not The Superior Method For Resolving This
           Dispute ............................................................................................. 5

    C.  REVERSAL IS PROPER AND DOES NOT CONFLICT WITH THE
       RULE AGAINST ONE-WAY INTERVENTION DESPITE ANY
       FUTURE AND UNCERTAIN POTENTIAL FOR
       DECERTIFICATION ............................................................................ 7

       1.  One-Way Intervention Occurs Where Class Members May Reserve
           Their Decision To Participate In A Class Action After The Court
           Has Made Merits-Based Determinations ......................................... 7

       2.  Respondent Attempts To Evade Their Burden Of Proof By
           Advocating That Class Certification Is Improper In All Cases Where
           Decertification Is Possible ................................................................ 9

i

## **TABLE OF CONTENTS**

<u>Page</u>

III. CONCLUSION ............................................................................................ 10

CERTIFICATE OF COUNSEL ....................................................................... 11

# TABLE OF AUTHORITIES

Page

## STATE CASES

Bell v. Farmers Insurance Exchange (2001)

    87 Cal. App. 4th 805, 821 .......................................................................... 3, 4

Caro v. Proctor & Gamble (1993)

    18 Cal. App. 4th 644, 655 .......................................................................... 5

Eicher v. ABI, Inc. (2007)

    151 Cal. App. 4th 1363, 1371, 1372 ......................................................... 3, 4

Firestone v. Sup. Ct. of Santa Clara (Gonzalez) (2007)

    40 Cal. 4th 1069, 1078-1089 .................................................................... 7, 8

Foreman & Clark v. Fallon (1971)

    3 Cal. 3d 875 ............................................................................................ 5

Harris v. Sup. Ct. of Los Angeles (Liberty Mutual Ins. Co., et al.) (2007)

    154 Cal. App. 4th 164, 177 ....................................................................... 2, 3, 4

Home Savings and Loan Assoc. v. Sup. Ct. of Los Angeles (Deutsch) (1974)

    42 Cal. App. 3d 1006, 1011, 1012, 1079 .................................................. 7, 8

Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995)

    37 Cal. App. 4th 855 ................................................................................. 6

Lopez v. CGM Development, Inc. (2002)

    101 Cal. App. 4th 430 ............................................................................... 6

Nwosu v. Uba (2004)

    122 Cal. App. 4th 1229 ............................................................................. 5

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## STATUTES

<u>California Rules of Court</u>, Rule 3.764 ....................................................................... 8

<u>California Rules of Court</u>, Rule 8.360 ....................................................................... 11

<u>Federal Rules of Civil Procedure</u>, Rule 23 ............................................................... 8

## I. **INTRODUCTION**

Real Party in Interest Washington Mutual Bank ("Real Party") has failed to rebut Appellants Kimblyn Creese's and Phyllis Parker's ("Appellants") showing that the Respondent Court's order denying class certification is founded upon improper legal criteria and erroneous legal assumptions.

The allegations in the underlying class action concern a uniform pattern of statutory violations that permit the trier of fact to make a class-wide determination of liability on the claims alleged. Furthermore, class certification is appropriate here because there are common questions of law and fact as to the determination of whether or not the putative class members are eligible for the administrative exemption. Therefore, Appellants' appeal should be granted to remedy the error of denying Appellants' Motion for Class Certification.

## II. **LEGAL ARGUMENT**

### A. **THE TRIAL COURT MISAPPLIED THE ADMINISTRATIVE-PRODUCTION DICHOTOMY ANALYSIS.**

The underlying class action is about whether or not Real Party properly availed itself of the administrative exemption under California law when classifying its underwriter employees. A common question of law and fact applies to all putative class members. Namely, regardless of the amount of discretion and independent judgment exercised by Real Party's underwriters, Appellants overwhelmingly performed "production" as opposed to "administrative" work, and therefore are not properly designated as exempt. Not only does the question of whether Real Party's underwriters do what is regarded as "production," as opposed to "administrative," work predominate, it is common to every single underwriter.

Real Party persists, as it did below, in devoting its opposition brief to the argument that because its underwriters may exercise some discretion in their

duties, they therefore automatically qualify for the administrative exemption. As further discussed herein, whether the putative class members exercised discretion and independent judgment is of no consequence if they did not spend at least half of their time doing administrative tasks. The Respondent Court improperly ignored the *administrative* component of the *administrative* exemption, which constitutes reversible error.

All of the evidence before the Respondent Court on the Motion for Class Certification establishes that Real Party's underwriters did not primarily perform administrative tasks. At that point, therefore, the lower court's analysis of the administrative-production dichotomy should have ended with a determination that Real Party's administrative exemption of the underwriters was improper.

## 1. The Order Of Analysis Is Important Under California Law.

Harris v. Sup. Ct. of Los Angeles (Liberty Mutual Ins. Co., et al.) (2007) 154 Cal. App. 4th 164, presented the Court of Appeal with similar factual circumstances involving the duties of claims adjusters and an identical legal analysis of the administrative exemption. As in the present case, it was necessary for the court in Harris to undergo an analysis of the administrative-production worker dichotomy. It ultimately determined that the work performed by the claims adjusters in that case did not qualify as "directly related to management policies or general business operations." Harris at 177.

Most notable is the Harris court's order of analysis in conducting the test for administrative exemption. The Harris court stated that "[b]ecause plaintiffs **are not primarily engaged in work that falls on the administrative side of the dichotomy, it is unnecessary for us to analyze the other elements of the administrative exemption, including the substantial importance requirement and the requirement that the employee exercise discretion and independent judgment.**" Harris at 185 (fn. 10) (emphasis added). This is precisely the

argument that was posited in Appellants' Opening Brief.

The Harris court determined that it was necessary to *first* analyze whether the work performed was administrative or production, a position ridiculed in Real Party's Opposition Brief. Likewise, in Eicher v. ABI, Inc. (2007) 151 Cal. App. 4th 1363, where the court found the employer did not meet its burden of proof whether a senior consultant performed office or non-manual work directly related to management policies or general business operations, it would not subsequently consider whether the employee customarily and regularly exercised discretion and independent judgment. Eicher at 1371-72. That is, whether the employees are properly classified as administratively exempt can be determined *solely* on the basis of whether they are primarily engaged in the "performance of office or non-manual work *directly related to management policies of general business operations of his employer*," if, as here, they are not. Bell v. Farmers Ins. Exch. (2001) 87 Cal. App. 4th 805, 821, quoting 29 C.F.R. part 541.2.

Only upon determining that an employee is an administrative worker may a trial court even consider whether the employee exercised discretion and independent judgment in carrying out his or her administrative work. In other words, when examining whether an administrative exemption is proper, if the employee's work is not deemed administrative, any analysis of the discretionary nature of his or her duties is superfluous.

### 2. **The Respondent Court's Reliance On The Duties Analysis Without First Considering The Administrative-Production Dichotomy Was Erroneous Because No Amount Of Discretion Can Render A Production Job Eligible For Administrative Exemption.**

Contrary to Real Party's contentions, as shown in Harris and Eicher, the order of analysis under the administrative-production dichotomy *does* matter. The

Respondent Court misapplied the test outlined in the <u>Bell</u> family of cases and followed by <u>Harris</u>: *the discretionary duties prong is not reached or considered by the court until the administrative-versus-production question is answered.* Thereafter, *only if* the position is determined to be administrative in nature is the issue of whether the employee's duties were discretionary addressed.

In the present case, the Respondent Court neglected to conduct its analysis in the proper order. The trial court first made an improper merits determination that Real Party's underwriters exercised discretion and independent judgment in carrying out their job duties. It then summarily concluded that because it found that the employees exercised discretion and independent judgment, they were properly exempt under the administrative exemption. This order of analysis is legally faulty under <u>Bell</u>, <u>Harris</u> and <u>Eicher</u>. In nearly all employment positions involving varying job duties, employees will exercise discretion and independent judgment. However, in determining whether an employee is deprived of overtime compensation based on that factor is properly contingent on the initial determination of his administrative or production work job duties. Essentially, the Respondent Court failed to perform the administrative-production analysis at all.

To succeed on a motion for class certification, Appellants' burden does not require them to show that the underwriters were misclassified as exempt employees. Nevertheless, Real Party has improperly argued that Appellant must, upon moving for class certification, prove that the administrative exemption was improperly applied here. However, that is Real Party's burden, *after* certification, on the merits of the underlying case. At the procedural stage at which this action stands, Appellants have sufficiently identified the common issue that calls for class certification: whether or not Real Party's underwriters performed a sufficient proportion of administrative tasks to justify Real Party's classification of them as administratively exempt employees.

4

## B. REVERSAL IS FURTHER MANDATED BECAUSE APPELLANTS HAVE SHOWN THAT THERE IS NO SUBSTANTIAL EVIDENCE TO SUPPORT THE LOWER COURT'S FINDINGS.

"[An] [a]ppeal of an order denying class certification 'presents an exception to the general rule on review that we look only to the trial court's result, not its rationale' (citation omitted). Erroneous legal assumptions or improper criteria may require reversal 'even though there may be substantial evidence to support the court's order.'" Caro v. Proctor & Gamble (1993) 18 Cal. App. 4th 644, 655.

### 1. Appellants Have Supported Their Appeal With Ample References To The Record Below.

In an apparent attempt to distract this Court from the true legal errors in the Respondent Court's denial of Appellants' Motion for Class Certification, Real Party has mischaracterized Appellant's brief and generally exaggerates the applicability of its cited case law in claiming that Appellants have waived any error on a substantial evidence review. Appellants' Statement of the Case in their opening brief summarizes the pertinent facts and Appellants have made specific citations to the record below, where appropriate, to support their legal arguments.

The cases cited by Real Party, and relegated to footnote 4 of its opposition brief, are irrelevant and misleading. Nwosu v. Uba (2004) 122 Cal. App. 4th 1229 concerns a property dispute between two private individuals. The court there found that the offending party, who appeared *in pro per*, submitted briefs on appeal that were generally lacking in the "[p]resentation of a cogent argument with specific citations to the record." Id. at 1246. Foreman & Clark v. Fallon (1971) 3 Cal. 3d 875 is also inapplicable to the present circumstances. Real Party cites Foreman & Clark for the proposition that Appellants are required to "set forth in their brief all the material evidence on the point and not merely their own

5

evidence." Id. at 881. However, Real Party does not cite to any concrete examples of how this statement relates to Appellants' opening brief. Similarly, Appellants are unable to glean why Real Party simply cited Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 37 Cal. App. 4th 855 and Lopez v. CGM Development, Inc. (2002) 101 Cal. App. 4th 430, which refer to general and egregious failures to properly brief issues on appeal, with no explanations or application to the present matter.

Accordingly, the Court should ignore Real Party's red herring arguments and find that there was not substantial evidence to support the Respondent Court's findings. Alternatively, and in any event, it is sufficient for reversal for the Court to find that the lower court's glaring erroneous legal analysis amounts to an abuse of discretion.

2. **It Is Undisputed That The Trial Court Could Not Point To Any Evidentiary Support Or Legal Authority To Support Its Finding That A Class Action Is Not The Superior Method For Resolving This Dispute.**

Real Party concedes that the lower court did not provide any support for its independent finding that a class action is not a superior method for resolving the underlying claims at issue here. See Real Party's Opposition Brief, page 30. Furthermore, in its brief, Real Party also cannot provide a persuasive citation to the record or to any legal authority to support that class action is not superior. Real Party mentions the number of putative class members who consented to the disclosure of their names to counsel for the class. It then extrapolates this reference into a conclusory statement that therefore, no members of the potential class believe they have a claim. Consequently, it is clear that the Respondent Court's finding in this regard was not supported by substantial evidence.

6

## C. REVERSAL IS PROPER AND DOES NOT CONFLICT WITH THE RULE AGAINST ONE-WAY INTERVENTION DESPITE ANY FUTURE AND UNCERTAIN POTENTIAL FOR DECERTIFICATION.

### 1. One-Way Intervention Occurs Where Class Members May Reserve Their Decision To Participate In A Class Action After The Court Has Made Merits-Based Determinations.

One-way intervention is a procedure under which "potential members of the class can reverse their decision to become part of the class until the validity of the cause asserted by the named [plaintiff] on behalf of the class has been determined" Home Savings and Loan Assoc. v. Sup. Ct. of Los Angeles (Deutsch) (1974) 42 Cal. App. 3d 1006, 1011. This procedure is a by-product of a trial court ruling on the merits prior to class certification and prior to class notice.

The effect of one-way intervention is that putative class members can base their decision to participate in a class action on reliance of the court's merit-based determination prior to class certification. Therefore, it is assumed that if the court makes a merits-based determination in favor of the class prior to class certification, then putative class members will opt-in to reap the benefits of the class action. Alternatively, it is also assumed that if the court makes a merits-based determination adverse to the class prior to class certification, then putative class members will opt-out so as to retain their right to bring a separate suit and not be bound by the terms of the class action. The result is that a defendant would not be able to bind class members that opt-out of a class action after learning of a court's unfavorable merits-based determination. See Firestone v. Sup. Ct. of Santa Clara (Gonzalez) (2007) 40 Cal. 4th 1069, 1081.

In this case, Real Party relies on Firestone, where the California Supreme Court directed that the trial court vacate its judgment on the pleading but maintain

its order to certify the class. The <u>Firestone</u> court reasoned that a merits determination prior to class certification would violate the rule against one-way intervention. In the present case, Real Party is not subject to the prejudices of one-way intervention, as defined by the courts, in that neither party has brought forth a motion for determination on the merits. In that a merits-based determination by the court cannot yet be made, the prejudice of one-way intervention involving class members' post hoc decisions to participate in class actions is not present at this stage of the litigation.

<u>Firestone</u> expressly states that the legislature and judicial system have acted to prevent violation of the rule against one-way intervention. <u>Id.</u> at 1078-79. First, in 1996, the legislature revised <u>Federal Rules of Civil Procedure</u>, Rule 23 to exclude one-way intervention. <u>Id.</u> Second, in 2003, there was another set of amendments which expressly did not restore the practice of one-way-intervention. <u>Id.</u> at 1079 (fn. 1). Lastly, California responded judicially by prohibiting trial courts from "proceeding to trial on the substantive merits of the cause without prior adjudication of the procedural class-action issues" in the cases of <u>Home Savings I and II</u>. <u>Id.</u> at 1079.

"The federal class action rule, rule 23, whose guidance we have been urged to follow in the absence of state precedent has been interpreted by the United States Supreme Court to disallow one-way intervention." <u>Home Savings I</u>, <u>supra</u>, 42 Cal. App. 3d at 1012 (omitting internal citation). The California Supreme Court's decision in <u>Firestone</u> in no way criticizes the actions and amendments which were implemented to prevent one-way intervention. In fact, the Court expressly states one-way intervention was amply resolved with the legislative amendments and judicial decisions. <u>Firestone</u> at 1078-89. The present case does not present circumstances whereby Real Party is in danger of one-way intervention.

8

**2. Respondent Attempts To Evade Their Burden Of Proof By Advocating That Class Certification Is Improper In All Cases Where Decertification Is Possible.**

Real Party's argument that this class cannot be certified because of any future risk of decertification positions Real Party in such a way that it can evade its burden to prove whether this class of employees falls under the administrative exemption. By its argument, Real Party suggests that <u>California Rules of Court</u>, Rule 3.764, and <u>Federal Rules of Civil Procedure</u>, Rule 23, which provide for the certification and decertification of a class, should be completely abolished. Real Party's unsupported argument that decertification of a class would not allow it to have binding judgment on a class of individuals is essentially an argument that class certifications should be an invalid mechanism with which to pursue judicial remedy. According to Real Party, since *all* classes risk decertification then no class should be certified, which would leave only the option of several hundred employees individually losing the economic battle of legal representation in the courtroom against large corporations. Such a threat of individual versus corporation would not only obliterate Real Party's competition, it would allow all corporations the flexibility of violating statutory mandate with impunity.

Additionally, courts have already ruled in many instances involving declaratory judgments and injunctive relief that the prospect of later decertification does not make a class action improper. For instance, in a declaratory relief action typically only the moving party can obtain a favorable outcome by obtaining the requested judicial declaration because a finding adverse to the moving party will usually not necessarily imply a further finding in favor of the non-movant.

As such, Real Party does not actually argue that it is confronted with a violation under the rule against one-way intervention. Rather, Real Party argues that class actions should altogether be prohibited in instances where later

9

decertification is possible. In the unlikelihood that this Court will agree with Real Party's position, Real Party would no longer have to concern itself with bearing the burden of proving the administrative exemption, and it would no longer have to concern itself with defending against any future class actions.

## III.     CONCLUSION

The order of the Respondent Court denying class certification is based on improper criteria and erroneous legal assumptions, and as a consequence lacks substantial evidence. The Court should reverse the order and remand to the trial court with instructions to grant Appellants' motion for class certification.


Dated: October 9, 2007                         Initiative Legal Group, LLP


By: _____
                        Mark Yablonovich
                        Marc Primo
                        Rebecca Labat
                        Linh Hua
                        Attorneys for Appellants

**CERTIFICATE OF COUNSEL**

Counsel of record hereby certifies that, pursuant to Rule 8.360 of the California Rules of Court, the enclosed Appellants' Opening Brief was produced using 13-point Times New Roman type style and contains approximately 3,000 words. In arriving at that estimate, counsel has relied on the word count function of Microsoft Word 2003, which was used to prepare the document.

Dated: October 9, 2007                    Initiative Legal Group, LLP

                                          By: _____
                                              Mark Yablonovich
                                              Marc Primo
                                              Rebecca Labat
                                              Linh Hua
                                              Attorneys for Appellants

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is: Initiative Legal Group LLP, 1800 Century Park East, 2nd Floor, Los Angeles, California 90067.

On October 10, 2007, I served the within document(s) described below as:

### APPELLANTS' REPLY BRIEF

on the interested parties in this action by placing true copies thereon enclosed in sealed envelopes addressed as follows:

> Hon. Terry A. Green
> Superior Court of Los Angeles
> Stanley Mosk Courthouse, Department 14
> 111 North Hill Street
> Los Angeles, CA 90012
> *Respondent*

(X)  **MAIL**: I deposited such envelope in the mail at Los Angeles, California. The envelopes were mailed with postage thereon fully prepaid.

> Clerk of the California Supreme Court
> California Supreme Court
> Second Floor, North Tower
> 300 South Spring Street
> Los Angeles, CA 90013
> *Courtesy Copy*

> Jonathan Hayden, Esq.
> Andrew Livingston, Esq.
> Heller Ehrman LLP
> 333 Bush Street
> San Francisco, CA 94104
> *Attorneys for Defendant, Washington Mutual Bank, et al.*



Richard B. Davis
Washington Mutual Bank, FA
Office of the General Counsel
9200 Oakdale Avenue, 7th Fl.
Mail Stop N111701
Chatsworth, CA 91311

(X)    **OVERNIGHT COURIER**: I caused the above-referenced document(s) to be delivered to an overnight courier service (Federal Express), for delivery to the above addressee(s).

(X)    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**EXECUTED** this document on October 10, 2007, at Los Angeles, California.

_____
Karen Acio

# EXHIBIT K

Filed 3/12/08  Creese v. Washington Mutual Bank CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KIMBLYN CREESE et al., | B193931 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC323376) |
| v. | |
| WASHINGTON MUTUAL BANK, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Terry A. Green, Judge.  Affirmed.

Initiative Legal Group, Mark Yablonovich, Marc Primo, Matthew Theriault, Rebecca Labat and Linh Hua for Plaintiffs and Appellants.

Heller Ehrman, Jonathan P. Hayden, Andrew R. Livingston and Greg J. Richardson for Defendant and Respondent.

_____

Appellants Kimblyn Creese and Phyllis Parker (collectively Creese) appeal from an order denying class certification to a proposed class of underwriters in an action against respondent Washington Mutual Bank (Bank) for, inter alia, failing to pay them overtime, give them meal and rest breaks, and give them itemized wage statements. Creese alleged, in part, that Bank misclassified the underwriters as administrative employees exempt from the relevant labor laws when in fact they are nonexempt because they were employed in a production capacity, and they did not exercise discretion or independent judgment. The trial court determined that common questions did not predominate as to whether the underwriters exercised discretion and independent judgment, and that class certification would not be advantageous to the judicial process and the litigants. Creese contends that the trial court utilized improper legal criteria and erroneous legal assumptions, and that it misapplied the test articulated in *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 (*Bell I*). As a result, Creese contends that the ruling was not supported by substantial evidence, and that the trial court prematurely ruled on the merits instead of determining whether she established the requisites for class certification.

We find no error and affirm.

2

## FACTS[1]

*The complaint*

Creese filed a class action complaint against Bank for:  (1) violation of Labor Code sections 510 and 1198[2] [failure to pay overtime wages]; (2) violation of section 226, subdivision (a) [failure to provide itemized wage statements]; (3) violation of sections 201 and 202 [failure to pay all wages due upon termination of employment]; (4) conversion and theft of labor; (5) violation of Business and Professions Code section 17200 et seq. [unfair business practices]; and (6) violation of section 226.7, subdivision (a) [failure to provide meal and rest periods].  The action was brought on behalf of Bank's past and present underwriters.

*The motion to certify the class*

Creese moved to certify the proposed class.  She argued that the underwriters are nonexempt because they were employed in a production capacity rather than an administrative capacity, and because their jobs did not require them to exercise discretion or independent judgment.

In opposition, Bank argued that Creese failed to identify common issues that would predominate.  It pointed out that the approximately 600 underwriters in the proposed class worked in 40 different facilities.  Then it claimed that class certification would be inappropriate unless the evidence showed that the underwriters did not exercise

---

[1]    Our statement of facts is limited because Creese did not provide a statement of facts in her opening appellate brief.  Instead, she provided an "Introduction" and "Statement of the Case" which mingled argument, procedural facts and references to evidence without record citations.  (There were two footnotes, but one cites to the order denying class certification, and the other cites to a statement made by the trial court at the certification hearing.)  Creese's brief violates the requirements set forth in California Rules of Court, rule 8.204(a)(1)(C) that a party "[s]upport any references to a matter in the record by a citation to the volume and page number of the record where the matter appears," and California Rules of Court, rule 8.204(a)(2)(C) that a party "[p]rovide a summary of the significant facts limited to matters in the record."

[2]    All further statutory references are to the Labor Code unless otherwise indicated.

discretion and independent judgment while making credit decisions.  According to Bank, that was unlikely.

The parties submitted supplemental briefs.

The trial court denied the motion.  As a preface to its ruling, the trial court's minute order explained that "[Creese] is arguing [in her] Complaint and Moving papers [that the underwriters] were misclassified under the administrative exemption . . . in an effort, by [Bank], to save money on overtime, etc.  Thus, [Creese's] primary issue at trial is whether [the] underwriters were, as a whole, misclassified.  There are other ancillary Causes of Action [on which Creese] should provide proof of common evidence as well.  However, in order to satisfy the commonality element, [Creese] would have to provide sufficient evidence that misclassification could be addressed at trial with common proof because the liability or lack thereof [of Bank] for misclassification directly impacts the remaining Causes of Action."

According to the trial court, "[Creese] provided the job manuals and boilerplate declarations [in] an effort to establish uniformity, a pattern, practice and/or commonality, at minimum[.]  [Bank's] evidence wherein defense counsel actually questioned the declarants on particular paragraphs of their executed declarations refutes many of the claims of [Creese's] Motion. . . .  As such, [Bank's] evidence undermined the persuasiveness of [Creese's] evidence. . . .  Nothing in the law prevents the [trial court] from considering the totality of the evidence in [determining whether there is substantial evidence of the class requirements].  If this were not the rule, [Creese] would pick and choose among the facts to present to the [trial court], providing an incomplete picture of the litigable issues."

The trial court acknowledged that Creese was advancing two common issues of fact and law regarding whether the underwriters were misclassified.  The first was whether the underwriters exercise the required level of discretion and independent judgment for the administrative exemption to be applicable to them, assuming that the underwriters must follow uniform and detailed procedures and guidelines.  The second

4

was whether the underwriters primarily perform production as opposed to administrative work, such that they are nonexempt.

The trial court stated: "Factually, [Creese's] first common question has been successfully refuted by [Bank's] evidence. [The underwriters] as a whole are not necessarily following detailed, uniform procedures. [¶] The nature and type of 'level of discretion' and 'independent judgment' depends upon many factors, as set forth in [Bank's] evidence. Such factors include the different products underwritten: Retail, wholesale, loans to 'emerging markets', custom construction, and Government loans. Variations also can be based on geography and, naturally, on individual competency. [¶] It is the [trial court's] opinion that these differences and variations defeat commonality in this case, and, if this class were certified as proposed by [Creese], the trial would devolve into a series of complicated mini-trials needed to address the variations noted. In this respect, the nature and the variations are fundamentally different here than in [(*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On Drug*)], [w]here . . . 'the only difference between [d]efendant's declarations and plaintiff's evidence is that the parties disagree on whether certain identical work tasks are 'managerial' or 'non-managerial.' . . . Further, unlike our case, the ultimate resolution of the 'managerial' vs. 'non-managerial' issue cannot be mechanically resolved, as in [*Sav-On Drug*], by assigning tasks to each side of the 'ledger.' [¶] The [trial court] further agrees with [two federal district cases] [that] the nature of the job of underwriting involves the clear exercise of discretion and judgment. [¶] Based upon the instant facts and evidence contained in the moving papers, it is difficult to say that if [Bank] were found liable to [one underwriter] then [Bank] would be liable to [a second underwriter] or [a third underwriter]."

Next, the trial court indicated that it "read and considered the supplemental briefing on the issue of the administrative/production dichotomy. [Creese] raises the issue of whether the [underwriters] here are administrative or production [workers], and, because the issue is raised and so framed, [whether the underwriters are] entitled to class certification. [¶] The [court] in [*Bell I*] recognized that 'the administrative/production

5

worker dichotomy is a somewhat gross distinction that may not be dispositive in many cases.' . . . [The dichotomy] is not helpful in this case, given the lack of commonlity. Moreover, there is scant evidence in the record to support the conclusion that [the underwriters are production workers]."

Last, the trial court concluded that Creese did not "establish[] by a preponderance of the evidence[] that the class action proceeding is [s]uperior to alternat[ive] means for a fair and efficient adjudication."

This timely appeal followed.

## DISCUSSION

Creese assigns error on four grounds, namely: (1) The trial court applied an improper legal standard and erroneous legal assumptions when it determined that common questions do not predominate and class certification would not be advantageous; (2) the trial court improperly determined the merits of the dispute instead of deciding whether Creese had established the requisites for class certification; (3) the trial court erred when it denied class certification regarding the failure to provide itemized wage statements; and (4) the trial court erred when it denied class certification regarding whether Bank failed to provide meal and rest periods. As we discuss below, these assignments of error lack merit.

**1. Class action law.**

A class action is authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code of Civ. Proc., § 382.) The plaintiff seeking certification is obliged to "establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citations.]" (*Sav-On Drug, supra,* 34 Cal.4th at p. 326.) When analyzing whether there the plaintiff has demonstrated a community of interest, courts examine three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Ibid.*)

6

The procedural inquiry is this:  Are the common issues so numerous or substantial that a class action would be advantageous to the judicial process and the parties?  (*Ibid*.)

Regarding the first factor, a plaintiff must "place substantial evidence in the record that common issues predominate.  [Citation.]"  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108.)  To do so, a plaintiff must show that each member of the class will not be required to individually litigate numerous and substantial questions in order to recover.  And, for class certification to be advantageous to the judicial process and the litigants, the issues which may be jointly tried must be sufficiently numerous and substantial when compared to the issue requiring separate adjudication.  (*Ibid*.)

Whether the plaintiff has presented substantial evidence of the elements necessary for the certification of a class is a discretionary determination.  "Nothing in the law prevents the court from considering the totality of the evidence in making that determination.  [Citation.]  If this were not the rule, plaintiff could pick and choose among the facts to present to the court, providing an incomplete picture of the litigable issues, in order to ensure a certification."  (*Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1448, fn. omitted.)

A trial court may consider both the plaintiff's legal theory of liability and the defendant's affirmative defense.  A defendant "may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues.  [Citations.]"  (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450.)  Still, the inquiry is procedural, and a trial court cannot inquire whether an action has merit.  (*Sav-On Drugs*, *supra*, 34 Cal.4th at p. 326.)

An appellate court reviewing a ruling on class certification questions whether the trial court abused its discretion.  (*Sav-On Drug*, *supra*, 34 Cal.4th at p. 326.)  If a trial court's ruling is supported by substantial evidence, the ruling will ordinarily be affirmed on appeal unless the trial court used improper criteria or made erroneous legal assumptions.  (*Id.* at pp. 326–327.)

## 2. The administrative employee exemption.

According to Bank, the exemption at issue is governed by two substantially similar wage orders that cover the class period.[3] They are Wage Order 4-2000 and Wage Order 4-2001. The latter was effective on January 1, 2001, and it was codified in California Code of Regulations, title 8, section 11040(1)(A). It provides that portions of Wage Order 4-2001—including provisions pertaining to overtime pay, meal and rest periods, and wage statements—do not apply "to persons employed in administrative, executive, or professional capacities."[4]

For a worker to be classified as an exempt administrative employee under this regulation, the "employee must (1) perform "'office or non-manual work directly related to management policies or general business operations'" of the employer or its customers, (2) "'customarily and regularly exercise[] discretion and independent judgment,'" (3) "'perform[] under only general supervision work along specialized or technical lines requiring special training'" or "'execute[] under only general supervision special assignments and tasks,'" (4) "be engaged in the activities meeting the test for the exemption at least 50 percent of the time, and" (5) "earn twice the state's minimum wage. Stated in the conjunctive, each of the five elements must be satisfied to find the employee exempt as an administrative employee." (*Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1371, fn. omitted.)

## 3. Creese has not shown that the trial court misapplied *Bell I*.

Creese contends that the trial court misapplied the test in *Bell I* (and also *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 (*Bell II*)) in determining whether the underwriters are exempt, and its ruling was not supported by substantial evidence. In her view, the trial court's first step should have been to assess the existence and predominance of common questions regarding whether the underwriters were employed

---

[3]     Creese did not identify the wage order at issue.

[4]     Creese does not dispute that this wage order is applicable, or that its immediate predecessor was substantially similar.

8

in an administrative or production capacity. If they were employed in a production capacity, then they were nonexempt, common questions predominated, and there was no need for further inquiry. In other words, Creese avers that the trial court did not need to proceed to the second step, which was to ask whether the underwriters exercised discretion and independent judgment. But, Creese complains, the trial court improperly reversed the inquiry, deciding the matter based on the second step and ignoring the first step. In her opening brief, Creese states: "In altogether neglecting to address the administrative-production dichotomy, . . . [the trial court] evidently made the erroneous legal assumption that the exercise of discretion and independent judgment is, standing alone, both a necessary and a sufficient condition for a proper administrative exemption classification."

We turn to these issues.

a. The *Bell I* criteria.

In a case where an administrative exemption is challenged, the initial inquiry is whether workers are employed in an administrative, executive or professional capacity, or whether workers are employed in a production capacity. (*Bell I*, *supra*, 87 Cal.App.4th at pp. 819–823.) If the worker is employed in a production capacity, he or she is nonexempt. (*Id.* at pp. 828–829.)

A court's task is to scrutinize a worker's role and duties in the employer's business. (*Bell I*, *supra*, 87 Cal.App.4th at pp. 819–820.) A worker is employed in a production capacity if his or her primary duty is producing the commodities, whether goods or services, that the business exists to produce. (*Id.* at p. 820.) In contrast, an employee is employed in an administrative capacity if he or she performs work directly related to the management policies or general business operations of the employer or the employer's customers. (*Id.* at pp. 820–821.)

But the court noted that "the administrative/production worker dichotomy is a somewhat gross distinction that may not be dispositive in many cases." (*Bell I*, *supra*, 87 Cal.App.4th at p. 826.) Even though the *Bell I* court found that claims representatives were employed in a production capacity, the court recognized "that a careful analysis of

9

the employees' duties may be necessary to determine exempt or nonexempt status in other cases." (*Id.* at p. 829.)

In *Bell II*, the court summarized its holding in *Bell I*, stating, in relevant part, that "we construed the [administrative employee] exemption as requiring an employer to prove *both* that an employee is employed in an 'administrative capacity' *and* that the employee is '"engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment."'" [Citation.]" (*Bell II*, *supra*, 115 Cal.App.4th at p. 728.)

A review of *Bell I* and *Bell II* teaches that a generic inquiry into whether a worker is employed in an administrative or production capacity may not resolve the exemption issue in all cases. In some cases, the trier of fact may be called upon to analyze an employee's duties. Thus, we cannot say, as Creese urges, that there is a per se rule in connection with a class certification motion requiring that a trial court look first or only to whether workers were employed in an administrative or production capacity. To the degree Creese contends that the only issue below was the capacity the underwriters were employed in, we reject the contention. And because the exercise of discretion or independent judgment is a pertinent issue, as established in *Bell I* and *Bell II*, we cannot say that the trial court applied improper legal criteria. Also, it is impossible to say that, in the exercise of discretion, the trial court could not base its ruling on the second prong of the *Bell I* and *Bell II* test, particularly where, as here, it determined that the first prong was not dispositive and the second prong involved what it perceived as substantial variations and distinctions between what each of the underwriters was required to do on a daily basis. In any event, the trial court's minute order indicates that it did in fact examine the capacity the underwriters were employed in. The trial court concluded that the issue was not dispositive in the context of this case, and, regardless, there was scant evidence for it to consider. Essentially, the trial court identified the exercise of discretion and independent judgment as the most substantial issue, and that it would necessitate a series of mini-trials to resolve.

10

To recap, the trial court determined that the capacity the underwriters were employed in was not dispositive, the scant evidence did not establish capacity, and issues regarding the exercise of discretion and independent judgment were not common. At first blush, the trial court neither applied improper legal criteria nor made improper legal assumptions. And we presume that the record contains evidence to support the trial court's view of the case. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*). Creese's task, therefore, is to demonstrate that the ruling below was not supported by substantial evidence. Only by doing so can she avoid our presumption that substantial evidence exists.

     b. <u>Creese's substantial evidence attack.</u>

As to this pivotal issue, the existence of substantial evidence, Creese waived any argument she might desire to advance. Her opening brief contains only one citation to evidence offered below. Most of her factual averments are devoid of any support, and they are one-sided. Some are supported by footnotes, but the footnotes refer us to the trial court's rulings, or to the briefs submitted in connection with the motion for class certification, neither of which qualify as evidence. Briefs contain arguments, and "'[i]t is axiomatic that argument is not evidence.' [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 961, fn. 10.)

The one citation to evidence appears on page 19 of the 20 page opening brief. In support of the contention that Creese submitted "ten declarations that posited a systematic policy and practice on the part of [Bank] that cause putative class members to be systematically deprived of meal and rest breaks," Creese provided footnote 22, which stated: "See Plaintiffs' Appendix of Declarations in Support of Plaintiffs' Motion for Class Certification (7 App. 401-427.)" This is insufficient to assist us in determining whether the underwriters were employed in an administrative or production capacity, or whether they exercised discretion and independent judgment. Furthermore, we are not required to comb through the record on our own in search of error. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *Foreman & Clark, supra,* 3 Cal.3d at p. 881 ["Defendants' contention herein 'requires defendants to demonstrate that there is *no*

11

substantial evidence to support the challenged findings.' . . . [Citations.] A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, if, as defendants here contend, 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived.' . . . [Citations.]")].)

There is a plethora of examples of Creese's abandonment of her substantial evidence attack.

On page 3 of the opening brief, Creese states: "[T]he [trial court's] analysis improperly reached the merits of [Creese's] misclassification/overtime claim, in the manner of a summary judgment motion, as opposed to an analysis confined to the requisites for class certification. [Creese] presented uncontroverted evidence that she and other 'underwriters' never performed administrative work, and offered the common questions of law and fact by which the action could be adjudicated on a class-wide basis. Yet [the trial court] supported its denial of class certification solely with its analysis that the plainly non-administrative work could have entailed some amount of discretion and independent judgment. However, no amount of discretion and independent judgment is sufficient to render a job with no administrative aspect whatsoever eligible for the *administrative* exemption."

Creese did not provide any record citations to establish that she presented uncontroverted evidence that she and other underwriters never performed administrative work. As a result, we are offered no evidence that, using criteria in Wage Order 4-2001, the underwriters do not perform office or nonmanual work directly related to management policies or general business operations of Bank or Bank's customers; they do not customarily and regularly exercise discretion and independent judgment; they do not regularly and directly assist a proprietor, or an employee employed in a bona fide executive or administrative capacity; they do not perform work that is only generally supervised and which is specialized or technical along lines requiring special training, experience, or knowledge; they do not execute special assignments and tasks only under

12

general supervision; and they earn less than two times the state minimum wage for full-time employment.

On pages 3 and 4 of her opening brief, Creese admits that Bank "did offer evidence to support its contention that its underwriter employees classified as exempt under the administrative exemption exercised discretion and independent judgment" but avers that her "evidence that the work the employees performed was in no sense 'administrative' went entirely unrefuted by [Bank], and entirely unaddressed by [the trial court]." Not only did Creese fail to provide record citations, but she did not summarize Bank's evidence.[5] She therefore failed in her obligation to fairly state all the evidence. (*Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832 (*Oliver*).) Modifying a quote from the *Oliver* court, we conclude that Creese's "briefs constitute merely a challenge to [Bank] to set forth or this court to find the evidence supporting . . . the trial court's [order]. Given this type of presentation the contention that the findings are not supported by substantial evidence may be deemed waived." (*Ibid.*) This is a practice we cannot condone.

On page 6 of her opening brief, Creese contends that she is a former underwriter who was classified as exempt. Based on Creese's opening brief, we do not know this to be true. We also do not know that there is evidence supporting the following statements: "[The underwriters] had no role whatsoever in the 'administrative' functions of [Bank's] mortgage lending business"; "[B]ecause *all* of the evidence before the [trial court] affirmed the putative class members did not perform administrative work, there was not

---

[5]      Similarly, on page 9 of her opening brief, Creese stated: "There was a significant dispute between the parties as to whether the underwriters did or did not employ discretion and independent judgment in performing their job duties. There was indeed evidence presented that tended to suggest both the presence and absence of discretion and independent judgment." Instead of summarizing this evidence or providing record citations, Creese averred that "the discretion and independent judgment question was incidental to [her] class certification motion, and not properly before the [trial court] on a motion for class certification. Whether the putative class members did in fact exercise discretion and independent judgment is, ultimately, and only potentially, a question on the merits."

substantial evidence to support a ruling that necessarily requires a finding that common questions of law and fact do not predominate as to the determination of whether or not putative class members did or did not perform administrative work"; "Because [Bank] chose . . . to give nearly total emphasis to its argument that underwriters exercise discretion and independent [judgment], [Bank] has managed to posit only one underwriter job task that is even arguably administrative, and there is no evidence that the underwriters actually did even that one administrative task"; "[Creese's] and [Bank's] evidence, cumulatively, indicates that [Bank's] underwriters performed absolutely no administrative tasks whatsoever."

     c. *The trial court did not rule on the merits.*

Although Creese contends that the trial court impermissibly ruled on the merits, this assertion was not followed by any analysis. We will not formulate Creese's argument on her behalf. In any event, it should be pointed out that the trial court did not rule on the exemption issue. Instead, it looked at the totality of the evidence and concluded that common issues did not predominate regarding exemption, and class certification was not appropriate. At the June 26, 2006 hearing, the trial court even stated: "This is not a hearing on the merits."

**4. Wage statements.**

Creese argues that a class should have been certified regarding the failure of Bank to provide wage statements that itemized the hours worked and hourly rates in effect during each pay period.

We disagree.

Section 226, subdivision (a) provides, in part, that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any

14

applicable order of the Industrial Welfare Commission . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

If the underwriters were exempt, and their compensation was based on salary, then they were not entitled to an itemization of hours and an hourly rate. Thus, the issue of classification predominates, and the trial court was within its discretion to deny class certification on this cause of action.

In Creese's view, the underwriters were entitled to an itemization of hours worked and hourly rates regardless of whether they were exempt because they were paid based on salary and bonuses. But Creese did not cite to any evidence that the underwriters were paid on that basis. Instead, she simply cited to the points and authorities in support of her motion for class certification. As we have stated previously in this opinion, argument does not qualify as evidence. And regardless, Creese has not offered any analysis of how section 226, subdivision (a)(2) should be interpreted. In other words, does the phrase "solely based on a salary" include or exclude compensation that is based on salary plus bonuses? We are not offered an answer by Creese and it "is not our responsibility to develop an appellant's argument." (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.) Suffice it to say, if compensation is not based on hours worked, and if an employee is exempt, there is no logical basis for requiring the itemizations Creese urges.

## 5. Meal and rest periods.

Under Wage Order 4-2001, only nonexempt employees are entitled to meal and rest periods. The classification issue predominates in the underwriters meal and rest period claim, and it was reasonable for the trial court to deny class certification on the same grounds as the other claims.[6]

---

[6]     Just prior to oral argument, Bank alerted us to *Combs v. Skyriver Communications, Inc.* (Jan. 17, 2008, D049884) ___ Cal.App.4th ___[2008 Cal.App. Lexis 208]. In *Combs*, the court held that the application of the administrative versus production worker dichotomy is not mandatory in all administrative exemption cases. It found that a trial

**DISPOSITION**

The order denying class certification is affirmed.

Bank shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                ASHMANN-GERST

We concur:


_____, P. J.
          BOREN


_____, J.
          DOI TODD

---

court's decision not to apply the dichotomy was supported by substantial evidence.  We need not consider *Combs*.  But we do note that it is consistent with our opinion.

16