JONATHAN HAYDEN (Bar No. 104520)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
jonathan.hayden@hellerehrman.com

CHAD R. FULLER (Bar No. 190830)
BRITTANY L. S. LITTLE (Bar. No. 239681)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122
Telephone: (858) 450-8400
Facsimile: (858) 450-8499
chad.fuller@hellerehrman.com
brittany.little@hellerehrman.com

Attorneys for Defendant
WASHINGTON MUTUAL BANK

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT BOVA, on behalf of himself, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL BANK and Does 1 to 10,<br><br>Defendants. | Case No.:  07 CV 2410 WQH JMA<br><br>**DEFENDANT WASHINGTON MUTUAL'S REPLY TO OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY PLAINTIFFS' CALIFORNIA CLASS ALLEGATIONS AND PRIVATE ATTORNEY GENERAL ACTION ALLEGATIONS**<br><br>*[No oral argument unless requested by this Court]*<br><br>**Date:  June 9, 2008**<br>**Time:  11:00 a.m.**<br>**Judge:  William Q. Hayes** |

I.  INTRODUCTION

The changes to the proposed class definition that Plaintiff highlights throughout his Opposition can best be described as distinctions without differences. Plaintiff's "changes" to the class definition do not avoid the issues that caused the court in *Creese*[1] to deny certification of a virtually identical class. Those same reasons apply equally to the class as defined here.

Plaintiff further claims that WaMu has brought its requests prematurely and that he should be given the opportunity to complete discovery. But Plaintiff's desire for unnecessary and expensive discovery is at odds with the purpose of collateral estoppel, and can only result in a waste of judicial resources. Because the Plaintiff's class has been denied certification by another court, he should not be permitted to waste the Court's valuable time and resources relitigating the issue.

Finally, WaMu's motion as to Plaintiff's PAGA claims should be granted because the procedure that permits non-class PAGA representative actions in California state court is inapplicable in federal court under the *Erie* doctrine. The proper means to bring a representative PAGA action in federal court is to satisfy all requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure, which Plaintiff cannot do based on *Creese*.

II. LEGAL ARGUMENT

   A.  **Collateral Estoppel Applies Because Any Distinctions Between the Two Classes Are Irrelevant to the Basis for the *Creese* Class Denial**

Collateral estoppel is a judicial device which prevents issues from being relitigated after they have been fully and fairly decided. Here, Plaintiff should be collaterally estopped from bringing his class action suit against WaMu because the issue of WaMu underwriters comprising a class has been fully and fairly litigated in *Creese*.[2] *Creese* sought to certify:

> All current and former employees of the Defendant who are employed as underwriters and classified as exempt from overtime by

---

[1] *Creese v. Washington Mut. Bank*, No. B193931, 2008 WL 650766 (Cal. App. 2nd Dist. March 12, 2008) (not reported).

[2] Plaintiff argues that procedural errors on the part of Ms. Creese's lawyers raise concern that the case was not adequately represented. However, the court's analysis regarding the defects with proceeding as a class action (which gives rise to collateral estoppel) was fully litigated by competent counsel.

---

Heller Ehrman LLP

1

REPLY TO OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY   CASE NO: 07 CV 241 WQH JMA

> Defendant at their mortgage lending business locations in the state of California within four (4) years of the filing of this complaint through the resolution of this lawsuit.

*See* Creese Motion for Class Certification at pages 3-4, attached to WaMu's Request for Judicial Notice as Exhibit B. The record before the court showed that there were a large number of material variations in the underwriters' positions, including various organizational structures, a broad variety of residential loan products, differences in distribution channels, differences in the complexity of underwriting assignments, and significant individual variety in skill and competency. *See* WaMu's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Certify a Class at pages 7-10, attached to WaMu's Request for Judicial Notice as Exhibit C. These, and other factors equally applicable to the *Bova* case, led the *Creese* court to find that the class lacked commonality and superiority, and therefore, was not a certifiable class. *Id.* at *1.

In attempting to modify his class, Bova only succeeds in creating distinctions without a functional difference. Bova's amended class consists of:

> …all individuals in California employed by WaMu as non-supervisory underwriters and non-supervisory senior underwriters who by reason of their position and in accordance with the Defendant's job duties for these positions were required to follow strict, uniform, written criteria with limited and expressed exception authority in determining whether each proposed loan met the criteria established by the Defendant for loan approval of a residential loan during the period commencing on the date four years prior to the filing of this complaint and ending on the class period cutoff date.

*See* Plaintiff's First Amended Complaint ("FAC") at ¶ 14. Plaintiff attempts to distinguish his amended class from the *Creese* class in three ways: (1) by narrowing "all… underwriters" in the *Creese* definition to "all…non-supervisory underwriters and non-supervisory senior underwriters"; (2) by replacing "classified as exempt" in the *Creese* definition with a detailed description of the duties of the non-exempt employees; and (3) by limiting the class from those who work at "mortgage lending business locations" to those employees who review residential loans. *See* FAC at ¶ 14. None of those "differences" is material to the reasons why the *Creese* class was denied.

Plaintiff cites *Bufil v. Dollar Financial Group*, No. A118143, 2008 Cal. App. LEXIS 717 (Cal. App. 1st Dist. April 17, 2008) for the proposition that collateral estoppel does not apply to his amended class claims. But *Bufil* supports granting WaMu's Motion on this record. In *Bufil*, the

Heller Ehrman LLP

2

California Court of Appeal addressed the formation of a viable class after a similar class has been denied class certification. In that case, after class certification of Dollar employees alleging violations of their meal and rest breaks was denied, a second Plaintiff employee, Bufil, succeeded in certifying a narrowed class that specifically addressed the bases for the earlier denial. Bufil narrowed the class by dividing it into two subclasses of employees. *Id*. at 11-12. The *Bufil* court held that after narrowing the classes, the first class and the *Bufil* class were materially different and that the *Bufil* class certification claim was not collaterally estopped. *Id*. at 15.

The changes Plaintiff made here do not -- and can not -- address the infirmities that doomed the *Cresee* class. Because the classes are functionally equivalent, the doctrine of collateral estoppel applies to bar Plaintiff from attempting to certify his group as a class.

### 1. The Class Alleged in *Bova* Describes the Same Group of Underwriters Described in the *Creese* Class

The distinction that the Plaintiff draws between supervisory and non-supervisory underwriters has nothing to do with the reasons why the *Creese* class was denied. Indeed, the administrative exemption does not include supervision duties as an element,[3] so there was no reason for the plaintiff to distinguish between underwriters who are supervisory and those who are not. In *Creese*, neither the briefing nor any of the judicial opinions mentions a supervisory role as a factor in granting or denying class certification. Thus, the distinction that the Plaintiff draws is unnecessary and does not narrow the *Creese* definition for purposes of the *Bufil* analysis.

Additionally, the "class" of underwriters in *Bova* is, by definition, included in the proposed class of underwriter in *Creese*. In *Alvarez v. May Dept. Stores Co.,* 143 Cal. App. 4th 1223 (2006), the court recognized that collateral estoppel applied to the claim in part because the appellants conceded that the class in a prior action by definition included appellants. *Id.* at 1237.[4] Similarly,

---

[3] *See Creese*, 2008 WL 650766 at *4; *see also* Cal. Code of Regulations, title 8, § 11040(1)(A)(2).

[4] Plaintiff argues that privity may be lacking because Plaintiff's lawyers were not involved in the *Creese* action. *Alvarez* concludes that "similarity of counsel is one factor that may be considered on the issue of whether a non-party's interest was truly represented in the first lawsuit." *Alvarez*, 143 Cal. App. 4th at 1237. *Alvarez* makes it clear that while continuity in council is a factor, it is not dispositive of a lack of privity.

here, the definition that Plaintiff uses to stipulate his class by definition includes the same employees who were included in the *Creese* class. The doctrine of collateral estoppel depends heavily on the similarity of the two claims being asserted. Here, Plaintiff asserts the same claim and includes the same group of people that *Creese* included. Because the Plaintiff failed to properly narrow his class, his class action claim is subject to collateral estoppel.

In this case, the limitation of the class to solely non-supervisory underwriters and non-supervisory senior underwriters does not solve the basic problem in *Creese*, namely the issue of commonality in how underwriters do their job. As *Creese* explained, discretion and judgment (and other factors) are inherent in the task of underwriting loans. These are not changed by narrowing the class from all underwriters to non-supervisory underwriters. Because the Plaintiff's attempt at narrowing the class does not eliminate the commonality problem, the *Bova* class cannot be certified and Plaintiff is estopped from bringing his claim as a class action.

### 2. The Amendment of the "Classified as Exempt" Language from the *Creese* Class Definition is Not a Substantive Change

Plaintiff attempts to modify the class by describing the duties of the employees rather than by referring to their exemption classification. This does not genuinely distinguish the two classes. Plaintiffs in both cases argue that, although they are labeled "exempt," their actual duties did not support the exemption, and thus they should be classified as non-exempt and receive overtime pay and other benefits as would a non-exempt employee. Both class definitions express this idea, -- *Creese* by *labeling* them as improperly exempt, and Bova by *describing* them as improperly exempt -- but Plaintiff Bova attempts to disguise this similarity by highlighting the requisite duties rather than the classification. Regardless of the terminology, this definition is the functional equivalent of the same section of the *Creese* definition and should be dismissed under the holding in *Alvarez*.[5]

---

[5] Ironically, Plaintiff attempts to distinguish himself by claiming that the *Creese* class was a "failsafe" class. First, the class definition that was litigated in the class certification motion did not contain the clause Plaintiff relies on. *See* Creese Motion for Class Certification at pages 3-4, attached to WaMu's Request for Judicial Notice as Exhibit B. The irony, however, is that Plaintiff's definition here *is* a "failsafe" class because it incorporates factual liability determinations relating to the alleged lack of discretion. Thus, while the class definition here may have *additional* infirmities when compared to the *Creese* definition, that is no basis to avoid the application of collateral estoppel.

### 3. Limiting the Plaintiff Class to Underwriters Approving *Residential Loans* Does Not Narrow the Class at All

Plaintiff's "change" to the proposed class definition by narrowing it to only include underwriters who approve *residential loans* is not a distinction because residential loans were the only ones involved in *Creese*. As noted in Respondent's Opposition Brief from *Creese*, attached as Exhibit I to WaMu's Request for Judicial Notice, WaMu's residential mortgages include:

> (1) Retail-loans originating through retail branches such as Home Loan Centers ("HLC") and Financial Centers; (2) Wholesale - loans originating through independent mortgage brokers; (3) Consumer direct - loans coming through the Internet, 1-800 telephone numbers, and customer referrals; (4) Custom construction – plans for new construction or remodels; (5) Emerging Markets – loans targeted at low-to-moderate income ("LMI") customers; and (6) Government – primarily FHA/VA loans.

By limiting his class definition to residential loans, Plaintiff has not narrowed his class, as residential loans include all of the different types of loans that made the *Creese* class uncertifiable.

### B. WaMu's Motion to Dismiss Due to Collateral Estoppel is Not Premature

WaMu's Motion has not been brought prematurely. WaMu is attempting to receive a judgment based on collateral estoppel and not trying to obtain a class certification ruling on the pleadings. Plaintiff cites to *In re Wal-Mart Stores Inc.*, 505 F. Supp. 2d. 609 (N.D. Cal. 2007) and four other cases[6] for the proposition that dismissal of class allegations at the pleading stage is rare. However, Plaintiff fails to recognize that neither *Wal-Mart*, nor any of the other cases cited, involved a class that had already been denied certification in a previous matter. As seen in *Alvarez*, a court can and will dismiss a case prior to discovery and at the pleading stage based on class allegations that a plaintiff is collaterally estopped from bringing. In *Alvarez*, based on the doctrine of collateral estoppel, the trial court sustained without leave to amend the defendant's demurrer to the complaint's class action allegations and the court of appeal affirmed. *See* 143 Cal. App. 4th at 1228. The court noted that "it may be proper at the pleading stage to strike class allegations if the

---

[6] *Chong v. State Farm Mut. Auto. Ins. Co.*, 428 F. Supp. 2d 1136 (S.D. Cal. 2006); *Myers v. Medquist, Inc.*, No. 05-4608 (JBS), 2006 U.S. Dist. LEXIS 91904 (D. N.J. Dec. 20, 2006); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. 2007); and *Abdallah v. Coca-Cola Co.*, No. Civ.A. 1:98CV3679-RW, 1999 WL 527835 (N.D. GA. July 16, 1999).

face of the complaint and other matters subject to judicial notice reveal the invalidity of the class allegations." *Id*. at 1231 (citing *Cannon U.S.A., Inc. v. Superior Court*, 68 Cal. App. 4th 1 (1998)).

WaMu is not asking the Court to perform a class certification analysis. The Court does not need to determine commonality, superiority or any other class issue because those issues have already been decided in *Creese*. WaMu is only seeking a judicial determination that the doctrine of collateral estoppel applies where Plaintiff's proposed class has already been considered and denied certification by a previous court. The purpose of the collateral estoppel doctrine is to prevent a plaintiff from relitigating previously decided issues to help promote judicial efficiency. WaMu and this court should not have to expend the time, energy and resources that it would cost to go through discovery or class certification procedures, because another court has already decided that a nearly identical class to the one presented by Plaintiff cannot be certified.

### C. Plaintiff Cannot Maintain His PAGA Claims Because Plaintiff is Collaterally Estopped From Certifying a Class of WaMu Underwriters

Plaintiff is collaterally estopped from bringing his class action claims and, therefore, cannot bring his PAGA claims. Plaintiff cites to *Ruiz v. Pricewaterhouse Coopers, LLP*, Case No. BC 287920 and *Campbell v. Pricewaterhouse Coopers, LLP*, No. Civ. S-06-2376 LKK/GGH, 2007 U.S. Dist. LEXIS 24344 (E.D. Cal. March 19, 2007) in support of his argument that he should not be estopped from maintaining his PAGA claim. In *Ruiz*, the court found that the plaintiff could not maintain a PAGA action because he was not a competent representative and the suit was inappropriate for representative action. *Id*. at *3. In the case that followed, *Campbell*, the plaintiff brought class allegations involving a class similar to the group discussed in *Ruiz*. When the defendant sought to dismiss the class allegations based on collateral estoppel, the court denied the motion finding that issues of class certification had not been litigated and decided in *Ruiz*, which only decided the issue of the PAGA action. *Id*. at *7-*8.

Unlike in those cases, *Creese* litigated and decided the issue of class certification. Because the PAGA claim must proceed as a class action, and Plaintiff is estopped from bringing his class claims, his PAGA claims must also be dismissed.

The language of PAGA and due process considerations demonstrate that claims under PAGA must proceed as class actions.[7]  First, nothing in the language of PAGA purports to do away with class procedures and the whole intent of the act is to allow private citizens to step in the shoes of the state and seek relief for an aggrieved class of citizens.  Also, Cal. Labor Code § 2699(a) reads:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments . . . may . . . be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

This means that PAGA claims can proceed notwithstanding any provision of law providing for the penalty to be enforced only by the Labor Commissioner.  It does not mean that PAGA claims can be brought notwithstanding any other provisions of law, period.  In the latter interpretation, PAGA claims could potentially be exempt from all procedural statutes and safeguards, which is inconsistent with the purpose of the statute.

Additionally, because a PAGA claim is fundamentally a private attorney general action, it requires the procedural safeguards of class actions.  Unlike an action by a public prosecutor, a PAGA case is brought by someone who is a member of the class who has a direct interest in the recovery.  The private plaintiff is serving as a protector of the public and class certification procedures are needed to ensure that the plaintiff can properly represent the interests of the absent class members.  Class certification procedures are further needed in a PAGA action where restitution of allegedly unpaid wages and rest periods is the primary goal of Plaintiffs' action with PAGA penalties as supplemental remedies.

---

[7] While there are no published cases on the point, both *Sinolinding v. United Staffing Solutions, Inc.*, Nos. B194344, B194899, 2008 WL 134904 (Cal. App. 2 Dist. Jan. 15, 2008) and *Arias v. Superior Court*, 153 Cal. App. 4th 777 (2007) (review granted Oct. 10, 2007) have considered the issue and found that PAGA may allow a person to prosecute a representative claim without requiring that it be brought as a class action.  But the California Supreme Court recently granted review in *Arias*, which renders the depublished holding of no authority.

### D. Under The *Erie* Doctrine, a Class Action is Required in Federal Court Even if a Non-Class Representative Action is Available Under Cal. Labor Code § 2968

Under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, even if a non-class representative action is allowed in California state court under Section 2698, Rule 23 would govern the plan by procedural question of treatment of class claims.[8] Therefore, class certification would be required, and collateral estoppel would apply.

Rule 23 is plainly broad enough "to control the issue before the Court," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-750 (1985), because it specifies that a named plaintiff may represent an absent class of similarly situated persons "only if" the requirements for class certification set forth in the Rule are met. The question of whether Section 2698 is substantive or procedural is answered using the modern "outcome determination" test described in *Gasperini*, 518 U.S. at 427. In particular, the Court must ask whether refusal to allow non-class representative PAGA actions in federal court would "have so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would [unfairly discriminate against citizens of the forum state, or] be likely to cause a plaintiff to choose the federal court …." *Snead*, 237 F.3d at 1090-1091 (9th Cir. 2001) (quoting *Gasperini*, 518 U.S. at 428) (bracketed language original). The outcome-determination test provides further confirmation that Section 2698 is procedural and should not be applied in federal court under *Erie*.

Here, the fact that Plaintiff's substantive claims cannot be packaged into a class action will not jeopardize any plaintiff's ability to protect his or her own rights and interests. There is no danger that Court's refusal to apply Section 2698 will unfairly discriminate against plaintiff or other citizens. Individuals do not have a right to representation in private civil litigation in which they are not parties and similarly situated employees will likely receive notice of these related proceedings pursuant to the collective action procedure of the FLSA and will have the option of joining as party plaintiffs. Employees who choose not to opt into this action have the option of

---

[8] The basic principle in *Erie* is straightforward: when adjudicating state law claims, federal courts must "apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).

bringing individual claims in federal or state court, and will be free to pursue non-class claims if they choose the latter forum. In all events, the Court should not permit plaintiff to graft California procedural rules onto a non-class action that they chose to bring in federal court.

### III.  CONCLUSION

For the foregoing reasons, in addition to those previously stated, defendant WaMu respectfully requests that this court dismiss or in the alternative stay the action before it.

Dated:  June 2, 2008                HELLER EHRMAN LLP


/s/ Chad R. Fuller
Jonathan Hayden
Chad R. Fuller
Brittany Little
Attorneys for Defendant
WASHINGTON MUTUAL BANK