**BLUMENTHAL & NORDREHAUG**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
  Walter Haines, Esq.
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT BOVA, on behalf of himself, and on behalf of all persons similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>WASHINGTON MUTUAL BANK and Does 1 to 10,<br><br><br>            Defendants. | CASE No.  **07 cv 2410** WQH (JMA)<br><br>**PLAINTIFF'S NOTICE OF NEW AUTHORITY BY THE UNITED STATES SUPREME COURT IN OPPOSITION TO DEFENDANT WASHINGTON MUTUAL'S MOTION TO DISMISS**<br><br>**Date:          June 9, 2008**<br>**Time:          11:00 a.m.**<br>**Judge:         William Q. Hayes** |

PLAINTIFF'S NOTICE OF NEW AUTHORITY BY THE UNITED STATES SUPREME COURT IN OPPOSITION
TO DEFENDANT WASHINGTON MUTUAL'S MOTION TO DISMISS

07 CV 241 WQH JMA

1       Plaintiff Vincent Bova hereby provides notice to this Court of new authority from the

2   United States Supreme Court in <u>Taylor v. Sturgell</u>, Case No. 07-371, 553 U.S. _____, 2008

3   U.S. Lexis 4885 (June 12, 2008), regarding the doctrine of "virtual representation" for the

4   Court's consideration in connection with the Motion to Dismiss filed by Defendant

5   Washington Mutual Bank which was set for hearing on June 9, 2008 and is currently under

6   submission before this Court.  (See <u>Taylor</u> Opinion at pages 8-22).  For the Court's

7   reference, a true and correct copy of the new decision in by the United States Supreme Court

8   in <u>Taylor v. Sturgell</u>, Case No. 07-371, 553 U.S. _____, 2008 U.S. Lexis 4885 (June 12,

9   2008), is attached hereto as <u>Exhibit #1</u>.

10

11

12  Dated:      June 16, 2008           BLUMENTHAL & NORDREHAUG

13                             By:_____*s/Norman B. Blumenthal*_____

14                               Norman B. Blumenthal
                             Attorneys for Plaintiff Vincent Bova

15  K:\D\NBB\Bova v. Wamu\Motion to Dismiss\p-notice of new authority.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT #1

---

PLAINTIFF'S NOTICE OF NEW AUTHORITY BY THE UNITED STATES SUPREME COURT IN OPPOSITION
TO DEFENDANT WASHINGTON MUTUAL'S MOTION TO DISMISS

**07 CV 241 WQH JMA**

(Slip Opinion)
OCTOBER TERM, 2007
1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TAYLOR *v.* STURGELL, ACTING ADMINISTRATOR, FEDERAL AVIATION ADMINISTRATION, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 07–371.   Argued April 16, 2008—Decided June 12, 2008

Greg Herrick, an antique aircraft enthusiast seeking to restore a vintage airplane manufactured by the Fairchild Engine and Airplane Corporation (FEAC), filed a Freedom of Information Act (FOIA) request asking the Federal Aviation Administration (FAA) for copies of technical documents related to the airplane.  The FAA denied his request based on FOIA's exemption for trade secrets, see 5 U. S. C. §552(b)(4).  Herrick took an administrative appeal, but when respondent Fairchild, FEAC's successor, objected to the documents' release, the FAA adhered to its original decision.  Herrick then filed an unsuccessful FOIA lawsuit to secure the documents.  Less than a month after that suit was resolved, petitioner Taylor, Herrick's friend and an antique aircraft enthusiast himself, made a FOIA request for the same documents Herrick had unsuccessfully sued to obtain.  When the FAA failed to respond, Taylor filed suit in the U. S. District Court for the District of Columbia.  Holding the suit barred by claim preclusion, the District Court granted summary judgment to the FAA and to Fairchild, as intervenor in Taylor's action.  The court acknowledged that Taylor was not a party to Herrick's suit, but held that a nonparty may be bound by a judgment if she was "virtually represented" by a party.  The D. C. Circuit affirmed, announcing a five-factor test for "virtual representation."  The first two factors of the D. C. Circuit's test—"identity of interests" and "adequate representation"—are necessary but not sufficient for virtual representation.  In addition, at least one of three other factors must be established: "a close relationship between the present party and his putative representative," "substantial participation by the present party in the first case," or "tactical maneuvering on the part of the present party to

2                         TAYLOR *v.* STURGELL

Syllabus

avoid preclusion by the prior judgment." The D. C. Circuit acknowledged the absence of any indication that Taylor participated in, or even had notice of, Herrick's suit. It nonetheless found the "identity of interests," "adequate representation," and "close relationship" factors satisfied because the two men sought release of the same documents, were "close associates," had discussed working together to restore Herrick's plane, and had used the same lawyer to pursue their suits. Because these conditions sufficed to establish virtual representation, the court left open the question whether Taylor had engaged in tactical maneuvering to avoid preclusion.

*Held:*

    1. The theory of preclusion by "virtual representation" is disapproved. The preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion. Pp. 9–21.

    (a) The preclusive effect of a federal-court judgment is determined by federal common law, subject to due process limitations. Pp. 9–13.

    (1) Extending the preclusive effect of a judgment to a nonparty runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards* v. *Jefferson County*, 517 U. S. 793, 798 (internal quotation marks omitted). Indicating the strength of that tradition, this Court has often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated a party or to which he has not been made a party by service of process." *Hansberry* v. *Lee*, 311 U. S. 32, 40. Pp. 9–10.

    (2) The rule against nonparty preclusion is subject to exceptions, grouped for present purposes into six categories. First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the [agreement's] terms." Restatement (Second) of Judgments §40. Second, nonparty preclusion may be based on a pre-existing substantive legal relationship between the person to be bound and a party to the judgment, *e.g.,* assignee and assignor. Third, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "'adequately represented by someone with the same interests who [wa]s a party'" to the suit. *Richards*, 517 U. S., at 798. Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered. *Montana* v. *United States*, 440 U. S. 147, 154. Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in litigation later brings suit as the designated representative or agent of a person who was a

Syllabus

party to the prior adjudication. Sixth, a special statutory scheme otherwise consistent with due process—*e.g.,* bankruptcy proceedings—may "expressly foreclos[e] successive litigation by nonlitigants." *Martin* v. *Wilks,* 490 U. S. 755, 762, n. 2. Pp. 10–13.

(b) Reaching beyond these six categories, the D. C. Circuit recognized a broad "virtual representation" exception to the rule against nonparty preclusion. None of the arguments advanced by that court, the FAA, or Fairchild justify such an expansive doctrine. Pp. 13–22.

(1) The D. C. Circuit purported to ground its doctrine in this Court's statements that, in some circumstances, a person may be bound by a judgment if she was adequately represented by a party to the proceeding yielding that judgment. But the D. C. Circuit's definition of "adequate representation" strayed from the meaning this Court has attributed to that term. In *Richards,* the Alabama Supreme Court had held a tax challenge barred by a judgment upholding the same tax in a suit by different taxpayers. 517 U. S., at 795–797. This Court reversed, holding that nonparty preclusion was inconsistent with due process where there was no showing (1) that the court in the first suit "took care to protect the interests" of absent parties, or (2) that the parties to the first litigation "understood their suit to be on behalf of absent [parties]," *id.,* at 802. In holding that representation can be "adequate" for purposes of nonparty preclusion even where these two factors are absent, the D. C. Circuit misapprehended *Richards.* Pp. 14–15.

(2) Fairchild and the FAA ask this Court to abandon altogether the attempt to delineate discrete grounds and clear rules for nonparty preclusion. Instead, they contend, only an equitable and heavily fact-driven inquiry can account for all of the situations in which nonparty preclusion is appropriate. This argument is rejected. First, respondents' balancing test is at odds with the constrained approach advanced by this Court's decisions, which have endeavored to delineate discrete, limited exceptions to the fundamental rule that a litigant is not bound by a judgment to which he was not a party, see, *e.g., Richards,* 517 U. S., at 798–799. Second, a party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, see *Hansberry,* 311 U. S., at 43, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests, see *Richards,* 517 U. S., at 801–802. Adequate representation may also require (3) notice of the original suit to the persons alleged to have been represented. See *id.,* at 801. In the class-action context, these limitations are implemented by Federal Rule of Civil Procedure 23's procedural safeguards. But an expansive virtual representation doctrine

Syllabus

would recognize a common-law kind of class action shorn of these protections. Third, a diffuse balancing approach to nonparty preclusion would likely complicate the task of district courts faced in the first instance with preclusion questions. Pp. 15–19.

(3) Finally, the FAA contends that nonparty preclusion should apply more broadly in "public-law" litigation than in "private-law" controversies. First, the FAA points to *Richards'* acknowledgment that when a taxpayer challenges "an alleged misuse of public funds" or "other public action," the suit "has only an indirect impact on [the plaintiff's] interests," 517 U. S., at 803, and "the States have wide latitude to establish procedures [limiting] the number of judicial proceedings that may be entertained," *ibid*. In contrast to the public-law litigation contemplated in *Richards*, however, a successful FOIA action results in a grant of relief to the individual plaintiff, not a decree benefiting the public at large. Furthermore, *Richards* said only that, for the type of public-law claims there envisioned, States were free to adopt procedures limiting repetitive litigation. While it appears equally evident that *Congress* can adopt such procedures, it hardly follows that *this Court* should proscribe or confine successive FOIA suits by different requesters. Second, the FAA argues that, because the number of plaintiffs in public-law cases is potentially limitless, it is theoretically possible for several persons to coordinate a series of vexatious repetitive lawsuits. But this risk does not justify departing from the usual nonparty preclusion rules. *Stare decisis* will allow courts to dispose of repetitive suits in the same circuit, and even when *stare decisis* is not dispositive, the human inclination not to waste money should discourage suits based on claims or issues already decided. Pp. 19–22.

2. The remaining question is whether the result reached by the courts below can be justified based on one of the six the established grounds for nonparty preclusion. With one exception, those grounds plainly have no application here. Respondents argue that Taylor's suit is a collusive attempt to relitigate Herrick's claim. That argument justifies a remand to allow the courts below the opportunity to determine whether the fifth ground for nonparty preclusion— preclusion because a nonparty to earlier litigation has brought suit as an agent of a party bound by the prior adjudication—applies to Taylor's suit. But courts should be cautious about finding preclusion on the basis of agency. A mere whiff of "tactical maneuvering" will not suffice; instead, principles of agency law indicate that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication. Finally, the Court rejects Fairchild's suggestion that Taylor must bear the burden of proving he is not acting as Herrick's agent. Claim

Cite as: 553 U. S. ____ (2008)          5

Syllabus

preclusion is an affirmative defense for the defendant to plead and prove. Pp. 22–25.

490 F. 3d 965, vacated and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court.

Cite as: 553 U. S. ____ (2008)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–371

BRENT TAYLOR, PETITIONER *v.* ROBERT A.
STURGELL, ACTING ADMINISTRATOR,
FEDERAL AVIATION ADMINIS-
TRATION, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[June 12, 2008]

JUSTICE GINSBURG delivered the opinion of the Court.

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry* v. *Lee*, 311 U. S. 32, 40 (1940). Several exceptions, recognized in this Court's decisions, temper this basic rule. In a class action, for example, a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation. See *id.*, at 41. In this case, we consider for the first time whether there is a "virtual representation" exception to the general rule against precluding nonparties. Adopted by a number of courts, including the courts below in the case now before us, the exception so styled is broader than any we have so far approved.

The virtual representation question we examine in this opinion arises in the following context. Petitioner Brent

Opinion of the Court

Taylor filed a lawsuit under the Freedom of Information Act seeking certain documents from the Federal Aviation Administration. Greg Herrick, Taylor's friend, had previously brought an unsuccessful suit seeking the same records. The two men have no legal relationship, and there is no evidence that Taylor controlled, financed, participated in, or even had notice of Herrick's earlier suit. Nevertheless, the D. C. Circuit held Taylor's suit precluded by the judgment against Herrick because, in that court's assessment, Herrick qualified as Taylor's "virtual representative."

We disapprove the doctrine of preclusion by "virtual representation," and hold, based on the record as it now stands, that the judgment against Herrick does not bar Taylor from maintaining this suit.

I

The Freedom of Information Act (FOIA) accords "any person" a right to request any records held by a federal agency. 5 U. S. C. §552(a)(3)(A) (2006 ed.). No reason need be given for a FOIA request, and unless the requested materials fall within one of the Act's enumerated exemptions, see §552(a)(3)(E), (b), the agency must "make the records promptly available" to the requester, §552(a)(3)(A). If an agency refuses to furnish the requested records, the requester may file suit in federal court and obtain an injunction "order[ing] the production of any agency records improperly withheld." §552(a)(4)(B).

The courts below held the instant FOIA suit barred by the judgment in earlier litigation seeking the same records. Because the lower courts' decisions turned on the connection between the two lawsuits, we begin with a full account of each action.

A

The first suit was filed by Greg Herrick, an antique

Opinion of the Court

aircraft enthusiast and the owner of an F–45 airplane, a
vintage model manufactured by the Fairchild Engine and
Airplane Corporation (FEAC) in the 1930's.   In 1997,
seeking information that would help him restore his plane
to its original condition, Herrick filed a FOIA request
asking the Federal Aviation Administration (FAA) for
copies of any technical documents about the F–45 con-
tained in the agency's records.

    To gain a certificate authorizing the manufacture and
sale of the F–45, FEAC had submitted to the FAA's prede-
cessor, the Civil Aeronautics Authority, detailed specifica-
tions and other technical data about the plane.   Hundreds
of pages of documents produced by FEAC in the certifica-
tion process remain in the FAA's records.   The FAA denied
Herrick's request, however, upon finding that the docu-
ments he sought are subject to FOIA's exemption for
"trade secrets and commercial or financial information
obtained from a person and privileged or confidential," 5
U. S. C. §552(b)(4) (2006 ed.).   In an administrative ap-
peal, Herrick urged that FEAC and its successors had
waived any trade-secret protection.   The FAA thereupon
contacted FEAC's corporate successor, respondent Fair-
child Corporation (Fairchild).   Because Fairchild objected
to release of the documents, the agency adhered to its
original decision.

    Herrick then filed suit in the U. S. District Court for the
District of Wyoming.   Challenging the FAA's invocation of
the trade-secret exemption, Herrick placed heavy weight
on a 1955 letter from FEAC to the Civil Aeronautics Au-
thority.   The letter authorized the agency to lend any
documents in its files to the public "for use in making
repairs or replacement parts for aircraft produced by
Fairchild."   *Herrick* v. *Garvey*, 298 F. 3d 1184, 1193 (CA10
2002) (internal quotation marks omitted).   This broad
authorization, Herrick maintained, showed that the F–45
certification records held by the FAA could not be re-

garded as "secre[t]" or "confidential" within the meaning of §552(b)(4).

Rejecting Herrick's argument, the District Court granted summary judgment to the FAA. *Herrick* v. *Garvey*, 200 F. Supp. 2d 1321, 1328–1329 (Wyo. 2000). The 1955 letter, the court reasoned, did not deprive the F–45 certification documents of trade-secret status, for those documents were never in fact released pursuant to the letter's blanket authorization. See *id.*, at 1329. The court also stated that even if the 1955 letter had waived trade-secret protection, Fairchild had successfully "reversed" the waiver by objecting to the FAA's release of the records to Herrick. *Ibid.*

On appeal, the Tenth Circuit agreed with Herrick that the 1955 letter had stripped the requested documents of trade-secret protection. See *Herrick*, 298 F. 3d, at 1194. But the Court of Appeals upheld the District Court's alternative determination—*i.e.*, that Fairchild had restored trade-secret status by objecting to Herrick's FOIA request. *Id.*, at 1195. On that ground, the appeals court affirmed the entry of summary judgment for the FAA.

In so ruling, the Tenth Circuit noted that Herrick had failed to challenge two suppositions underlying the District Court's decision. First, the District Court assumed trade-secret status could be "restored" to documents that had lost protection. *Id.*, at 1194, n. 10. Second, the District Court also assumed that Fairchild had regained trade-secret status for the documents even though the company claimed that status only "*after* Herrick had initiated his request" for the F–45 records. *Ibid.* The Court of Appeals expressed no opinion on the validity of these suppositions. See *id.*, at 1194–1195, n. 10.

B

The Tenth Circuit's decision issued on July 24, 2002. Less than a month later, on August 22, petitioner Brent

Opinion of the Court

Taylor—a friend of Herrick's and an antique aircraft enthusiast in his own right—submitted a FOIA request seeking the same documents Herrick had unsuccessfully sued to obtain.  When the FAA failed to respond, Taylor filed a complaint in the U. S. District Court for the District of Columbia.  Like Herrick, Taylor argued that FEAC's 1955 letter had stripped the records of their trade-secret status.  But Taylor also sought to litigate the two issues concerning recapture of protected status that Herrick had failed to raise in his appeal to the Tenth Circuit.

After Fairchild intervened as a defendant,[1] the District Court in D. C. concluded that Taylor's suit was barred by claim preclusion; accordingly, it granted summary judgment to Fairchild and the FAA.  The court acknowledged that Taylor was not a party to Herrick's suit.  Relying on the Eighth Circuit's decision in *Tyus* v. *Schoemehl*, 93 F. 3d 449 (1996), however, it held that a nonparty may be bound by a judgment if she was "virtually represented" by a party.  App. to Pet. for Cert. 30a–31a.

The Eighth Circuit's seven-factor test for virtual representation, adopted by the District Court in Taylor's case, requires an "identity of interests" between the person to be bound and a party to the judgment.  See *id.*, at 31a.  See also *Tyus*, 93 F. 3d, at 455.  Six additional factors counsel in favor of virtual representation under the Eighth Circuit's test, but are not prerequisites: (1) a "close relationship" between the present party and a party to the judgment alleged to be preclusive; (2) "participation in the prior litigation" by the present party; (3) the present party's "apparent acquiescence" to the preclusive effect of the judgment; (4) "deliberat[e] maneuver[ing]" to avoid the

---

[1] Although Fairchild provided documents to the Wyoming District Court and filed an *amicus* brief in the Tenth Circuit, it was not a party to Herrick's suit.  See *Herrick* v. *Garvey*, 298 F. 3d 1184, 1188 (CA10 2002); *Herrick* v. *Garvey*, 200 F. Supp. 2d 1321, 1327 (Wyo. 2000).

Opinion of the Court

effect of the judgment; (5) adequate representation of the
present party by a party to the prior adjudication; and (6)
a suit raising a "public law" rather than a "private law"
issue.  App. to Pet. for Cert. 31a (citing *Tyus*, 93 F. 3d, at
454–456).   These factors, the D. C. District Court ob-
served, "constitute a fluid test with imprecise boundaries"
and call for "a broad, case-by-case inquiry."  App. to Pet.
for Cert. 32a.

   The record before the District Court in Taylor's suit
revealed the following facts about the relationship be-
tween Taylor and Herrick: Taylor is the president of the
Antique Aircraft Association, an organization to which
Herrick belongs; the two men are "close associate[s]," App.
54; Herrick asked Taylor to help restore Herrick's F–45,
though they had no contract or agreement for Taylor's
participation in the restoration; Taylor was represented by
the lawyer who represented Herrick in the earlier litiga-
tion; and Herrick apparently gave Taylor documents that
Herrick had obtained from the FAA during discovery in
his suit.

   Fairchild and the FAA conceded that Taylor had not
participated in Herrick's suit.  App. to Pet. for Cert. 32a.
The D. C. District Court determined, however, that Her-
rick ranked as Taylor's virtual representative because the
facts fit each of the other six indicators on the Eighth
Circuit's list.  See *id.*, at 32a–35a.  Accordingly, the Dis-
trict Court held Taylor's suit, seeking the same documents
Herrick had requested, barred by the judgment against
Herrick.  See *id.*, at 35a.

   The D. C. Circuit affirmed.  It observed, first, that other
Circuits "vary widely" in their approaches to virtual repre-
sentation.  *Taylor* v. *Blakey*, 490 F. 3d 965, 971 (2007).  In
this regard, the D. C. Circuit contrasted the multifactor
balancing test applied by the Eighth Circuit and the D. C.
District Court with the Fourth Circuit's narrower ap-
proach, which "treats a party as a virtual representative

only if the party is 'accountable to the nonparties who file a subsequent suit' and has 'the tacit approval of the court' to act on the nonpart[ies'] behalf." *Ibid.* (quoting *Klugh* v. *United States*, 818 F. 2d 294, 300 (CA4 1987)).

Rejecting both of these approaches, the D. C. Circuit announced its own five-factor test. The first two factors—"identity of interests" and "adequate representation"—are necessary but not sufficient for virtual representation. 490 F. 3d, at 971–972. In addition, at least one of three other factors must be established: "a close relationship between the present party and his putative representative," "substantial participation by the present party in the first case," or "tactical maneuvering on the part of the present party to avoid preclusion by the prior judgment." *Id.*, at 972.

Applying this test to the record in Taylor's case, the D. C. Circuit found both of the necessary conditions for virtual representation well met. As to identity of interests, the court emphasized that Taylor and Herrick sought the same result—release of the F–45 documents. Moreover, the D. C. Circuit observed, Herrick owned an F–45 airplane, and therefore had "if anything, a stronger incentive to litigate" than Taylor, who had only a "general interest in public disclosure and the preservation of antique aircraft heritage." *Id.*, at 973 (internal quotation marks omitted).

Turning to adequacy of representation, the D. C. Circuit acknowledged that some other Circuits regard notice of a prior suit as essential to a determination that a nonparty was adequately represented in that suit. See *id.*, at 973–974 (citing *Perez* v. *Volvo Car Corp.*, 247 F. 3d 303, 312 (CA1 2001), and *Tice* v. *American Airlines, Inc.*, 162 F. 3d 966, 973 (CA7 1998)). Disagreeing with these courts, the D. C. Circuit deemed notice an "important" but not an indispensable element in the adequacy inquiry. The court then concluded that Herrick had adequately represented

Opinion of the Court

Taylor even though Taylor had received no notice of Herrick's suit. For this conclusion, the appeals court relied on Herrick's "strong incentive to litigate" and Taylor's later engagement of the same attorney, which indicated to the court Taylor's satisfaction with that attorney's performance in Herrick's case. See 490 F. 3d, at 974–975.

The D. C. Circuit also found its "close relationship" criterion met, for Herrick had "asked Taylor to assist him in restoring his F–45" and "provided information to Taylor that Herrick had obtained through discovery"; furthermore, Taylor "did not oppose Fairchild's characterization of Herrick as his 'close associate.'" *Id.*, at 975. Because the three above-described factors sufficed to establish virtual representation under the D. C. Circuit's five-factor test, the appeals court left open the question whether Taylor had engaged in "tactical maneuvering." See *id.*, at 976 (calling the facts bearing on tactical maneuvering "ambigu[ous]").[2]

We granted certiorari, 552 U. S. ___ (2008), to resolve the disagreement among the Circuits over the permissibility and scope of preclusion based on "virtual representation."[3]

───────────

[2] The D. C. Circuit did not discuss the District Court's distinction between public-law and private-law claims.

[3] The Ninth Circuit applies a five-factor test similar to the D. C. Circuit's. See *Kourtis* v. *Cameron*, 419 F. 3d 989, 996 (2005). The Fifth, Sixth, and Eleventh Circuits, like the Fourth Circuit, have constrained the reach of virtual representation by requiring, *inter alia*, the existence of a legal relationship between the nonparty to be bound and the putative representative. See *Pollard* v. *Cockrell*, 578 F. 2d 1002, 1008 (CA5 1978); *Becherer* v. *Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F. 3d 415, 424 (CA6 1999); *EEOC* v. *Pemco Aeroplex, Inc.*, 383 F. 3d 1280, 1289 (CA11 2004). The Seventh Circuit, in contrast, has rejected the doctrine of virtual representation altogether. See *Perry* v. *Globe Auto Recycling, Inc.*, 227 F. 3d 950, 953 (2000).

Opinion of the Court

II

The preclusive effect of a federal-court judgment is
determined by federal common law. See *Semtek Int'l Inc.*
v. *Lockheed Martin Corp.*, 531 U. S. 497, 507–508 (2001).
For judgments in federal-question cases—for example,
Herrick's FOIA suit—federal courts participate in develop-
ing "uniform federal rule[s]" of res judicata, which this
Court has ultimate authority to determine and declare.
*Id.*, at 508.[4]  The federal common law of preclusion is, of
course, subject to due process limitations. See *Richards* v.
*Jefferson County*, 517 U. S. 793, 797 (1996).

Taylor's case presents an issue of first impression in this
sense: Until now, we have never addressed the doctrine of
"virtual representation" adopted (in varying forms) by
several Circuits and relied upon by the courts below.  Our
inquiry, however, is guided by well-established precedent
regarding the propriety of nonparty preclusion.  We review
that precedent before taking up directly the issue of vir-
tual representation.

A

The preclusive effect of a judgment is defined by claim
preclusion and issue preclusion, which are collectively
referred to as "res judicata."[5]  Under the doctrine of claim
preclusion, a final judgment forecloses "successive litiga-
tion of the very same claim, whether or not relitigation of
the claim raises the same issues as the earlier suit." *New*

————————
[4] For judgments in diversity cases, federal law incorporates the rules
of preclusion applied by the State in which the rendering court sits.
See *Semtek Int'l Inc.* v. *Lockheed Martin Corp.*, 531 U. S. 497, 508
(2001).

[5] These terms have replaced a more confusing lexicon.  Claim preclu-
sion describes the rules formerly known as "merger" and "bar," while
issue preclusion encompasses the doctrines once known as "collateral
estoppel" and "direct estoppel."  See *Migra* v. *Warren City School Dist.
Bd. of Ed.*, 465 U. S. 75, 77, n. 1 (1984).

Opinion of the Court

*Hampshire* v. *Maine*, 532 U. S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.*, at 748–749. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana* v. *United States*, 440 U. S. 147, 153–154 (1979).

A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards*, 517 U. S., at 798 (internal quotation marks omitted). Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U. S., at 40. See also, *e.g., Richards*, 517 U. S., at 798; *Martin* v. *Wilks*, 490 U. S. 755, 761 (1989); *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 395 U. S. 100, 110 (1969).

B

Though hardly in doubt, the rule against nonparty preclusion is subject to exceptions. For present purposes, the recognized exceptions can be grouped into six categories.[6]

───────────

[6]The established grounds for nonparty preclusion could be organized differently. See, *e.g.,* 1 & 2 Restatement (Second) of Judgments §§39–62 (1980) (hereinafter Restatement); D. Shapiro, Civil Procedure:

Opinion of the Court

First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." 1 Restatement (Second) of Judgments §40, p. 390 (1980) (hereinafter Restatement). For example, "if separate actions involving the same transaction are brought by different plaintiffs against the same defendant, all the parties to all the actions may agree that the question of the defendant's liability will be definitely determined, one way or the other, in a 'test case.'" D. Shapiro, Civil Procedure: Preclusion in Civil Actions 77–78 (2001) (hereinafter Shapiro). See also *California* v. *Texas*, 459 U. S. 1096, 1097 (1983) (dismissing certain defendants from a suit based on a stipulation "that each of said defendants . . . will be bound by a final judgment of this Court" on a specified issue).[7]

Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment. Shapiro 78. See also *Richards*, 517 U. S., at 798. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. See 2 Restatement §§43–44, 52, 55. These exceptions originated "as much from the needs of property law as from the values of preclusion by judgment." 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4448, p. 329 (2d

_____

Preclusion in Civil Actions 75–92 (2001); 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4448, pp. 327–329 (2d ed. 2002) (hereinafter Wright & Miller). The list that follows is meant only to provide a framework for our consideration of virtual representation, not to establish a definitive taxonomy.

[7]The Restatement observes that a nonparty may be bound not only by express or implied agreement, but also through conduct inducing reliance by others. See 2 Restatement §62. See also 18A Wright & Miller §4453, pp. 425–429. We have never had occasion to consider this ground for nonparty preclusion, and we express no view on it here.

Opinion of the Court

ed. 2002) (hereinafter Wright & Miller).[8]

Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit. *Richards*, 517 U. S., at 798 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include properly conducted class actions, see *Martin*, 490 U. S., at 762, n. 2 (citing Fed. Rule Civ. Proc. 23), and suits brought by trustees, guardians, and other fiduciaries, see *Sea-Land Services, Inc.* v. *Gaudet*, 414 U. S. 573, 593 (1974). See also 1 Restatement §41.

Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered. *Montana*, 440 U. S., at 154. See also *Schnell* v. *Peter Eckrich & Sons, Inc.*, 365 U. S. 260, 262, n. 4 (1961); 1 Restatement §39. Because such a person has had "the opportunity to present proofs and argument," he has already "had his day in court" even though he was not a formal party to the litigation. *Id.*, Comment *a*, p. 382.

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. See *Chicago, R. I. & P. R. Co.* v. *Schendel*, 270 U. S. 611, 620, 623 (1926); 18A Wright & Miller §4454, pp. 433–434. And although our decisions have not ad-

--------

[8]The substantive legal relationships justifying preclusion are sometimes collectively referred to as "privity." See, *e.g., Richards* v. *Jefferson County*, 517 U. S. 793, 798 (1996); 2 Restatement §62, Comment *a*. The term "privity," however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground. See 18A Wright & Miller §4449, pp. 351–353, and n. 33 (collecting cases). To ward off confusion, we avoid using the term "privity" in this opinion.

Opinion of the Court

dressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment. See *id.*, §4449, p. 335.

Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process." *Martin*, 490 U. S., at 762, n. 2. Examples of such schemes include bankruptcy and probate proceedings, see *ibid.*, and *quo warranto* actions or other suits that, "under [the governing] law, [may] be brought only on behalf of the public at large," *Richards*, 517 U. S., at 804.

## III

Reaching beyond these six established categories, some lower courts have recognized a "virtual representation" exception to the rule against nonparty preclusion. Decisions of these courts, however, have been far from consistent. See 18A Wright & Miller §4457, p. 513 (virtual representation lacks a "clear or coherent theory"; decisions applying it have "an episodic quality"). Some Circuits use the label, but define "virtual representation" so that it is no broader than the recognized exception for adequate representation. See, *e.g., Becherer* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F. 3d 415, 423, 427 (CA6 1999). But other courts, including the Eighth, Ninth, and D. C. Circuits, apply multifactor tests for virtual representation that permit nonparty preclusion in cases that do not fit within any of the established exceptions. See *supra*, at 5–8, and n. 3.

The D. C. Circuit, the FAA, and Fairchild have presented three arguments in support of an expansive doctrine of virtual representation. We find none of them persuasive.

Opinion of the Court

A

The D. C. Circuit purported to ground its virtual repre-
sentation doctrine in this Court's decisions stating that, in
some circumstances, a person may be bound by a judg-
ment if she was adequately represented by a party to the
proceeding yielding that judgment. See 490 F. 3d, at 970–
971. But the D. C. Circuit's definition of "adequate repre-
sentation" strayed from the meaning our decisions have
attributed to that term.

In *Richards*, we reviewed a decision by the Alabama
Supreme Court holding that a challenge to a tax was
barred by a judgment upholding the same tax in a suit
filed by different taxpayers. 517 U. S., at 795–797. The
plaintiffs in the first suit "did not sue on behalf of a class,"
their complaint "did not purport to assert any claim
against or on behalf of any nonparties," and the judgment
"did not purport to bind" nonparties. *Id.*, at 801. There
was no indication, we emphasized, that the court in the
first suit "took care to protect the interests" of absent
parties, or that the parties to that litigation "understood
their suit to be on behalf of absent [parties]." *Id.*, at 802.
In these circumstances, we held, the application of claim
preclusion was inconsistent with "the due process of law
guaranteed by the Fourteenth Amendment." *Id.*, at 797.

The D. C. Circuit stated, without elaboration, that it did
not "read *Richards* to hold a nonparty . . . adequately
represented only if special procedures were followed [to
protect the nonparty] or the party to the prior suit under-
stood it was representing the nonparty." 490 F. 3d, at 971.
As the D. C. Circuit saw this case, Herrick adequately
represented Taylor for two principal reasons: Herrick had
a strong incentive to litigate; and Taylor later hired Her-
rick's lawyer, suggesting Taylor's "satisfaction with the
attorney's performance in the prior case." *Id.*, at 975.

The D. C. Circuit misapprehended *Richards*. As just
recounted, our holding that the Alabama Supreme Court's

Opinion of the Court

application of res judicata to nonparties violated due
process turned on the lack of either special procedures to
protect the nonparties' interests or an understanding by
the concerned parties that the first suit was brought in a
representative capacity. See *Richards*, 517 U. S., at 801–
802. *Richards* thus established that representation is
"adequate" for purposes of nonparty preclusion only if (at a
minimum) one of these two circumstances is present.

We restated *Richards'* core holding in *South Central
Bell Telephone Co.* v. *Alabama*, 526 U. S. 160 (1999). In
that case, as in *Richards*, the Alabama courts had held
that a judgment rejecting a challenge to a tax by one
group of taxpayers barred a subsequent suit by a different
taxpayer. See 526 U. S., at 164–165. In *South Central
Bell*, however, the nonparty had notice of the original suit
and engaged one of the lawyers earlier employed by the
original plaintiffs. See *id.*, at 167–168. Under the D. C.
Circuit's decision in Taylor's case, these factors apparently
would have sufficed to establish adequate representation.
See 490 F. 3d, at 973–975. Yet *South Central Bell* held
that the application of res judicata in that case violated
due process. Our inquiry came to an end when we deter-
mined that the original plaintiffs had not understood
themselves to be acting in a representative capacity and
that there had been no special procedures to safeguard the
interests of absentees. See 526 U. S., at 168.

Our decisions recognizing that a nonparty may be bound
by a judgment if she was adequately represented by a
party to the earlier suit thus provide no support for the
D. C. Circuit's broad theory of virtual representation.

B

Fairchild and the FAA do not argue that the D. C. Cir-
cuit's virtual representation doctrine fits within any of the
recognized grounds for nonparty preclusion. Rather, they
ask us to abandon the attempt to delineate discrete

16               TAYLOR *v.* STURGELL

Opinion of the Court

grounds and clear rules altogether.  Preclusion is in order, they contend, whenever "the relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment."  Brief for Respondent Fairchild 20.  See also Brief for Respondent FAA 22–24.  Courts should make the "close enough" determination, they urge, through a "heavily fact-driven" and "equitable" inquiry.  Brief for Respondent Fairchild 20.  See also Brief for Respondent FAA 22 ("there is no clear test" for nonparty preclusion; rather, an "equitable and fact-intensive" inquiry is demanded (internal quotation marks omitted)).  Only this sort of diffuse balancing, Fairchild and the FAA argue, can account for all of the situations in which nonparty preclusion is appropriate.

We reject this argument for three reasons.  First, our decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party.  See, *e.g., Richards*, 517 U. S., at 798–799; *Martin*, 490 U. S., at 761–762.  Accordingly, we have endeavored to delineate discrete exceptions that apply in "limited circumstances."  *Id.*, at 762, n. 2.  Respondents' amorphous balancing test is at odds with the constrained approach to nonparty preclusion our decisions advance.

Resisting this reading of our precedents, respondents call up three decisions they view as supportive of the approach they espouse.  Fairchild quotes our statement in *Coryell* v. *Phipps*, 317 U. S. 406, 411 (1943), that privity "turns on the facts of particular cases."  See Brief for Respondent Fairchild 20.  That observation, however, scarcely implies that privity is governed by a diffuse balancing test.[9]  Fairchild also cites *Blonder-Tongue Labora-*

————————

[9] Moreover, *Coryell* interpreted the term "privity" not in the context of res judicata, but as used in a statute governing shipowner liability.  See *Coryell* v. *Phipps*, 317 U. S. 406, 407–408, and n. 1 (1943).  And we

Opinion of the Court

*tories, Inc.* v. *University of Ill. Foundation*, 402 U. S. 313, 334 (1971), which stated that estoppel questions turn on "the trial courts' sense of justice and equity." See Brief for Respondent Fairchild 20. This passing statement, however, was not made with nonparty preclusion in mind; it appeared in a discussion recognizing district courts' discretion to *limit* the use of issue preclusion against persons who *were* parties to a judgment. See *Blonder-Tongue*, 402 U. S., at 334.

   The FAA relies on *United States* v. *Des Moines Valley R. Co.*, 84 F. 40 (CA8 1897), an opinion we quoted with approval in *Schendel*, 270 U. S., at 619–620. *Des Moines Valley* was a quiet title action in which the named plaintiff was the United States. The Government, however, had "no interest in the land" and had "simply permitted [the landowner] to use its name as the nominal plaintiff." 84 F., at 42. The suit was therefore barred, the appeals court held, by an earlier judgment against the landowner. As the court explained: "[W]here the government lends its name as a plaintiff . . . to enable one private person to maintain a suit against another," the government is "subject to the same defenses which exist . . . against the real party in interest." *Id.*, at 43. *Des Moines Valley*, the FAA contended at oral argument, demonstrates that it is sometimes appropriate to bind a nonparty in circumstances that do not fit within any of the established grounds for nonparty preclusion. See Tr. of Oral Arg. 31–33. Properly understood, however, *Des Moines Valley* is simply an application of the fifth basis for nonparty preclusion described above: A party may not use a representative or agent to relitigate an adverse judgment. See *supra*, at 12–

─────────────

made the statement Fairchild quotes in explaining why it was appropriate to defer to the findings of the lower courts, not as a comment on the substantive rules of privity. See *id.*, at 411.

Opinion of the Court

13.[10]  We thus find no support in our precedents for the lax approach to nonparty preclusion advocated by respondents.

Our second reason for rejecting a broad doctrine of virtual representation rests on the limitations attending nonparty preclusion based on adequate representation. A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, see *Hansberry*, 311 U. S., at 43; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty, see *Richards*, 517 U. S., at 801–802; *supra*, at 14–15. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented, see *Richards*, 517 U. S., at 801.[11]  In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.

───────────

[10]The FAA urges that there was no agency relationship between the landowner and the United States because the landowner did not control the U. S. Attorney's conduct of the suit. See Tr. of Oral Arg. 33. That point is debatable. See *United States* v. *Des Moines Valley R. Co.*, 84 F. 40, 42–43 (CA8 1897) (the United States was only a "nominal plaintiff"; it merely "len[t]" its name to the landowner). But even if the FAA is correct about agency, the United States plainly litigated as the landowner's designated representative. See *id.*, at 42 ("The bill does not attempt to conceal the fact that . . . its real purpose is to champion the cause of [the landowner] . . . ."). See also *Chicago, R. I. & P. R. Co.* v. *Schendel*, 270 U. S. 611, 618–620 (1926) (classifying *Des Moines Valley* with other cases of preclusion based on representation).

[11]*Richards* suggested that notice is required in some representative suits, *e.g.*, class actions seeking monetary relief. See 517 U. S., at 801 (citing *Hansberry* v. *Lee*, 311 U. S. 32, 40 (1940), *Eisen* v. *Carlisle & Jacquelin*, 417 U. S. 156, 177 (1974), and *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 319 (1950)). But we assumed without deciding that a lack of notice might be overcome in some circumstances. See *Richards*, 517 U. S., at 801.

Opinion of the Court

An expansive doctrine of virtual representation, however, would "recogniz[e], in effect, a common-law kind of class action." *Tice*, 162 F. 3d, at 972 (internal quotation marks omitted). That is, virtual representation would authorize preclusion based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protections prescribed in *Hansberry*, *Richards*, and Rule 23. These protections, grounded in due process, could be circumvented were we to approve a virtual representation doctrine that allowed courts to "create *de facto* class actions at will." *Tice*, 162 F. 3d, at 973.

Third, a diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves. Most obviously, it could significantly complicate the task of district courts faced in the first instance with preclusion questions. An all-things-considered balancing approach might spark wide-ranging, time-consuming, and expensive discovery tracking factors potentially relevant under seven- or five-prong tests. And after the relevant facts are established, district judges would be called upon to evaluate them under a standard that provides no firm guidance. See *Tyus*, 93 F. 3d, at 455 (conceding that "there is no clear test for determining the applicability of" the virtual representation doctrine announced in that case). Preclusion doctrine, it should be recalled, is intended to reduce the burden of litigation on courts and parties. Cf. *Montana*, 440 U. S., at 153–154. "In this area of the law," we agree, "'crisp rules with sharp corners' are preferable to a round-about doctrine of opaque standards." *Bittinger* v. *Tecumseh Products Co.*, 123 F. 3d 877, 881 (CA6 1997).

## C

Finally, relying on the Eighth Circuit's decision in *Tyus*, 93 F. 3d, at 456, the FAA maintains that nonparty preclusion should apply more broadly in "public-law" litigation

Opinion of the Court

than in "private-law" controversies.  To support this position, the FAA offers two arguments.  First, the FAA urges, our decision in *Richards* acknowledges that, in certain cases, the plaintiff has a reduced interest in controlling the litigation "because of the public nature of the right at issue."  Brief for Respondent FAA 28.  When a taxpayer challenges "an alleged misuse of public funds" or "other public action," we observed in *Richards*, the suit "has only an indirect impact on [the plaintiff's] interests."  517 U. S., at 803.  In actions of this character, the Court said, "we may assume that the States have wide latitude to establish procedures . . . to limit the number of judicial proceedings that may be entertained."  *Ibid.*

   Taylor's FOIA action falls within the category described in *Richards*, the FAA contends, because "the duty to disclose under FOIA is owed to the public generally."  See Brief for Respondent FAA 34.  The opening sentence of FOIA, it is true, states that agencies "shall make [information] available to the public."  5 U. S. C. §552(a) (2006 ed.).  Equally true, we have several times said that FOIA vindicates a "public" interest.  *E.g.*, *National Archives and Records Admin.* v. *Favish*, 541 U. S. 157, 172 (2004).  The Act, however, instructs agencies receiving FOIA requests to make the information available not to the public at large, but rather to the "person" making the request.  §552(a)(3)(A).  See also §552(a)(3)(B) ("In making any record available *to a person* under this paragraph, an agency shall provide the record in any [readily reproducible] form or format requested *by the person* . . . ." (emphasis added)); Brief for National Security Archive et al. as *Amici Curiae* 10 ("Government agencies do not systematically make released records available to the general public.").  Thus, in contrast to the public-law litigation contemplated in *Richards*, a successful FOIA action results in a grant of relief to the individual plaintiff, not a decree benefiting the public at large.

Furthermore, we said in *Richards* only that, for the type of public-law claims there envisioned, States are free to adopt procedures limiting repetitive litigation. See 517 U. S., at 803. In this regard, we referred to instances in which the first judgment foreclosed successive litigation by other plaintiffs because, "under state law, [the suit] could be brought only on behalf of the public at large." *Id.*, at 804.[12] *Richards* spoke of state legislation, but it appears equally evident that *Congress*, in providing for actions vindicating a public interest, may "limit the number of judicial proceedings that may be entertained." *Id.*, at 803. It hardly follows, however, that *this Court* should proscribe or confine successive FOIA suits by different requesters. Indeed, Congress' provision for FOIA suits with no statutory constraint on successive actions counsels against judicial imposition of constraints through extraordinary application of the common law of preclusion.

The FAA next argues that "the threat of vexatious litigation is heightened" in public-law cases because "the number of plaintiffs with standing is potentially limitless." Brief for Respondent FAA 28 (internal quotation marks omitted). FOIA does allow "any person" whose request is denied to resort to federal court for review of the agency's determination. 5 U. S. C. §552(a)(3)(A), (4)(B) (2006 ed.). Thus it is theoretically possible that several persons could coordinate to mount a series of repetitive lawsuits.

But we are not convinced that this risk justifies departure from the usual rules governing nonparty preclusion. First, *stare decisis* will allow courts swiftly to dispose of repetitive suits brought in the same circuit. Second, even when *stare decisis* is not dispositive, "the human tendency not to waste money will deter the bringing of suits based

———————

[12] Nonparty preclusion in such cases ranks under the sixth exception described above: special statutory schemes that expressly limit subsequent suits. See *supra*, at 13.

Opinion of the Court

on claims or issues that have already been adversely determined against others." Shapiro 97. This intuition seems to be borne out by experience: The FAA has not called our attention to any instances of abusive FOIA suits in the Circuits that reject the virtual-representation theory respondents advocate here.

## IV

For the foregoing reasons, we disapprove the theory of virtual representation on which the decision below rested. The preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion described in this opinion. See Part II–B, *supra*.

Although references to "virtual representation" have proliferated in the lower courts, our decision is unlikely to occasion any great shift in actual practice. Many opinions use the term "virtual representation" in reaching results at least arguably defensible on established grounds. See 18A Wright & Miller §4457, pp. 535–539, and n. 38 (collecting cases). In these cases, dropping the "virtual representation" label would lead to clearer analysis with little, if any, change in outcomes. See *Tice*, 162 F. 3d, at 971. ("[T]he term 'virtual representation' has cast more shadows than light on the problem [of nonparty preclusion].").

In some cases, however, lower courts have relied on virtual representation to extend nonparty preclusion beyond the latter doctrine's proper bounds. We now turn back to Taylor's action to determine whether his suit is such a case, or whether the result reached by the courts below can be justified on one of the recognized grounds for nonparty preclusion.

## A

It is uncontested that four of the six grounds for nonparty preclusion have no application here: There is no

Opinion of the Court

indication that Taylor agreed to be bound by Herrick's litigation, that Taylor and Herrick have any legal relationship, that Taylor exercised any control over Herrick's suit, or that this suit implicates any special statutory scheme limiting relitigation. Neither the FAA nor Fairchild contends otherwise.

It is equally clear that preclusion cannot be justified on the theory that Taylor was adequately represented in Herrick's suit. Nothing in the record indicates that Herrick understood himself to be suing on Taylor's behalf, that Taylor even knew of Herrick's suit, or that the Wyoming District Court took special care to protect Taylor's interests. Under our pathmarking precedent, therefore, Herrick's representation was not "adequate." See *Richards*, 517 U. S., at 801–802.

That leaves only the fifth category: preclusion because a nonparty to an earlier litigation has brought suit as a representative or agent of a party who is bound by the prior adjudication. Taylor is not Herrick's legal representative and he has not purported to sue in a representative capacity. He concedes, however, that preclusion would be appropriate if respondents could demonstrate that he is acting as Herrick's "undisclosed agen[t]." Brief for Petitioner 23, n. 4. See also *id.*, at 24, n. 5.

Respondents argue here, as they did below, that Taylor's suit is a collusive attempt to relitigate Herrick's action. See Brief for Respondent Fairchild 32, and n. 18; Brief for Respondent FAA 18–19, 33, 39. The D. C. Circuit considered a similar question in addressing the "tactical maneuvering" prong of its virtual representation test. See 490 F. 3d, at 976. The Court of Appeals did not, however, treat the issue as one of agency, and it expressly declined to reach any definitive conclusions due to "the ambiguity of the facts." *Ibid.* We therefore remand to give the courts below an opportunity to determine whether Taylor, in pursuing the instant FOIA suit, is acting as Herrick's

Opinion of the Court

agent. Taylor concedes that such a remand is appropriate.
See Tr. of Oral Arg. 56–57.

   We have never defined the showing required to establish
that a nonparty to a prior adjudication has become a
litigating agent for a party to the earlier case. Because
the issue has not been briefed in any detail, we do not
discuss the matter elaboratively here. We note, however,
that courts should be cautious about finding preclusion on
this basis. A mere whiff of "tactical maneuvering" will not
suffice; instead, principles of agency law are suggestive.
They indicate that preclusion is appropriate only if the
putative agent's conduct of the suit is subject to the control
of the party who is bound by the prior adjudication. See 1
Restatement (Second) of Agency §14, p. 60 (1957) ("A
principal has the right to control the conduct of the agent
with respect to matters entrusted to him.").[13]

### B

   On remand, Fairchild suggests, Taylor should bear the
burden of proving he is not acting as Herrick's agent.
When a defendant points to evidence establishing a close
relationship between successive litigants, Fairchild main-
tains, "the burden [should] shif[t] to the second litigant to
submit evidence refuting the charge" of agency. Brief for
Respondent Fairchild 27–28. Fairchild justifies this pro-
posed burden-shift on the ground that "it is unlikely an

---

   [13] Our decision in *Montana* v. *United States*, 440 U. S. 147 (1979), also
suggests a "control" test for agency. In that case, we held that the
United States was barred from bringing a suit because it had controlled
a prior unsuccessful action filed by a federal contractor. See *id.*, at 155.
We see no reason why preclusion based on a lesser showing would have
been appropriate if the order of the two actions had been switched—
that is, if the United States had brought the first suit itself, and then
sought to relitigate the same claim through the contractor. See
*Schendel*, 270 U. S., at 618 ("[I]f, in legal contemplation, there is
identity of parties" when two suits are brought in one order, "there
must be like identity" when the order is reversed.).

Opinion of the Court

opposing party will have access to direct evidence of collu-sion." *Id.*, at 28, n. 14.

   We reject Fairchild's suggestion.  Claim preclusion, like issue preclusion, is an affirmative defense.  See Fed. Rule Civ. Proc. 8(c); *Blonder-Tongue*, 402 U. S., at 350.  Ordi-narily, it is incumbent on the defendant to plead and prove such a defense, see *Jones* v. *Bock*, 549 U. S. 199, 204 (2007), and we have never recognized claim preclusion as an exception to that general rule, see 18 Wright & Miller §4405, p. 83 ("[A] party asserting preclusion must carry the burden of establishing all necessary elements.").  We acknowledge that direct evidence justifying nonparty preclusion is often in the hands of plaintiffs rather than defendants.  See, *e.g., Montana*, 440 U. S., at 155 (listing evidence of control over a prior suit).  But "[v]ery often one must plead and prove matters as to which his adversary has superior access to the proof."  2 K. Broun, McCormick on Evidence §337, p. 475 (6th ed. 2006).  In these situa-tions, targeted interrogatories or deposition questions can reduce the information disparity.  We see no greater cause here than in other matters of affirmative defense to dis-turb the traditional allocation of the proof burden.

*     *     *

   For the reasons stated, the judgment of the United States Court of Appeals for the District of Columbia Cir-cuit is vacated, and the case is remanded for further pro-ceedings consistent with this opinion.

*It is so ordered.*