1   **BLUMENTHAL, NORDREHAUG & BHOWMIK**
2     Norman B. Blumenthal (State Bar #068687)
      Kyle R. Nordrehaug (State Bar #205975)
3     Aparajit Bhowmik (State Bar #248066)
    2255 Calle Clara
4   La Jolla, CA 92037
    Telephone: (858)551-1223
    Facsimile: (858) 551-1232

5
6   **UNITED EMPLOYEES LAW GROUP**
      Walter Haines (State Bar #71705)
7   65 Pine Ave, #312
    Long Beach, CA 90802
    Telephone: (562) 256-1047
8   Facsimile: (562) 256-1006

9   Attorneys for Plaintiffs

10

11                  **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  VINCENT BOVA, an individual; on        CASE No.  **07 cv 2410** AJB (JMA)
15  behalf of himself , and on behalf of all
    persons similarly situated,
16                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
17            Plaintiffs,                   MOTION FOR PRELIMINARY
                                           APPROVAL OF CLASS SETTLEMENT
18  vs.

19   JP MORGAN CHASE BANK, N.A.            Hearing Date:        April 29, 2011
20  solely and exclusively as successor to  Hearing Time:       1:30 p.m.
    WASHINGTON MUTUAL BANK N.A.
21  and Does 1 to 10,                      Judge: Hon. Anthony J. Battaglia
                                           Courtroom: 12
22
             Defendants.
23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DESCRIPTION OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
      PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    The Role Of The Court In Preliminary Approval of a
            Class Action Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Factors To Be Considered In Granting Preliminary Approval . . . . . . . . . . . 9

            1.    The Settlement Is the Product of Serious, Informed and
                  Noncollusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    The Settlement Has No "Obvious Deficiencies" and Falls Within
                  the Range for Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            3.    The Settlement Does Not Improperly Grant Preferential Treatment
                  To Class Representatives or Segments Of The Class . . . . . . . . . . . . 13

            4.    The Stage Of The Proceedings Are Sufficiently Advanced To
                  Permit Preliminary Approval Of These Settlements . . . . . . . . . . . . 15

VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES . . . 16

      A.    Rule 23 of the Federal Rules of Civil Procedure Governs . . . . . . . . . . . . . 16

      B.    The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Common Questions of Law and Fact Bind the Class . . . . . . . . . . . . . . . . . 17

      D.    The Claim of the Plaintiff Is Typical of the Class Claims . . . . . . . . . . . . . 18

      E.    The Class Representative Has Fairly and Adequately Protected
            the Interest of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      F.    For the Class As Alleged in the Fifth Amended Complaint, The
            Additional Requirements of Rule 23 Are Satisfied . . . . . . . . . . . . . . . . . . 20

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . . . . . 22

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**Cases**:

Ansari v. New York Univ.,
179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Armstrong v. Board of School Directors,
616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Buchholtz v. Swift & Co.,
62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Consolidated Rail Corp. v. Town of Hyde Park,
47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Donaldson v. Pillsbury Co.,
554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

EEOC v. Kovacevich "5" Farms,
2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . . . . . . 17

Estrada v. FedEx Ground Package System, Inc.,
154 Cal.App.4th 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ghazaryan v. Diva Limousine, Ltd.,
169 Cal. App. 4th 1524 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Glass v. UBS Fin. Servs.,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) . . . . . . . . . . . . . . . 12-16

Hanlon v. Chrysler Co.,
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Jiffy Lube Sec. Litig.,
927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Wash. Public Power Supply System Sec. Litig.,
720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Wirebound Boxes Antitrust Lit.,
128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Workers' Compensation,
130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

Jenkins v. Raymark Ind., Inc.,
782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jenson v. Continental Fin. Corp.,
404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jordan v. County of Los Angeles,
669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kirkorian v. Borelli,
695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lockwood Motors, Inc. v. General Motors Corp.,
162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

Louie v. Kaiser Found. Health Plan, Inc.,
2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Lyons v. Marrud, Inc.,
[1972-1973 Transfer Binder] Fed. Sec. L. Rep.
(CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.,
618 F.3d 988 (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Officers for Justice v. Civil Serv. Comm'n,
688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Prince v. CLS Transportation, Inc.,
118 Cal.App.4th 1320 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Reed v. General Motors Corp.,
703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Slaven v. BP Am., Inc.,
190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Staton v. Boeing,
327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tate v. Weyerhaeuser Co.,
723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Valentino v. Carter-Wallace, Inc.,
97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Weinberger v. Kendrick,
        698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

White v. Local 942,
        688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


**Statutes:**

29 U.S.C. § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


**Secondary Authorities:**

2 H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (3d ed. 1992) . . . . . . . . . 7, 8, 20, 23

<u>Manual for Complex Litigation,</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 23

3B J. Moore, <u>Moore's Federal Practice</u> §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . . . . . . . . . 8

Plaintiff Vincent Bova ("Plaintiff") respectfully submits this memorandum of points and authorities in support of his motion for preliminary approval of settlement of the class action.

## I.   INTRODUCTION

Plaintiff and Defendant JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of WASHINGTON MUTUAL BANK ("WMB") from the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver (collectively "Defendant") have reached a full and final settlement of the above-captioned class action, which is embodied in the Stipulation and Settlement Agreement ("Stipulation") filed concurrently with the Court.[1]  By this motion, Plaintiff seeks preliminary approval from the Court of the Stipulation (a copy of which is attached as Exhibit 1 to the Declaration of Norman Blumenthal, served and filed herewith), conditional certification of the Settlement Class, approval of the Preliminary Approval Order, and scheduling of the Settlement Fairness Hearing to determine final approval of the Settlement.

## II.   DESCRIPTION OF THE SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which includes all those persons employed by Washington Mutual Bank's Home Loans or Home Loans and Insurance Services group as Wholesale Underwriters or Senior Wholesale Underwriters in the State of California between December 26, 2003 and September 30, 2008, who did not sign a severance agreement, and who has not had their claims adjudicated in another forum.  (Stipulation at §1.6.)  The Settlement Class consists of about 75 former employees of Washington Mutual Bank.

On January 4, 2011, the parties participated in private mediation with Scott Markus, a respected and experienced mediator.  Declaration of Norman Blumenthal, ("Decl. Blumenthal") at ¶5.  As a result of the all day mediation, the parties reached a settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as counsel in other

---

[1]  Capitalized terms in this Memorandum have the same meaning as contained in the Joint Stipulation and Release.

1   wage and hour cases, and the uncertainties and cost of the years of litigation the Parties faced

2   if the settlement was not reached.  Decl. Blumenthal, ¶5.

3        Under the terms to which the Parties have agreed, Defendant agrees to establish a

4   Settlement Amount of Four Hundred and Sixty-Three Thousand Dollars and No Cents

5   ($463,000.00).  This common fund settlement is all-in with no reversion to Defendant.  This

6   Settlement Amount is inclusive of all claims of the Class members, as well as Class Counsel's

7   attorneys' fees and costs, service payment for the Plaintiff, PAGA payment to the State of

8   California, and the cost of class notice and claims administration.  Decl. Blumenthal, ¶3.

9        As per Section 2.3 of the Stipulation, all costs, attorneys' fees, administrative and agency

10  costs, Service Awards, PAGA payments, and any other costs that may arise will be deducted

11  from the Settlement Amount. The remainder will be divided by the total number of work weeks

12  for the Class, resulting in an allocation value per work week. Each putative class member will

13  be designated to receive a "Target Amount" that is equal to the number of work weeks for that

14  class member, multiplied by the allocation value per work week. To the extent that any Class

15  Members fail to become Participating Claimants, resulting in an incomplete distribution of the

16  Settlement Amount, the residual funds attributable to such Class Members shall be allocated as

17  follows: (i) any remaining amount shall first be used to pay the employer's share of payroll

18  taxes; and (ii) the remainder shall be allocated to Participating Claimants in proportion to their

19  Target Amounts.  Decl. Blumenthal, ¶4.

20       This is a fair result for the members of the Class.  Liability in this case was uncertain

21  because a jury may have found that some or all of the Class Members may have been exempt

22  from certain pay requirements applicable to nonexempt employees.  Indeed, some courts have

23  found exemptions to apply in cases involving similar facts.  Decl. Blumenthal, ¶6.  Moreover,

24  there was further uncertainty as to whether class certification could have been achieved and

25  maintained throughout the litigation. These defenses could have reduced the amount recovered

26  or denied a recovery altogether to the members of the class.   Decl. Blumenthal, ¶6.

27

28

1

## III.    NATURE OF THE CASE

2        On December 26, 2007, Class Representative Vincent Bova commenced a proposed class

3   and collective action against WMB in the United States District Court for the Southern District

4   of California (San Diego), captioned *Vincent Bova, et al. v. Washington Mutual Bank*, CASD

5   Case No. 07-cv-2410 AJB-JMA. [Doc. No. 1].  On March 28, 2008, Plaintiff filed a First

6   Amended Complaint. [Doc. No. 8].  Decl. Blumenthal, ¶7.

7        On May 5, 2008, Defendant filed a motion to dismiss or in the alternative to stay the

8   California class allegations. [Doc. No. 9].  The motion was based upon the denial of class

9   certification in a state court proceeding entitled *Creese v. Washington Mutual Bank*, Case No.

10  BC 323376, which denial of class certification was affirmed on appeal.  The motion was

11  extensively briefed by the parties.  By Order dated November 3, 2008, this Court denied the

12  motion. [Doc. No. 21].  Decl. Blumenthal, ¶8.

13       On or about September 25, 2008, the Office of Thrift Supervision seized WMB and

14  immediately appointed the FDIC as receiver.  The FDIC then transferred certain assets and

15  liabilities of WMB to JPMorgan Chase Bank, N.A.  By Order dated December 3, 2008, this

16  Court granted the Appearance of JP Morgan Chase Bank, N.A. solely and exclusively as

17  successor to Washington Mutual Bank N.A. [Doc. No. 26].  Decl. Blumenthal, ¶9.

18       Plaintiff filed a Second Amended Complaint on January 20, 2009. [Doc. No. 30].

19  Defendant filed an answer to the Second Amended Complaint on February 9, 2009. [Doc. No.

20  31].  The parties then began formal discovery and the parties were deposed.  On December 28,

21  2009, Plaintiff filed a Fourth Amended Complaint. [Doc. No. 66].  The current Complaint

22  alleges California wage and hour claims on behalf of a putative Rule 23 class of

23  California-based underwriters who worked in the wholesale loan channel of WMB's Home

24  Loans or Home Loans and Insurance Services ("HLIS") group from December 26, 2003 until

25  September 30, 2008 and who did not sign severance agreements, and certain FLSA collective

26  action claims.  Defendant answered the Fourth Amended Complaint. [Doc. No. 67].  Decl.

27  Blumenthal, ¶10.

28

On August 20, 2010, Plaintiff filed his motion for class certification. [Doc. No. 80]. Defendant opposed the motion/ [Doc. No. 82].  After the motion was fully briefed, but before the hearing on the motion, the parties participated in mediation before Scott Marcus, at which time this settlement was reached.  As part of the Stipulation, Plaintiff will seek leave to amend, and will amend, the Complaint to limit the alleged Rule 23 and collective action FLSA claims to California home loan underwriters who worked in the wholesale loan channel of WMB's Home Loans or HLIS group from December 26, 2003 until September 30, 2008, who did not sign severance agreements, and who have not had their claims adjudicated in another forum. By way of this motion, Plaintiff therefore requests leave to file the Fifth Amended Complaint in the form attached to the Stipulation as Exhibit 3.  Decl. Blumenthal, ¶11.

Plaintiff contends that Defendant violated California and federal wage and hour laws and that the Class Action is appropriate for class certification and collective certification on the basis that the Plaintiff' claims meet the requisites for class certification.  Without admitting that class certification is proper, Defendant has stipulated that the above Settlement Class of employees in California may be certified for settlement purposes only.  (Stipulation at § 2.2.)  The Parties agree that certification for settlement purposes is not an admission that class certification would be proper if the class certification issue were litigated.  Further, this agreement is not admissible in this or any other proceeding as evidence that the Class could be certified absent a settlement. Solely for purposes of settling the lawsuits, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class, as defined above, have been met and are met.  Decl. Blumenthal ¶ 12.

Although a settlement has been reached, Defendant specifically and generally denies all of the claims asserted in the Litigation, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  Defendant maintains that all of WMB's Wholesale Loan Underwriters were and always have been properly classified as exempt employees, that no wages, penalties, or overtime of any type is owed, and

1   that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class

2   or collective action treatment pursuant to either Federal Rule of Civil Procedure 23 or 29 U.S.C.

3   §216(b).  Nonetheless, Defendant has concluded that further conduct of the Litigation would

4   be protracted and expensive.  Defendant has also taken into account the uncertainty and risks

5   inherent in any litigation.  Defendant has therefore determined that it is desirable and beneficial

6   to it to settle the Litigation in the manner and upon the terms and conditions set forth in this

7   Stipulation.  Decl. Blumenthal, ¶12.

8          Class Counsel has conducted a thorough investigation into the facts of the class action.

9   Class Counsel has diligently evaluated the Class Members' claims against Defendant.  Prior to

10  the Parties executing a "Memorandum of Understanding," counsel for Defendant provided Class

11  Counsel with access to information concerning Defendant's employment policies and practices

12  and Class Member data, including data reflecting the weeks worked by the Class Members and

13  relevant salary information for the positions at issue.  Based on the foregoing data and their own

14  independent investigation and evaluation, Class Counsel believes that the settlement with

15  Defendant for the consideration and on the terms set forth in this Stipulation is fair, reasonable,

16  and adequate and is in the best interest of the Class in light of all known facts and

17  circumstances, including the risk of significant delay, the likelihood that Defendant would

18  prevail on its defenses, and numerous potential appellate issues.  Decl. Blumenthal at ¶13.

19  Defendant and Defendant's counsel also agree that the Settlement is fair and in the best interest

20  of the Class.

21  **IV.    PLAN OF ALLOCATION**

22          To implement the terms of this Settlement, Defendant agrees to establish a Settlement

23  Amount of Four Hundred Sixty Three Thousand Dollars and Zero Cents ($463,000.00) to be

24  distributed to the Settlement Class members on a claims-made basis.  (Stipulation at §2.3.1.)

25  All costs, attorneys' fees, administrative and agency costs, Service Awards, PAGA payments,

26  and any other costs that may arise will be deducted from the Settlement Amount.  (Stipulation

27  at §2.3.1.1.)  After these deductions, the remainder of the Settlement Amount will be divided

28  by the total number of work weeks for the Class (as shown in WMB payroll records), resulting

1  in an allocation value per work week. (Stipulation at §2.3.1.2.)   Decl. Blumenthal at ¶14.

2  Each putative class member will be designated to receive a "Target Amount" that is equal

3  to the number of work weeks for that class member, multiplied by the allocation value per work

4  week.   (Stipulation at §2.3.1.3.)   To the extent that any Class Members fail to become

5  Participating Claimants, resulting in an incomplete distribution of the Settlement Amount, the

6  residual funds attributable to such Class Members shall be allocated as follows: (i) any

7  remaining amount shall first be used to pay the employer's share of payroll taxes; and (ii) the

8  remainder shall be allocated to Participating Claimants in proportion to their Target Amounts.

9  (Stipulation at §2.3.2.)  Decl. Blumenthal at ¶15.

10  To the extent administratively convenient, the payment to each Participating Claimant

11  shall be made via two separate checks.   The first check to a Participating Claimant shall

12  constitute fifty percent (50%) of the total payment to that Participating Claimant and shall be

13  deemed payment in settlement of claims for unpaid wages. This first check for unpaid wages

14  is subject to appropriate deductions and withholdings by the Claims Administrator and will be

15  reported on a W-2 to be issued by the Claims Administrator.   The second check to a

16  Participating Claimant shall constitute the remaining fifty percent (50%) of the total payment

17  to that Participating Claimant and shall be deemed payment in settlement for claims of penalties,

18  liquidated damages, interest, and all other non-wage recovery.  To the extent that Defendant's

19  share of payroll taxes is not included in the Settlement Amount pursuant to Section 2.3.2, that

20  amount shall be funded separately by Defendant.  (Stipulation at §2.3.4.)  Decl. Blumenthal at

21  ¶16.

22  From the Settlement Amount a payment in the amount of $10,000 shall be made as

23  consideration for the release of PAGA claims on behalf of the Class and of the State of

24  California.   Of this amount, $7,500 will be paid to the California Labor and Workforce

25  Development Agency ("LWDA"), and $2,500 will be paid to the Participating Claimants and

26  included in the amounts allocated according to the process set forth in Sections 2.3.1 and 2.3.2.

27  (Stipulation at §2.3.6.)  Decl. Blumenthal at ¶17.

28  Class Counsel may request of the Court a fee equal to 30% of the Settlement Amount (to

be paid from the Settlement Amount), a request which Defendant also agrees not to oppose. (Stipulation at §2.3.7.)  Class Counsel may also request the Court for costs reimbursement not to exceed $60,000 (to be paid from the Settlement Amount), a request which Defendant also agrees not to oppose.  (Stipulation at §2.3.8.)  Decl. Blumenthal at ¶18.

The Class Representative may request the Court for a Service Award in an amount not to exceed $20,000 (to be paid from the Settlement Amount), in addition to his share as a Participating Claimant, a request which Defendant also agrees not to oppose.  As part of this Service Award, the Class Representative shall be required to sign a full, general, and comprehensive release of claims, which is attached to the Stipulation as <u>Exhibit 4</u>. (Stipulation at §2.3.9.)  Decl. Blumenthal at ¶19.

Subject to the Court's approval, the Claims Administrator will be Gilardi & Co LLC. (Stipulation at §1.3.)  The parties estimate the fees of the Claims Administrator will be Ten Thousand Dollars ($10,000.00).  (Stipulation at §2.10.1.)   Part of the fees paid to the Claims Administrator shall include all costs of the mailing described in Section 2.6.1, which shall be the fees charged by the Claims Administrator, the cost of the envelopes in which the Class Notice will be mailed, the cost of reproducing the Class Notice, and the cost of postage to send the Class Notice.  The following Forms will be included with the Class Notice in this mailing: Change of Name or Address Information (Form A), Election to Opt Out of Settlement and Class Action (Form B), and Settlement Claim and Release Form (Form C).  (Stipulation at §2.6.6.) Decl. Blumenthal at ¶20.

## V.   THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement  must be submitted to the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions.  See e.g. <u>Louie v. Kaiser Found. Health Plan, Inc.</u>, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008).  The second step is

1    the dissemination of notice of the settlement to all class members.  The third step is a final

2    settlement approval hearing, at which evidence and argument concerning the fairness, adequacy,

3    and reasonableness of the settlement may be presented and class members may be heard

4    regarding the settlement.  See Manual for Complex Litigation, Second §30.44 (1993).

5         The question presented on a motion for preliminary approval of a proposed class action

6    settlement is whether the proposed settlement is "within the range of possible approval."

7    Manual for Complex Litigation, Second §30.44 at 229; Gautreaux v. Pierce, 690 F.2d 616, 621

8    n.3 (7th Cir. 1982); Louie, supra, at *7.   Preliminary approval is merely the prerequisite to

9    giving notice so that "the proposed settlement . . . may be submitted to members of the

10   prospective Class for their acceptance or rejection."   Philadelphia Housing Authority v.

11   American Radiator & Standard Sanitary Corp., 323 F. Supp. 364, 372 (E.D. Pa. 1970).  There

12   is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's

13   length by Class Counsel, is presented for court approval.  Newberg, 3d Ed., §11.41, p.11-88.

14   However, the ultimate question of whether the proposed settlement is fair, reasonable and

15   adequate is made after notice of the settlement is given to the class members and a final

16   settlement hearing is held by the Court.

17   **A.    The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

18        The approval of a proposed settlement of a class action suit is a matter within the broad

19   discretion of the trial court.  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).  Preliminary

20   approval does not require the trial court to answer the ultimate question of whether a proposed

21   settlement is "fair, reasonable and adequate."   In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158

22   (4th Cir. 1991); Manual for Complex Litigation, Third, §§ 20.212.  That determination is made

23   only after notice of the settlement has been given to the members of the class and after the class

24   members have been given an opportunity to voice their views of the settlement or to be

25   excluded from the settlement Class.  See, e.g., 3B J. Moore, Moore's Federal Practice §§23.80

26   - 23.85 (2003).

27        In considering a potential settlement for preliminary approval purposes, the trial court

28   does not have to reach any ultimate conclusions on the issues of fact and law which underlie the

1  merits of the dispute (Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)), and need not

2  engage in a trial on the merits.  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th

3  Cir. 1982), cert. denied, 459 U.S. 1217 (1983). The court is not required to determine that

4  certification of a settlement class is appropriate until the final settlement approval. In re General

5  Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 797 (3d Cir. 1995).

6          The question of whether a proposed settlement is fair, reasonable and adequate

7  necessarily requires a judgment and evaluation by the attorneys for the parties based upon a

8  comparison of "the terms of the compromise with the likely rewards of litigation." Weinberger

9  v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting

10  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S.

11  414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel

12  supporting the settlement is entitled to considerable weight. Kirkorian v. Borelli, 695 F. Supp.

13  446, 451 (N.D. Cal. 1988); Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983);

14  Weinberger, 698 F.2d at 74; Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th

15  Cir. 1980); Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985).

16  For example, in Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH)

17  Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel

18  have assessed these problems and the probability of success on the merits.  They have

19  concluded that compromise is well-advised and necessary.  The parties' decision regarding the

20  respective merits of their position has an important bearing on this case."  Id. at ¶ 92,520.

21  **B.      Factors To Be Considered In Granting Preliminary Approval**

22          A number of factors are to be considered in evaluating a settlement for purposes of

23  preliminary approval.  No one factor should be determinative, but rather all factors should be

24  considered.  These criteria have been summarized as follows:

25          If the proposed settlement appears to be the product of serious, informed, non-collusive

26  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

27  class representatives or segments of the class, and falls within the range of possible approval,

28  then the court should direct that notice be given to the class members of a formal fairness

1   hearing, at which evidence may be presented in support of and in opposition to the settlement.

2   Manual of Complex Litigation, Second §30.44, at 229.  Here, the settlement meets all of these

3   criteria.

### 1. The Settlement is the Product of Serious, Informed and Noncollusive Negotiations

6   This settlement is the result of extensive and hard fought negotiations.  Defendant denies

7   each and every one of the claims and contentions alleged in this Action.  Defendant has asserted

8   and continues to assert many defenses thereto, and has expressly denied and continues to deny

9   any wrongdoing or legal liability arising out of the conduct alleged in the Action.  Nonetheless,

10  Defendant has concluded that this Action be settled in the manner and upon the terms and

11  conditions set forth in the Stipulation in order to avoid the expense, inconvenience, and burden

12  of further legal proceedings, and the uncertainties of trial and appeals.  Defendant has decided

13  to put to rest the Released Class Claims of the Settlement Class.

14  Settlement negotiations took place before Scott Markus, an experienced mediator of

15  complex litigation and wage and hour class actions.  Counsel for the Parties, after settlement

16  negotiations lasting the entire day, reached an agreement, based upon Mr. Markus's expertise

17  as a mediator and the uncertainties of protracted litigation.  Decl. Blumenthal at ¶5.   Most

18  importantly, Plaintiff and Class Counsel believe that this settlement is fair, reasonable and

19  adequate.  By reason of the settlement, Defendant has agreed to establish a Settlement Amount

20  of  Four Hundred and Sixty-Three Thousand Dollars and No Cents ($463,000.00), as payment

21  in full of all of the Class claims arising from the events described in the Consolidated Class

22  Action, including Class Counsel's attorneys' fees  and expenses, PAGA payments, the Class

23  Representative's service payment, and the cost of class notice and claims administration.

24  (Stipulation at § 2.3.)

25  Class Counsel has conducted a thorough investigation into the facts of the class action,

26  including an extensive review of relevant documents and data, formal discovery and

27  depositions, and a diligent investigation of the Settlement Class Members' claims against

28  Defendant.  Decl. Blumenthal, ¶ 13.  Based on the foregoing documents and data, the testimony

1   obtained, and their own independent investigation and evaluation, Class Counsel is of the

2   opinion that the settlement with Defendant for the consideration and on the terms set forth in

3   the Stipulation is fair, reasonable, and adequate and is in the best interest of the class in light of

4   all known facts and circumstances, including the risk of significant delay, defenses asserted by

5   Defendant, and numerous potential appellate issues.  Defendant and Defendant's counsel also

6   agree that the Settlement is fair and in the best interest of the Class Members.

7        Plaintiffs and Class Counsel recognize the expense and length of continuing to litigate

8   and trying this Class Action against Defendant through possible appeals which could take

9   several years.  Class Counsel has also taken into account the uncertain outcome and risk of

10  litigation, especially in complex actions such as this litigation.  Class Counsel is also mindful

11  of and recognize the inherent problems of proof under, and alleged defenses to, the claims

12  asserted in the Class Action.  Based upon their evaluation, Plaintiff and Class Counsel have

13  determined that the settlement set forth in the Stipulation is in the best interest of the Class

14  Members.  Decl. Blumenthal, ¶21.

15       Here the negotiations have been hard-fought and aggressive with capable advocacy on

16  both sides.  Accordingly, "[t]here is likewise every reason to conclude that settlement

17  negotiations were vigorously conducted at arms' length and without any suggestion of undue

18  influence."  In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D.

19  Ariz. 1989).

20

21       **2.    The Settlement Has No "Obvious Deficiencies" and Falls Within
               the Range for Approval**

22       The proposed Settlement herein has no "obvious deficiencies" and is well within the

23  range of possible approval.  All Settlement Class Members will receive an opportunity to

24  participate in and receive payment.

25       Class Counsel's damage expert, Desmond Marcello & Amster, prepared calculations as

26  to the potential value of the claims asserted.  Decl. Blumenthal at ¶6.  The Declaration of

27  Norman Blumenthal, at ¶ 6, estimates that Defendant was subject to total maximum damages

28  for the Settlement Class in the amount of approximately $1,134.916.00, assuming these claims

1   and damages could be proven at trial.  Defendant contended that any potential liability was far

2   lower, and that Defendant's defenses would negate any recovery altogether.  Using the

3   estimates presented by Class Counsel, the settlement of $463,000, before deductions, represents

4   at least 40% of the total maximum damages estimated by Class Counsel's expert, assuming

5   these amounts could be proven at trial.  Clearly the goal of this litigation has been met.  Decl.

6   Blumenthal, ¶ 6.

7        In Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007)

8   the federal district court for the Northern District of California recently approved a settlement

9   of an action claiming unpaid overtime wages where the settlement amount constituted

10  approximately 25% to 35% of the estimated actual loss to the class.   Here the settlement

11  consideration constitutes a reasonable percentage of the estimated actual overtime loss to the

12  class.[2]

13       In Glass, the federal court ruled that the settlement which represented approximately 25

14  to 35% of the loss to the class was fair, reasonable, and adequate.   Id. at 28.  A fortiori, this

15  settlement is most certainly entitled to preliminary approval.

16       Where both sides face significant uncertainty, the attendant risks favor settlement.

17  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses

18  asserted by Defendant presented serious threats to the claims of Plaintiff and the other Class

19  Members.

20       For example, Defendant contended that Class Members were barred from recovery by the

21  "administrative exemption."  In addition, Defendant argued that the entire action was barred by

22  the failure of Plaintiff to follow the mandatory administrative claims process established by the

23  _____

24      [2]    In Glass, the federal court granted preliminary approval of the settlement although the
     parties failed to submit evidence verifying their estimate of the total loss to the class.  At the
25   final fairness hearing, the parties presented a lengthy discussion of the above-referenced
     estimate, in which they represented that their estimate of the maximum loss to the class was
26   based on hard data obtained from interviews with class members, computer log-in records, and
     payroll records.  Id. at *28-*29.  The parties estimate of the total loss to the Settlement Class
27   here is based on the same type of hard data that was not submitted in Glass until final settlement
     approval was sought.
28

1   Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").  This defense

2   presented the most serious threat to the case as Defendant successfully dismissed another

3   lawsuit on the basis of this defense.  If successful, Defendant's defenses could eliminate or

4   substantially reduce any recovery to the Class.  While Plaintiffs believe that these defenses

5   could be overcome, Defendant maintains these defenses have merit and therefore present a

6   serious risk to recovery by the Class.  Decl. Blumenthal at ¶23.

7         There was also a significant risk that, if the Actions were not settled, Plaintiff would be

8   unable to obtain class certification and thereby not recover on behalf of any employees other

9   than themselves.  Defendant forcefully opposed class certification, arguing that individual issues

10  precluded class certification.  Defendant maintained that the court in Creese, presented with the

11  identical issues, decided that common issues would not predominate, and denied class

12  certification.  While other cases have approved class certification in wage and hour claims, class

13  certification in this action would have been hotly disputed and was by no means a foregone

14  conclusion.  Decl. Blumenthal at ¶24.

15        After vigorous negotiations, the mediator presented the parties with a mediator's

16  proposal of $463,000.  Recognizing the potential risks, both sides agreed.  As the federal court

17  recently held in Glass, where the parties faced uncertainties similar to those here:

18        In light of the above-referenced uncertainty in the law, the risk, expense,
          complexity, and likely duration of further litigation likewise favors the settlement.
19        Regardless of how this Court might have ruled on the merits of the legal issues,
          the losing party likely would have appealed, and the parties would have faced the
20        expense and uncertainty of litigating an appeal.  "The expense and possible
          duration of the litigation should be considered in evaluating the reasonableness
21        of [a] settlement."  See In re Mego Financial Corp. Securities Litigation, 213 F.3d
          454, 458 (9th Cir. 2000).
22

23  Here, the risk of further litigation is substantial.

24        **3.    The Settlement Does Not Improperly Grant Preferential Treatment To The
                  Class Representative or Segments Of The Class**
25
26        The relief provided in the settlement will benefit all Class Members equally.  The

27  settlement does not improperly grant preferential treatment to the Class Representative or any

28  individual segments of the Class.

1    Each Settlement Class Member, including the Plaintiffs, will be entitled to payment

2    based on the plan of allocation.  Decl. Blumenthal at ¶6.  Each Settlement Class Member's

3    Individual Settlement Award will be determined as follows:

4    All costs, attorneys' fees, administrative and agency costs, Service Awards, PAGA

5    payments, and any other costs that may arise will be deducted from the Settlement Amount.

6    (Stipulation at §2.3.1.1.)  After these deductions, the remainder of the Settlement Amount will

7    be divided by the total number of work weeks for the Class (as shown in WMB payroll records),

8    resulting in an allocation value per work week. (Stipulation at §2.3.1.2.)  Decl. Blumenthal at

9    ¶14.

10    Each putative class member will be designated to receive a "Target Amount" that is equal

11    to the number of work weeks for that class member, multiplied by the allocation value per work

12    week.  (Stipulation at §2.3.1.3.)  To the extent that any Class Members fail to become

13    Participating Claimants, resulting in an incomplete distribution of the Settlement Amount, the

14    residual funds attributable to such Class Members shall be allocated as follows: (i) any

15    remaining amount shall first be used to pay the employer's share of payroll taxes; and (ii) the

16    remainder shall be allocated to Participating Claimants in proportion to their Target Amounts.

17    (Stipulation at §2.3.2.)  Decl. Blumenthal at ¶15.

18    In addition, the Class Representative will apply to the trial court for a service award of

19    $20,000.  (Stipulation at §2.3.9.)  In Glass, the district court recently awarded each of the class

20    representatives in an overtime wages class action a service award of $25,000.  Glass, 2007 U.S.

21    Dist. LEXIS 8476 at *51-52.  The payment of service payment in this amount to the named

22    plaintiff in a wage and hour class action is approved by settled authority, and the requested

23    service payment in the amount of $20,000 each is reasonable in this case in light of the amount

24    approved in Glass and other decisions.[3]

25

26

27    _____

28    [3] At final approval, Plaintiff will fully explain the services, risks and legal authority which support the requested service award.

### 4. The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement

The stage of the proceedings at which this settlement was reached also militates in favor of preliminary approval and ultimately, final approval of the settlement. Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel began investigating the Class Members' claims before this action was filed. Class Counsel served extensive written discovery on Defendant. Defendant produced over 100,000 pages of documents in response to the discovery, which documentation Class Counsel reviewed. Class Counsel then deposed Defendant's 30(b)(6) witnesses, including Sandie Randall, Margaret Olhaver, and Samuel Jarman, and Defendant deposed Plaintiff. Therefore all of the discovery necessary to move for class certification was performed by the parties, and at the time this settlement was reached, the Plaintiff's motion for class certification was fully briefed and pending before the Court. Decl. Blumenthal at ¶25.

Class Counsel also obtained production of extensive employment and payroll records produced through informal discovery. Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of experts. Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. Decl. Blumenthal at ¶26.

Based on the foregoing documents and data, the testimony obtained, and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Stipulation is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues. Defendant and Defendant's counsel also agree that the Settlement is fair and in the best interest of the Settlement Class Members. There can be no doubt that Counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained

1 | through further litigation.   Decl. Blumenthal at ¶27.

2 | In <u>Glass</u>, the Northern District of California recently granted final approval of an

3 | overtime and meal wage action although in <u>Glass</u> no formal discovery had been conducted prior

4 | to the settlement:

> Here, no formal discovery took place prior to settlement. As the Ninth Circuit has observed, however, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." See <u>In re Mego Financial Corp. Securities Litigation</u>, 213 F.3d at 459.

8 | 2007 U.S. Dist. LEXIS 8476 at *14.

9 | Here, Class Counsel was in a better position to evaluate the fairness of this settlement

10 | as in <u>Glass</u> because they conducted significant formal discovery and informal discovery as well

11 | as independent investigations and due diligence to confirm the accuracy of the information

12 | supplied by Defendant.

## VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES

The proposed settlements meet all of the requirements for class certification under F.R.C.P. §23(b)(2) as demonstrated below, and therefore, the Court may appropriately approve the Settlement Class as defined in the Stipulation.  This Court should conditionally certify a class for settlement purposes only that consists of "all those persons employed by Washington Mutual Bank's Home Loans or Home Loans and Insurance Services group as Wholesale Underwriters or Senior Wholesale Underwriters in the State of California between December 26, 2003 and September 30, 2008, who did not sign a severance agreement, and who has not had their claims adjudicated in another forum."  (Stipulation at §1.6).

### A.   Rule 23 of the Federal Rules of Civil Procedure Governs

Plaintiffs seek certification of this Action for settlement purposes under F.R.C.P §23(b)(3).  This portion of rule 23 applies to class actions where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).

To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule 23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

(1)    the class is so numerous that joinder of all members is impracticable,

(2)    there are questions of law or fact common to the class,

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4)    the representative parties will fairly and adequately protect the interests of the class. While Defendant disputes that the Plaintiffs can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Settlement Class should be certified for purposes of settlement only.

### B.    The Numerosity Requirement Is Satisfied

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable."  F.R.C.P. §23(a).  "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."  <u>EEOC v. Kovacevich "5" Farms</u>, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also <u>Slaven v. BP Am., Inc.</u>, 190 F.R.D. 649, 654 (C.D. Cal. 2000); <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); <u>Lockwood Motors, Inc. v. General Motors Corp.</u>, 162 F.R.D. 569, 574 (D. Minn. 1995).  In <u>Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995), the Court held that "numerosity is presumed at a level of 40 members."  The Ninth Circuit observed that classes with fewer than 70 members have been certified in numerous cases. <u>Jordan v. County of Los Angeles</u>, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been certified in numerous cases).

Here, the Settlement Class is composed of about 75 Settlement Class Members, which is sufficiently numerous.  Decl. Blumenthal at ¶28.

### C.    Common Questions of Law and Fact Bind the Class

Rule 23(a) requires that there be a common question of law or fact.  There is no

1  requirement that the members of the class be identically situated, only that there exists one or
2  more factual or legal questions common to all members.  Jenson v. Continental Fin. Corp., 404
3  F. Supp. 806 (D. Minn. 1975).  This threshold of "commonality" is not particularly high.
4  Jenkins v. Raymark Ind., Inc., 782 F.2d 468, 472 (5th Cir. 1986).  The fundamental question
5  is whether the resolution of the common legal or factual questions would affect all or a
6  substantial number of the class members.  Jenkins, supra, 782 F.2d at 472.  Indeed, if a claim
7  "arises out of the same legal or remedial theory, the presence of factual variations is normally
8  not sufficient to preclude class action treatment."  Donaldson v. Pillsbury Co., 554 F.2d 825,
9  831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

10  Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action
11  affects all class members, and at least one of the elements of that cause of action is shared by
12  all of the class members."  Lockwood Motors, 162 F.R.D. at 575.  This requirement is met if
13  common questions of liability are present, even if there may be individual variations.  In re
14  Workers' Compensation, 130 F.R.D. 99, 104 (D. Minn. 1990).

15  Here, common questions of law and fact, as alleged by the Plaintiffs, are present,
16  specifically the question of whether the Settlement Class Members employed by Defendant were
17  "exempt." Decl. Blumenthal, ¶29.  Defendant disputes that commonality actually exists, but will
18  not oppose such a finding for purposes of this settlement only.

19  **D.      The Claims of the Plaintiff Are Typical of the Class Claims**

20  The typicality requirement of Rule 23(a) requires that the members of the class have the
21  same or similar claims as the named plaintiff.  "The typicality requirement is met when the
22  claims of the named plaintiff arise from the same event or are based on the same legal theories."
23  Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983).  In Hanlon v. Chrysler Co., 150
24  F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's permissive standards,
25  representative claims are 'typical' if they are reasonably coextensive with those of absent class
26  members; they need not be substantially identical." 50 F.3d at 1020.  Typicality "does not mean
27  that the claims of the class representative[s] must be identical or substantially identical to those
28  of the absent class members."  Stanton, supra, at 957.

In the instant case, there can be little doubt that the typicality requirement is fully satisfied.  The Plaintiff, like every other member of the Settlement Class, was employed by Defendant, was classified as "exempt," and was not paid overtime for overtime hours worked.  The Plaintiff, like every other member of the Settlement Class, claims compensation as a result of the exempt classification, including compensation for unpaid overtime and for missed meal periods.  Thus, the claims of both the Plaintiff and the members of the Settlement Class arise from the same course of conduct by Defendant, involve the same issues, and are based on the same legal theories.  Decl. Blumenthal, ¶ 29.  The typicality requirement of Rule 23 is met as to the common issues presented in this case.  While Defendant disputes that Plaintiff has claims typical of the individuals he purports to represent, Defendant will not oppose a finding of typicality for purposes of this settlement only.

### E.    The Class Representative Has Fairly and Adequately Protected the Interest of the Class

The Class Representative provided adequate representation of the interests of the class in that: (a) their attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representative do not have interests antagonistic to those of the class.  White v. Local 942, 688 F.2d 85, (9th Cir. 1982).  Simply put, Rule 23 asks whether the Class Representative will vigorously prosecute on behalf of the class and have a basic understanding of the claims.  This requirement has been met here.  First, Plaintiff is well aware of his duties as the representatives of the class and has actively participated in the prosecution of this case to date.  Plaintiff effectively communicated with Class Counsel, providing documents to Class Counsel and participated extensively in discovery and investigation of the action.  The personal involvement of the Plaintiff was essential to the prosecution of the action and the success of the mediation.  Decl. Blumenthal, ¶29.  Second, the Plaintiff retained competent counsel who have extensive experience in class actions.  See Decl. Blumenthal at ¶29.  Class Counsel has extensive experience in class action litigation in California and throughout the country.  Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions.  See

e.g., Resume, attached as <u>Exhibit 2</u> to the Decl. Blumenthal.  Third, there is no antagonism between the interests of the Plaintiff and those of the Settlement Class.  Both the Plaintiff and the Settlement Class Members seek monetary relief under the same set of facts and legal theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  <u>In re Wirebound Boxes Antitrust Lit.</u>, 128 F.R.D. 268 (D. Minn. 1989).  While Defendant disputes that the Plaintiff is adequate class representative, Defendant does not oppose such a finding for purposes of this settlement only.

### F.   For the Class As Alleged in the Fifth Amended Complaint, The Additional Requirements of Rule 23 Are Satisfied

Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.  First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

### 1.   The Predominance Requirement Is Met

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  There is no bright line to determine whether common issues predominate.  A claim will meet the predominance requirement in cases where generalized evidence of the Defendant's conduct will prove or disprove an element of the claim on a simultaneous class-wide basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance."  <u>Lockwood Motors</u>, 162 F.R.D. at 580; <u>Buchholtz v. Swift & Co.</u>, 62 F.R.D. 581, 598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude the satisfaction of the predominance requirement.  See Newberg & Comte, <u>Newberg on Class Actions</u> §4.25 (3d ed. 1992).

Here, the adjudication of the common issues surrounding Defendant's uniform and

systematic exempt classification policy could establish Defendant's liability on a class-wide basis.  Plaintiff contends that Defendant had engaged in a uniform course of conduct with respect to overtime and meal periods which resulted in a systematic failure to provide compensation as required by law and that Defendant's policies with respect to these issues are uniform.  The only question is whether Defendant's conduct supports a meritorious claim for liability.  Such suits challenging the legality of a standardized course of conduct are generally appropriate for resolution by means of a class action.  Accordingly, Plaintiff would argue that the common issues of law and fact present in this case predominate.

In the context of wage and hour litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly, even where the party opposing class certification presents evidence of individualized variations.  See e.g. Ghazaryan v. Diva Limousine, Ltd., 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour claims  "routinely proceed as class actions"); Prince v. CLS Transportation, Inc., 118 Cal.App.4th 1320, 1329 (2004); Estrada v. FedEx Ground Package System, Inc., 154 Cal.App.4th 1, 14 (2007) (holding that the  determination of "which expenses would be reimbursable" under Labor Code § 2802 is appropriate for class-wide resolution).

While Defendant disputes that the predominance requirement may be satisfied, it will not oppose such a finding for purposes of this settlement only.

## 2. The Superiority Requirement Is Met

To certify a class, the Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  F.R.C.P. Rule 23 (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

"If the plaintiffs' claims are substantiated, a question as to which the court presently has no opinion, the class action mechanism is clearly the most efficient means of resolving the many claims which may be asserted.  If the case were not handled as a class, thousands of small claims would either be brought or unjustly abandoned.  The first possibility would be a flood

1  of cases, the second would involve individual claims abandoned because of cost."  <u>In re</u>
2  <u>Workers' Compensation.</u>, 130 F.R.D. at 110.

3       Here, a class action is the superior mechanism for adjudication of the claims as pled by
4  the Plaintiff.  While Defendant disputes that the superiority requirement may be satisfied, it will
5  not oppose such a finding for purposes of this settlement only.

6

7  **VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

8       The Parties have agreed upon procedures by which the Settlement Class will be provided
9  with written notice of the Settlement similar to that approved and utilized in hundreds of class
10  action settlements.  The Parties have jointly drafted a Notice Regarding Pendency of Class
11  Action, attached to the Stipulation as <u>Exhibit 1</u> and is hereby submitted to this Court for
12  approval.

13       The Notice, drafted jointly and agreed upon by the Parties through their respective
14  counsel,  includes information regarding the nature of the Litigation; a summary of the
15  substance of the Settlement, including Defendant's denial of liability; the definition of the
16  Settlement Class; the procedure and time period for objecting to the Settlement, exclusion from
17  the Settlement and participating in the Settlement; a statement that the District Court has
18  preliminarily approved the Settlement; and information regarding the claims filing procedure
19  and the opt-out procedure.  See <u>Exhibit 1</u> to the Stipulation.  Attached to the Notice will be a
20  Claim Form in the forms attached to the Stipulation as <u>Exhibit 1</u>.

21       The Notice shall state that Class Members who wish to participate in the settlement shall
22  complete and return the Claim Form pursuant to the instructions contained therein by first class
23  mail or equivalent, postage paid.  The Notice shall also provide that any Class Member may
24  choose to opt out of the Class, and that any such person who chooses to opt out of the Class will
25  not be entitled to any recovery obtained by way of the settlement and will not be bound by the
26  settlement or have any right to object, appeal or comment thereon.

27       The Notice will provide that all objections to the Settlement by anyone, including
28  members of the Settlement Class, must be filed in the District Court and served upon all counsel

1    of record by no later than forty-five (45) days from the mailing of the Notice.  The deadline

2    applies notwithstanding any argument regarding non-receipt of the notice.  All objections must

3    state with particularity the basis on which they are asserted.  In accordance with Mercury

4    Interactive Corp. Secs. Litig. v. Mercury Interactive Corp., 618 F.3d 988 (9th Cir 2010), the

5    application for attorneys' fees and costs will be filed before  the notice is distributed to the

6    Settlement Class, and the notice will direct Settlement Class Members to where they may view

7    the application for attorneys' fees and costs.  Thus, all Settlement Class Members will have

8    ample opportunity to review and comment on the attorneys' fees and costs before the objection

9    deadline.  The attorneys' fees and costs will be heard in conjunction with the motion for final

10   approval on the Final Approval Hearing date as set by this Court in the Preliminary Approval

11   Order.  Decl. Blumenthal at ¶30.

12          The notice also informs members of the Settlement Class about the release.  Specifically,

13   the notice explains that unless they exclude themselves, upon final approval they will release

14   any and all claims asserted in the Fifth Amended Complaint, and including all claims that could

15   be asserted based on the facts alleged in the complaint, against the Released Parties.  Decl.

16   Blumenthal at ¶32.

17          This notice program was designed to meaningfully reach the largest possible number of

18   potential Settlement Class Members.  Before mailing, the Claims Administrator will process the

19   class list through the United States Postal Service's National Change of Address database

20   ("NCOA") and perform address searches.  If Notice forms are returned because of incorrect

21   addresses, the Claims Administrator shall re-mail the notice to the updated address, or if none

22   is provided, shall perform a skip trace to obtain an updated address. (Stipulation at §2.6.7.) The

23   mailing and distribution of the Notice satisfies the requirements of due process, and is the best

24   notice practicable under the circumstances and constitutes due and sufficient notice to all

25   persons entitled thereto.  Decl. Blumenthal at ¶32.

26          This notice satisfies the content requirements for notice following the exemplar class

27   notice in the Manual for Complex Litigation, Second §41.43.  This notice also fulfills the

28   requirement that Class notices be neutral. Newberg, at §8.39.

1

**VIII.    CONCLUSION**

2      Counsel for the Parties have committed substantial amounts of time, energy, and

3  resources litigating and ultimately settling this case.  In the judgment of Plaintiff and Class

4  Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute

5  in light of the strengths and weaknesses of each party's case.  After weighing the substantial,

6  certain and immediate benefits of these settlements against the uncertainty of trial, and appeal,

7  Plaintiff believes the proposed settlement is fair, reasonable and adequate, and warrants this

8  Court's preliminary approval.

9      Accordingly, Plaintiff respectfully requests that the Court preliminarily approve the

10  proposed settlements, certify the Class for settlement purposes, schedule a date for a hearing on

11  Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

12

Dated: March 18, 2011                **BLUMENTHAL, NORDREHAUG &**
13                                         **BHOWMIK**

14                                  By:____/s/ Norman B. Blumenthal_____
                                        Norman B. Blumenthal
15                                      Attorneys for Plaintiff

16

17

K:\D\NBB\Bova v. Wamu\Preliminary Approval\p-memorandum-prelim-01.wpd
18

19

20

21

22

23

24

25

26

27

28